## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

CHRISTOPHER GRAVELINE,
WILLARD H. JOHNSON,
MICHAEL LEIBSON, and                                        Case No.
KELLIE K. DEMING,

          Plaintiffs,

    v.

RUTH JOHNSON, Secretary of State of
Michigan,
SALLY WILLIAMS, Director of Michigan
Bureau of Elections, in their official capacities,

          Defendants.

_____/

## COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

Plaintiffs Christopher Graveline, Willard H. Johnson, Michael Leibson, and Kellie K. Deming file this Complaint against Defendants Ruth Johnson, Michigan Secretary of State, and Sally Williams, Director of Michigan Bureau of Elections, in their official capacities. Plaintiffs allege that Michigan's ballot access scheme for no-party-affiliated candidates violates rights guaranteed to them by the First and Fourteenth Amendments of the United States Constitution, by establishing an electoral scheme, which effectively precludes independent candidates for Attorney

1

General from qualifying for the ballot for statewide offices. Michigan accomplishes this impermissible purpose by requiring that such candidates file their nomination petitions up to 50 days before the major parties select their nominees for that office and by requiring that they submit an unreasonably and unnecessarily high number of signatures, within a truncated time frame, thus forcing them to incur burdens on their financial, human, and other resources so substantial as to be exclusionary for non-wealthy candidates such as Graveline.

Plaintiffs specifically allege that Michigan Combined Law Annotated (M.C.L.A.) Section 168.590c(2) – setting the deadline for submission of nominating petitions 50 days prior to when the major parties' nominating conventions are required to be held by law and 110 days prior to the general election – is unconstitutional, both on its face and as applied.  The Plaintiffs further allege Section 168.590c(2), in conjunction with Sections 168.544f and 168.590b(4), which require the submission of nomination petitions with 30,000 qualifying signatures dispersed across at least half of the congressional districts in the state, is unconstitutional as applied. The cumulative impact of these provisions working in concert with one another unconstitutionally blocks access to legitimate candidates with no party affiliation.

Plaintiffs seek prospective declaratory and injunctive relief, as necessary, to secure Graveline's placement on Michigan's November 6, 2018 general election ballot. In support of this Complaint, Plaintiffs submit the Declarations of Richard Winger;

Christopher Graveline; Willard H. Johnson; Michael Leibson; Kellie K. Deming; Janet M. Urbanic; and Christa Byrd (Attached as Exhibits A – G) and an email communication from Michigan Bureau of Elections Senior Election Specialist David Foster rejecting Plaintiff Graveline's filing (Exhibit H).

**PARTIES**

1.      Plaintiff Christopher Graveline resides in Michigan and files suit in his capacity as a no-party-affiliation candidate for the office of Michigan Attorney General. Plaintiff Graveline has filed a Statement of Organization declaring his candidacy for Michigan Attorney General for the election to be held on November 6, 2018.

2.      Plaintiff Willard H. Johnson resides in Michigan and files suit in his capacity as a voter-supporter of Christopher Graveline for Attorney General in the upcoming November 6, 2018 election.  Plaintiff Johnson is a registered voter and member of the Republican Party.

3.      Plaintiff Michael Leibson resides in Michigan and files suit in his capacity as a voter-supporter of Christopher Graveline for Attorney General in the upcoming November 6, 2018 election.  Plaintiff Leibson is a registered voter in the state of Michigan and regularly votes in primaries for the Democratic Party.

4.      Plaintiff Kellie K. Deming resides in Michigan and files suit in her capacity as a voter-supporter of Christopher Graveline for Attorney General in the

3

upcoming November 6, 2018 election.  Plaintiff Deming is a registered voter, but not a registered member of any political party.

5.     Defendant Ruth Johnson is the Michigan Secretary of State. Secretary Johnson is the State's chief elections official and has ultimate authority over the enforcement of the Michigan Election Code, including the provisions challenged herein. Plaintiffs assert their claims against Secretary Johnson in her official capacity only. Secretary Johnson's official address is 430 W. Allegan, Lansing, Michigan 48933.

6.     Defendant Sally Williams is the Director of the Michigan Bureau of Elections. Director Williams accepts and reviews candidate petition filings, assists county and local election officials with their administrative duties, and administers the State's electoral process and Campaign Finance Act. Plaintiffs assert their claims against Director Williams in her official capacity only. Director Williams' official address is Bureau of Elections, 430 W. Allegan, Lansing, Michigan 48933.

## JURISDICTION AND VENUE

7.     Venue is proper in this Court because all Plaintiffs are residents of Michigan, and because the Defendants are state officials who maintain offices throughout the State of Michigan. *See Bay County Democratic Party v. Land,* 340 F.Supp.2d 802 (E.D.Mich.2004) (Lawson, J.). This Court has personal jurisdiction over the Defendants because they are public officials of the State of Michigan and they are residents of Michigan.

8.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

9.      Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

### The Michigan Election Code

10.      To be eligible for the office of Michigan Attorney General, a person must be a registered and qualified elector in the State of Michigan on the date that she or he is nominated for that office.  *See* M.C.L.A. § 168.71.

11.      From that requirement, the Michigan Election Code discriminates among major party, minor party, no political party affiliation, and write-in candidates. Candidates for Attorney General from the major parties (Republican, Democratic, and Libertarian Parties) are nominated at the party's nominating convention, which must be held no later than September 7, 2018.  M.C.L.A. § 168.591.  Party officials then have one business day from the conclusion of the nominating convention to file an Affidavit of Identity and Certificate of Nomination for their selected candidates. M.C.L.A. § 168.686.  Candidates from these parties do not have to circulate nominating petitions nor must they obtain any signatures in support of their candidacy.

5

12.     Candidates for Attorney General from the minor parties (political parties that received less than 5% of the vote in the last secretary of state election) are nominated at the party's nominating convention, which must be held no later than August 7, 2018.  M.C.L.A. § 168.686a(1).  Party officials then have one business day from the conclusion of the nominating convention to file an Affidavit of Identity, Certificate of Nomination, and a Certificate of Acceptance for their selected candidates.  M.C.L.A. § 168.686a(4).  Candidates from these parties do not have to circulate nominating petitions nor must they obtain any signatures in support of their candidacy.

13.     A candidate for Attorney General without political party affiliation must file an Affidavit of Identity and at least 30,000 valid signatures on a qualifying petition no later than July 19, 2018.  M.C.L.A. §§ 168.544f; 168.590c(2).  To ensure that their nomination petitions contain enough valid signatures, candidates without political party affiliation may submit as many as 60,000 signatures.  These signatures may not be collected more than 180 days prior to July 19, 2018, and, as part of the minimum number of required signatures, a qualifying petition must be signed by at least 100 registered voters in each of at least half of the congressional districts of the state. M.C.L.A. § 168.590b(3) - (4).  To ensure that these requirements are met, it is generally necessary to collect an additional 7,500 – 15,000 signatures above the required number of 30,000 to account for signatures that may be invalidated.

6

**14.**     A write-in candidate for Attorney General must file a Declaration of Intent with the Secretary of State by no later than October 26, 2018. M.C.L.A. § 168.737a(1).

**Sections 168.544f, 168.590b(4), and 168.590c(2) as Applied to Plaintiffs**

**15.**     As currently constructed, Michigan's electoral scheme requires independent candidates to submit 30,000 valid signatures 50 days before the last day the parties must hold nominating conventions and 110 days before the general election.

**16.**     Michigan's 30,000-signature requirement is one of the highest in the country and functions as an absolute bar that excludes independent candidates from competing for statewide office.  Since the State of Michigan enacted the current electoral scheme for independent candidates in 1988, not a single independent candidate has qualified for the ballot for a statewide office (governor, lieutenant governor, attorney general, or secretary of state).[1] *See* Exhibit A, Declaration of Richard Winger; *see also Storer v. Brown,* 415 U.S. 724, 742 (1974) (when evaluating whether electoral scheme is unconstitutionally burdensome, the historical record is important: "it [is] one thing if independent candidates have qualified with some regularity and quite a different matter if they have not").

---

[1]     Two presidential candidates have qualified as independent candidates, Ross Perot in 1992 and Ralph Nader in 2004.

**17.** M.C.L.A. § 168.590b(4) adds the additional requirement that a candidate must collect 100 signatures from one-half of the Congressional districts. Thus, not only does an independent have to jump in the race before voters are paying attention and when the major party nominees are unknown, but the candidate must also have signature collectors on the ground in half the congressional districts in the state to comply with all of the statutory requirements.

**18.** Moreover, Michigan's electoral scheme couples these high and widespread signature requirements with a deadline that falls 110 days before the general election and 50 days before the major parties are required to hold their conventions. At this early stage of the election cycle, few voters are paying attention to the November election, much less an Attorney General's race in which the partisan nominees remain unknown. The Republicans will decide who their Attorney General nominee will be at their State Convention on August 25, 2018. The Libertarians will select their Attorney General candidate at their State Convention on August 25, 2018. The Democratic Party held an early endorsement convention on April 15, 2018, to identify their presumptive nominee for the Attorney General position, Dana Nessel,[2] but the party will not officially choose its nominee until the Democratic Nominating

---

[2] Ms. Nessel won the endorsement convention by securing the majority of the votes cast by the 6,700 delegates who attended the convention. *See* https://www.freep.com/story/news/local/michigan/2018/04/15/nessel-democratic-endorsement-michigan-attorney-general/518873002/

Convention on August 25 - 26, 2018.

19.    At the time of this filing, Plaintiffs are not aware of any minor party candidates nominated for the office of Attorney General for the November 2018 election.

20.    Thus, the political parties' candidates for Attorney General will not be known until well after the deadline imposed by statute for filing of qualifying petitions by no party affiliation candidates. Courts have consistently found filing deadlines for independent candidates that predate the selection of party candidates unconstitutionally burdensome. *See e.g., Libertarian Party of Ohio v. Blackwell*, 462 F.2d 579 (6th Cir. 2006) ("Many courts have documented the burden imposed by statutes requiring political parties to file registration petitions far in advance of the primary and general elections"); *McLain v. Meier,* 637 F.2d 1159, 1164 (8th Cir. 1980) (stating that "most voters in fact look to third party alternatives only when they have become dissatisfied with the platforms and candidates put forward by the established political parties" in striking down North Dakota's election scheme that imposed a large signature requirement and an early deadline for independent candidates); *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 880 (3d 1997) (striking down New Jersey's 54-day deadline before parties' primaries).

21.    As currently constructed, Michigan's election scheme leaves no opportunity for voters to "express their support [for an] independent…candidate

during the time of the major parties' campaigning and for some time after the selection of candidates by party primary." *McLain,* 637 F.2d at 1164.

### Plaintiff Graveline's Effort to Comply with the Requirements Imposed By Sections 168.544f, 168.590b(4), and 168.590c(2)

22.     Plaintiff Graveline is an experienced attorney and prosecutor who served in the U.S. Army Judge Advocate General's Corps, where he prosecuted the individuals involved in the Abu Ghraib prisoner abuse scandal.  Plaintiff Graveline has also worked as an Assistant Wayne County Prosecutor, a human rights prosecutor in the U.S. Department of Justice, and finally as an Assistant United States Attorney – Eastern District of Michigan from February 1, 2009 to June 1, 2018.  Over the past four years, Plaintiff Graveline was the Chief of the Violent and Organized Crime Unit for the U.S. Attorney's Office headquartered in Detroit, Michigan.  As the candidates for the respective parties and issues began to crystallize for the election of Michigan Attorney General, Plaintiff Graveline decided to resign from his federal position and campaign as a no party affiliation candidate (political moderate) for that office.  *See* Exhibit B, Declaration of Christopher Graveline.  He filed a Statement of Organization for the campaign on June 4, 2018.

23.     Plaintiff Graveline began organizing and collecting signatures as of June 7, 2018.  Over the course of the next 42 days, 231 volunteers collected approximately 7,899 signatures for submission.  Signature collecting on this scale by volunteers is a

time-consuming endeavor.   As one volunteer signature collector attests, it takes several minutes to approach a stranger on the street, explain what the petition is about, and convey information about the candidate in hopes of obtaining the signature and other identifying information to fill out the petition.   *See* Exhibit C, Declaration of Janet M. Urbanic.   Another volunteer signature gatherer attests that even a highly motivated signature gatherer can collect only about 8 – 12 signatures per hour in a crowded location.   *See* Exhibit D, Declaration of Christa Byrd.   More realistically, a signature gatherer may obtain 6 – 8 signatures per hour, given that some individuals who are approached decide not to sign.   *See* Exhibit C.   Consequently, to collect 30,000 valid signatures, or at least 45,000 total signatures, a candidate would need to recruit enough volunteers to contribute approximately 3,500 – 5,600 manpower hours.   *See* McLain, 637 F.2d at 1165 (calculating number of manpower hours needed).

**24.**   Supplementing volunteer efforts with a professional signature-gathering company is an expensive proposition.   Plaintiff Graveline also hired a professional signature-gathering firm, SMI Enterprises, who charged $6 per billable signature collected.   *See* Exhibit B.   The firm collected over 6,000 billable signatures at an expense to the campaign of $37,258.   Hiring the firm to collect a guaranteed 30,000 valid signatures (meaning at least 45,000 total signatures) would have cost the campaign approximately $225,000.   *Id.*   Thus, the signature requirement is

11

prohibitively expensive for non-wealthy candidates, and functions as an insurmountable financial barrier for all but the wealthiest. Even those wealthy candidates who can comply with it suffer a massive drain on their resources – both time and money – which otherwise could be spent on campaigning to build support among the electorate. *See Green Party of Georgia v. Kemp,* 171 F.Supp.3d 1340, 1350-51 (N.D. Ga. 2016). Only independents candidates, such as Plaintiff Graveline, must bear that burden in the race for Attorney General.

25.     In total, Plaintiff Graveline was able to collect approximately 14,157 signatures with at least 100 signatures from 12 of the 14 Congressional districts in 42 days for submission to the Bureau of Elections by July 19, 2018. Plaintiff Graveline attempted to file the statutorily required two copies of notarized Affidavits of Identity and the qualifying petitions at the Bureau of Election offices in Lansing. The Bureau of Elections refused to accept any of the filings since they did not consider it a "complete filing." *See* Exhibit H, David Watson email.

## Injury to Plaintiffs

26.     The application of Sections 168.544f, 168.590b(4), and 168.590c(2) has severely injured Plaintiffs and continues to impose severe burdens on them.

27.     In this current election cycle, Plaintiff Graveline has thoroughly exhausted his financial, human, and other resources in an effort to collect the number of valid signatures required by Sections 168.544f and 168.590b(4) by the deadline set

forth in Section 168.590c(2).

28. The challenged provisions will prevent Plaintiffs from participating in Michigan's upcoming November election as an independent candidate and voters who wish to vote for him.

29. As of the date of this filing, Plaintiff Graveline's candidacy has been effectively terminated, unless and until he obtains the relief necessary to place him on Michigan's 2018 general election ballot.

30. Plaintiffs Johnson, Leibson, and Deming wish to vote for Graveline as an independent candidate for Attorney General because they support his candidacy, and they do not wish to support the candidates who will be nominated by the Republican and Democratic parties.

31. If Graveline does not appear on Michigan's 2018 general election ballot, Plaintiffs Johnson, Leibson, and Deming will be forced to choose between the Republican and Democratic nominees for Attorney General, notwithstanding their opposition for these candidates and their support for Graveline.

32. Plaintiffs Graveline, Johnson, Leibson, and Deming will suffer irreparable harm to their voting, speech, and associational rights if Graveline does not appear on the ballot.

## COUNT I

## VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

### (M.C.L.A. § 168.590c(2) is Facially Unconstitutional)

**33.**     The preceding Paragraphs 1 – 32 are hereby incorporated by reference.

**34.**     M.C.L.A. Section 168.590c(2), which sets the early deadline for submission of nomination petitions 50 days prior to the time when major party nominating conventions must occur and 110 days prior to the general election, places an undue burden on no party affiliation or independent candidates, including Plaintiff Graveline, and the voters who wish to exercise their choice to vote for him, in violation of their freedom of speech and association, equal protection, and due process rights as guaranteed by the First and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983.

**35.**     The deadline imposed by M.C.L.A. Section 168.590c(2) is burdensome, unreasonable, and is not narrowly tailored to meet any compelling or legitimate state interest.

**36.**     Such violation injures Plaintiffs.

## COUNT II

### VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

### (M.C.L.A. §§ 168.544f, 168.590b(4), and 168.590c(2) are Unconstitutional as Applied)

**37.**  The preceding Paragraphs 1 – 36 are hereby incorporated by reference.

**38.**  The combination of M.C.L.A. §§ 168.544f and 168.592b(4), which requires the submission of nomination petitions with 30,000 qualifying signatures with at least 100 signatures being from at least half of the congressional districts in the state, within the deadline imposed by M.C.L.A. § 168.590c(2), multiplies the undue burden placed on no party affiliation candidate Graveline and the voters who wish to vote for him, in further violation of their freedom of speech and association, equal protection, and due process rights as guaranteed by the First and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983.

**39.**  The combination of the deadline imposed by M.C.L.A. § 168.590c(2) and the signature requirements of M.C.L.A. §§ 168.544f and 168.592b(4) is burdensome, unreasonable, and is not narrowly tailored to meet any compelling or legitimate state interest.

**40.**  Such violation injures Plaintiffs.

## COUNT III

## VIOLATION OF RIGHTS GUARANTEED BY FIRST AND FOURTEENTH AMENDMENTS

### (M.C.L.A. §§ 168.544f, 168.590b(4), and 168.590c(2) are Unconstitutional as Applied to Plaintiff-Voters)

41.     The preceding Paragraphs 1 – 40 are hereby incorporated by reference.

42.     The constitutional right of qualified voters, regardless of their political persuasion, to cast their votes effectively is one of the country's most important freedoms.  By hindering the electoral choice by which these Plaintiff-voters would have the opportunity to choose among competing alternatives that would otherwise exist, i.e. effectively excluding the independent candidacy of Plaintiff Graveline, the State of Michigan is severely burdening the Plaintiff-voters right to cast a meaningful and effective vote.

43.     This exclusion of the independent candidacy of Plaintiff Graveline through the use of M.C.L.A. §§ 168.544f, 168.590b(4), and 168.590c(2), separately and in combination, to deprive the Plaintiff-voters of an effective choice is burdensome, unreasonable, and is not narrowly tailored to meet any compelling or legitimate state interest.

44.     Such violation injures the Plaintiff-voters.

16

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.  Enter a declaratory judgment holding M.C.L.A. § 168.590c(2) unconstitutional on its face;

B.  Enter a declaratory judgment holding M.C.L.A. §§ 168.544f, 168.590b(4), and 168.590c(2) unconstitutional as applied in combination to Plaintiffs;

C.  Enter an order placing Plaintiff Graveline on the ballot as a no party affiliation candidate for Attorney General in the upcoming November 2018 election;

D.    Award attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.    Award such other and further relief as the Court deems proper.

DATED:    July 27, 2018                    Respectfully submitted,

*/s/ William P. Tedards, Jr.*
**WILLIAM P. TEDARDS, JR.\***
1101 30th Street NW, Suite 500
Washington, DC 20007
(202) 797-9135
BT@tedards.net
(DC 143636) (MI)

**OLIVER B. HALL\*\***
Center for Competitive Democracy
P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294
oliverhall@competitivedemocracy.org
(DC 976463)

\*Counsel of Record                    Counsel for Plaintiffs
\*\*Bar membership pending