UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

CHRISTOPHER GRAVELINE, WILLARD H. JOHNSON, MICHAEL LEIBSON, and KELLIE K. DEMING,

Plaintiffs,

v.

RUTH JOHNSON, Secretary of State of Michigan, and SALLY WILLIAMS, Director of Michigan Bureau of Elections, in their official capacities,

Defendants.

_____/

Case No. 2:18-cv-12354-VAR-DRG

**Judge Victoria A. Roberts**
**Magistrate Judge David R. Grand**

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 65(a), Plaintiffs hereby move the Court for a preliminary injunction directing Defendants Ruth Johnson and Sally Williams to place Plaintiff Christopher Graveline on the general election ballot for the upcoming November 6, 2018 election, as an Independent candidate for the position of Michigan Attorney General.

In support of this motion, Plaintiffs submit the following Brief in Support of Motion for Preliminary Injunction with seven Declarations (Exhibits A-G to the Complaint, ECF No. 1-2 to ECF No. 1-8, Page ID.19 - Page ID.55), confirming that the Plaintiffs are likely to succeed on the merits with respect to the unconstitutionality of M.C.L.A. 168.590c(2), both facially and as applied in combination with M.C.L.A. §§ 168.544f and 168.590b(4). Absent the preliminary relief requested here, the Plaintiffs will incur irreparable injury in that Mr. Graveline will be excluded from the ballot and the Plaintiff-Voters will be deprived of their opportunity to vote for him. The balance of the equities tips decidedly in favor of the Plaintiffs because the Michigan statutory scheme is not tailored

1

to meet any compelling or legitimate State interest, and the inclusion of Mr. Graveline on the ballot will serve the public interest by allowing those who wish to vote for him to express their First Amendment rights, without any harm to the State of Michigan.

DATED:       August 3, 2018                    Respectfully submitted,

                                              */s/ William P. Tedards, Jr.*

                                              _____
                                              **WILLIAM P. TEDARDS, JR.***
                                              1101 30th Street, NW, Suite 500
                                              Washington, DC 20007
                                              202-797-9135
                                              BT@tedards.net
                                              (DC 143636) (MI)

                                              **OLIVER B. HALL****
                                              Center for Competitive Democracy
                                              P.O. Box 21090
                                              Washington, D.C. 20009
                                              202-248-9294
                                              oliverhall@competitivedemocracy.org
                                              (DC 976463)

*Counsel of Record
**Bar membership pending                      Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

| | |
|---|---|
| CHRISTOPHER GRAVELINE, WILLARD H. JOHNSON, MICHAEL LEIBSON, and KELLIE K. DEMING, | Case No. 2:18-cv-12354-VAR-DRG |
| Plaintiffs, | Judge Victoria A. Roberts<br>Magistrate Judge David R. Grand |
| v. | |
| RUTH JOHNSON, Secretary of State of Michigan, and SALLY WILLIAMS, Director of Michigan Bureau of Elections, in their official capacities, | |
| Defendants. | |
| _____/ | |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

i

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

CONCISE STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . ix

CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  x

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

THE COURT SHOULD GRANT PLAINTIFFS' MOTION AND ENTER AN ORDER
PLACING PLAINTIFF GRAVELINE ON MICHIGAN'S 2018 GENERAL ELECTION
BALLOT BECAUSE PLAINTIFFS SATISFY EACH ELEMENT FOR
OBTAINING A PRELIMINARY INJUNCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Plaintiffs Are Likely to Succeed on the Merits of Their Constitutional Challenge to
        Michigan's Ballot Access Requirements for Independent Candidates. . . . . . . . . . . . . . . 2

        A.      Plaintiffs Are Likely to Prevail as to Count 1 Because the
                Overwhelming Weight of Authority Demonstrates That Michigan's
                Filing Deadline for Independent Candidates Is Unconstitutional. . . . . . . . . . . . 3

        B.      Plaintiffs Are Likely to Prevail as to Count 2 Because Michigan's
                Early Filing Deadline, High Signature Requirement and Distribution
                Requirement Impose Severe Burdens That Function as an Absolute
                Bar to Independent Candidates Seeking Access to the General
                Election Ballot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.      Michigan's Statutory Scheme is Unconstitutional as Applied to the
                Plaintiff-Voters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.     THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT
        DOES NOT GRANT THEM INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.    THE BALANCE OF EQUITIES TIPS DECIDEDLY IN PLAINTIFFS' FAVOR . . . . . 16

IV.     AN INJUNCTION IS IN THE PUBLIC INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

Page No.

**CASES**

*ACLU v. Ashcroft*,
    322 F.3d 240 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*American Party v. Jernigan*,
    424 F. Supp. 943 (E.D. Ark. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9, 10, 11, 14, 17, 18

*Anderson v. Morris*,
    636 F. 2d 55 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Anderson v. Quinn*,
    495 F. Supp. 730 (D. Maine 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Belitskus v. Pizzingrilli*,
    343 F.3d 632 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Bergland v. Harris*,
    767 F. 2d 1551 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bolanowski v. Raich*,
    330 F. Supp. 724 (E.D. Mich. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bullock v. Carter*,
    405 U.S. 134 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

*Burdick v. Takushi*,
    504 U.S. 428 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 16

*California Democratic Party v. Jones*,
    530 U.S. 567 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Citizens to Establish Reform Party v. Priest*,
    970 F. Supp. 690 (E.D. Ark. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Clean-Up '84 v. Heinrich*,
    590 F. Supp. 928 (M.D. Fl. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Constitution Party of PA v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iv

*Council of Alternative Political Parties v. Hooks*,
  121 F.3d 876 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Dixon v. Maryland State Bd. of Elections*,
  878 F.2d 776 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Elrod v. Burns*,
  427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fulani v. Krivanek*,
  973 F.2d 1539 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Goldman-Frankie v. Austin*,
  727 F.2d 603 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Green Party of Mich. v. Land*,
  541 F. Supp. 2d 912 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hall v. Austin*,
  495 F.Supp. 782 (E.D. Mich. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harper v. Virginia Bd. of Elections*,
  383 U.S. 663 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Illinois State Bd. of Elections v. Socialist Workers Party*,
  440 U.S. 173 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Jenness v. Fortson*,
  403 U.S. 431 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lee v. Keith*,
  463 F. 3d 763 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lendall v. Bryant*,
  387 F. Supp. 397 (E.D. Ark. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Libertarian Party of Ohio v. Blackwell*,
  462 F.3d 579 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 14, 16, 18

*Lubin v. Panish*,
  415 U.S. 709 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

*McCarthy v. Austin*,
  423 F.Supp. 990 (W.D. Mich. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McCarthy v. Kirkpatrick*,
   420 F.Supp 366 (W.D. Mo. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McLain v. Meier*,
   637 F. 2d 1159 (8th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McLaughlin v. North Carolina Board of Elections*,
   850 F. Supp. 373 (M.D. N.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Macbride v. Exon*,
   558 F.2d 443 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mogk v. City of Detroit*,
   335 F. Supp. 698 (E.D. Mich. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*NAACP v. Button*,
   371 U.S. 415 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nader v. Brewer*,
   531 F. 3d 1028 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*New Alliance Party of Alabama v. Hand*,
   933 F. 2d 1568 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*N.Y. Times Co. v. United States*,
   403 U.S. 713 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Obama for America v. Husted*,
   697 F.3d 423 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Republican Party of Arkansas v. Faulkner County*,
   49 F.3d 1289 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stoddard v. Quinn*,
   593 F. Supp. 300 (D. Maine 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Storer v. Brown*,
   415 U.S. 724 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Williams v. Rhodes*,
   393 U.S. 23 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 14, 15, 17

## REGULATIONS

M.C.L.A. § 168.544f. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 10, 15, 17
M.C.L.A. § 168.590b(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 10, 15, 17
M.C.L.A. § 168.590c(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 10, 15, 17
M.C.L.A. § 168.591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
M.C.L.A. § 168.686 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
L. Tribe, American Constitutional Law 774 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**INDEX OF EXHIBITS**

| Exhibit | Description | ECF No. |
|---------|-------------|---------|
| A | Declaration of Richard Winger | ECF No. 1-2 |
| B | Declaration of Christopher Graveline | ECF No. 1-3 |
| C | Declaration of Willard H. Johnson | ECF No. 1-4 |
| D | Declaration of Michael Leibson | ECF No. 1-5 |
| E | Declaration of Kellie K. Deming | ECF No. 1-6 |
| F | Declaration of Janet M. Urbanic | ECF No. 1-7 |
| G | Declaration of Christa Byrd | ECF No. 1-8 |
| H | David Foster e-mail communication | ECF No. 1-9 |

## CONCISE STATEMENT OF THE LEGAL ISSUES PRESENTED

1.  Whether Plaintiffs are likely to succeed on the merits.

    A.  Whether M.C.L.A. § 168.590c(2) is unconstitutional on its face.

    B.  Whether M.C.L.A. § 168.590c(2) is unconstitutional as applied in combination with M.C.L.A. §§ 168.544f and 168.590b(4).

    C.  Whether M.C.L.A. §§ 168.590c(2), 168.544f, and 168.590b(4) are unconstitutional as applied to the Plaintiff-Voters.

2.  Whether Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief.

3.  Whether the balance of the equities tips in Plaintiffs' favor.

4.  Whether an injunction is in the public interest.

## CONTROLLING AUTHORITY

**AS TO ISSUE No. 1.A.:**

    1.    *Libertarian Party of Ohio v. Blackwell*, 462 F. 3d 579, 590-91 (6th Cir. 2006).

    2.    *Anderson v. Celebrezze*, 460 U.S. 780, 790-93 (1983).

**AS TO ISSUE No. 1.B.:**

    1.    *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 589-90 (6th Cir. 2006).

    2.    *Storer v. Brown*, 415 U.S. 724, 737, 742 (1974).

**AS TO ISSUE No. 1.C.:**

    1.    *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006).

    2.    *Goldman-Frankie v. Austin*, 727 F.2d 603, 605 (6th Cir. 1984).

    3.    *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

    4.    *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983).

**AS TO ISSUE No. 2:**

    *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

**AS TO ISSUE No. 3:**

    1.    *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 591, 593, 594 (6th Cir. 2006).

**AS TO ISSUE No. 4:**

    1.    *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 588-89 (6th Cir. 2006).

    2.    *Williams v. Rhodes*, 393 U.S. 23, 39 (1968).

    3.    *Illinois State Bd. Of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979.

## STATEMENT OF FACTS

The Michigan Election Code discriminates between major party and Independent statewide candidates. Candidates for Attorney General from the major parties are nominated at the party's nominating convention, which must be held no later than September 7, 2018. M.C.L.A. § 168.591. Party officials than have one business day from the conclusion of the nominating convention to file an Affidavit of Identity and Certificate of Nomination for their selected candidates. M.C.L.A. ¶ 168.686. Candidates from these parties do not have to circulate nominating petitions nor must they obtain any signatures in support of their candidacy. (Complaint ¶ 11, ECF No. 1, PageID.5).

A candidate for Attorney General without political party affiliation must file an Affidavit of Identity and at least 30,000 valid signatures on a qualifying petition no later than July 19, 2018. M.C.L.A. § 168.544f; 168.590c(2). These signatures may not be collected more than 180 days prior to July 19, 2018 and, as part of the minimum number of required signatures, a qualifying petition must be signed by at least 100 registered voters in each of at least half of the congressional districts of the state. M.C.L.A. § 168.590b(3) - (4). (*Id.*, ¶ 13, ECF No. 1, PageID.6.)

As currently constructed, Michigan's electoral scheme requires independent candidates to submit 30,000 valid signatures 50 days before the last day the parties must hold nominating conventions and 110 days before the general election. (*Id.*, ¶ 15, ECF No. 1, PageID.7.)

## THE LEGAL STANDARD

### Preliminary Injunction Standard

> "A Plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012).

**ARGUMENT**

**THE COURT SHOULD GRANT PLAINTIFFS' MOTION AND ENTER AN ORDER PLACING PLAINTIFF GRAVELINE ON MICHIGAN'S 2018 GENERAL ELECTION BALLOT BECAUSE PLAINTIFFS SATISFY EACH ELEMENT FOR OBTAINING A PRELIMINARY INJUNCTION.**

**I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO MICHIGAN'S BALLOT ACCESS REQUIREMENTS FOR INDEPENDENT CANDIDATES.**

The Supreme Court has recognized that constitutional challenges to state election laws "cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (citation omitted). It has therefore established an analytical process that courts must follow in deciding such cases. Specifically, a reviewing court:

> [M]ust first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* The 6th Circuit has characterized this analytic framework as establishing a "flexible standard" of review. *Obama for America*, 697 F.3d at 429. Under this standard, the level of scrutiny "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428 (1992). When the burden imposed is "severe", the challenged provision must be "narrowly drawn to advance a state interest of compelling importance," whereas lesser burdens are subject to less rigorous scrutiny. *Id.* (citation omitted). This analytic framework applies to claims asserted under the First Amendment as well as to claims asserted under the Equal Protection Clause. *See Obama for America*, 697 F.3d at 430.

2

A. **Plaintiffs Are Likely to Prevail as to Count 1 Because the Overwhelming Weight of Authority Demonstrates That Michigan's Filing Deadline for Independent Candidates Is Unconstitutional.**

In Count I, Plaintiffs Graveline and three of his voter-supporters assert that M.C.L.A. § 168.590c(2) is unconstitutional standing alone, because it sets the deadline for independent candidates to submit nomination petitions 50 days prior to the deadline for major political parties to hold their nomination conventions and 110 days before the general election. Comp. ¶ 34 (ECF No. 1, PageID.14). This deadline imposes an undue burden, because it requires that independent candidates conduct their petition drives well before the major party nominees are known, and before voters are paying attention to, much less actively engaged in, the electoral process. The state cannot proffer any valid interest that could justify the imposition of such a burden.

Plaintiffs are likely to prevail on the merits of this claim because "the great weight of authority" holds that "filing deadlines well in advance of the primary and general elections" are unconstitutional. *See Libertarian Party of Ohio v. Blackwell*, 462 F. 3d 579, 590 (6th Cir. 2006). Indeed, the number of Supreme Court and lower federal courts cases striking down such deadlines is legion. *See*, *e.g.*, *Anderson v. Celebrezze*, 460 U.S. 780, 790-91 (1983) (striking down independent presidential candidate filing deadline of March 20 on ground that, *inter alia*, "At this point developments in campaigns for the major-party nominations have only begun, and the major parties will not adopt their nominees and platforms for another five months"); *Williams v. Rhodes*, 393 U.S. 23, 33 (1968) (striking down minor party filing deadline of February 7 on ground that, *inter alia*, it fell long before "the identity of the likely major party nominees [are] known"); *Nader v. Brewer*, 531 F. 3d 1028, 1038 (9th Cir. 2008) (striking down independent presidential candidate filing deadline of June 9, which fell 75 days before primary election, on ground that, *inter alia*, "particular independent candidacies, and voter support for those candidacies, sometimes occur as a reaction to

the particular nominees of the major parties") (citation omitted); *Lee v. Keith*, 463 F. 3d 763, 771 (7th Cir. 2006) (striking down independent candidate filing deadline of December 15, which fell 92 days before primary election, on ground that, *inter alia*, "Only the most committed supporters of an independent candidate would be willing to sign on condition of primary disenfranchisement, especially so early in the political season"); *Libertarian Party of Ohio*, 462 F.3d at 590-91 (striking down minor party filing deadline in November, which fell 120 days before primary election, on ground that, *inter alia*, it was "well in advance of the primary and general elections"); *Council of Alternative Political Parties v. Hooks*, 121 F. 3d 876, 880 (3rd Cir. 1997) (striking down minor party filing deadline of April 10, 54 days before primary election, on ground that, *inter alia*, "voters are burdened by the deadline's preclusion of the possibility of independent or alternative party candidates emerging in response to disaffection with the nominees of the major parties"); *New Alliance Party of Alabama v. Hand*, 933 F. 2d 1568 (11th Cir. 1991) (striking down minor party filing deadline of April 6 on ground that, *inter alia*, the state's asserted interests in requiring them to submit nomination petitions "at the same time that major party affiliates merely announce their candidacies for nomination are not persuasive"); *McLain v. Meier*, 637 F. 2d 1159, 1164 (8th Cir. 1980) (striking down minor party filing deadline of June 1, more than 90 days before primary election, on ground that, *inter alia*, "most voters in fact look to third party alternatives only when they have become dissatisfied with the platforms and candidates put forward by the established political parties"); *Anderson v. Morris*, 636 F. 2d 55 (4th Cir. 1980) (striking down independent presidential candidate filing deadline of March 3, which fell "ten weeks or seventy days before the day on which the primary election shall be held"); *Macbride v. Exon*, 558 F.2d 443 (8th Cir. 1977) (striking down minor party filing deadline of February 11, which fell 90 days prior to primary election); *Citizens to Establish Reform Party v. Priest*, 970 F. Supp. 690, 698 (E.D. Ark. 1996)

(striking down minor party filing deadline of January 2 on ground that, *inter alia*, "At such an early point in the election year, it is often difficult to get volunteers from the voting public to become involved in the petition collection process"); *Stoddard v. Quinn*, 593 F. Supp. 300, 304-08 (D. Maine 1984) (striking down independent candidate filing deadline of April 1 on ground that, *inter alia*, it fell more than two months before major party nominees were known); *Anderson v. Quinn*, 495 F. Supp. 730 (D. Maine 1980) (striking down independent presidential candidate filing deadline of April 1, which fell 181 days before political parties were required to certify their nominees), *aff'd*, 634 F.2d 616 (1st Cir. 1980); *American Party v. Jernigan*, 424 F. Supp. 943, 949 (E.D. Ark. 1977) (striking down minor party filing deadline of March 7 on ground that it "would normally pass before any real political activity or interest therein could be expected"); *McCarthy v. Kirkpatrick*, 420 F.Supp 366, 375 (W.D. Mo. 1976) (striking down independent candidate filing deadline of April 27, which fell more than three months before primary election); *Lendall v. Bryant*, 387 F. Supp. 397, 402 (E.D. Ark. 1975) (striking down independent candidate filing deadline of April 2 on ground that "serious independent candidacies generally arise from substantial public dissatisfaction with party nominees ... [a]nd that dissatisfaction does not ordinarily manifest itself until party nominees and party positions are known"). As this line of precedent demonstrates, the constitutionality of a filing deadline depends not on its calendar date but its relationship to the primary election. Those, such as Michigan's, which fall "well in advance" of the primary, are invalid. *See Libertarian Party of Ohio*, 462 F.3d at 590-91.

The 8th Circuit has explained the rationale that supports the foregoing precedents:

> The American political system is basically the two-party system with which all are familiar, and ordinarily popular dissatisfaction with the functioning of that system sufficient to produce third party movements and independent candidacies does not manifest itself until after the major parties have adopted their platforms and nominated their candidates.

*MacBride*, 558 F. 2d at 449. That rationale applies here with equal force. Because the major parties will not select their nominees for Attorney General until their nominating conventions on August 25 and 26, Plaintiff Graveline was obliged to circulate nomination petitions and solicit signatures more than a month before voters knew who their partisan choices would be. Comp. ¶ 18 (ECF No. 1, PageID.8 - PageID.9). Under the statute, moreover, the major parties could select their nominees as many as 50 days after Plaintiff Graveline's filing deadline. Comp. ¶ 15, ECF No. 1, PageID.7. Michigan thus compels independent candidates such as Plaintiff Graveline to "gather signatures when the election is remote and voters are generally uninterested in the campaign." *Council of Alternative Political Parties*, 121 F. 3d at 880 (noting the resultant "difficulties involved in recruiting volunteers and persuading voters to contemplate signing nominating petitions").

Although Michigan's filing deadline is somewhat later in the calendar year than those that were held unconstitutional in the foregoing cases, that alone cannot redeem it. On the contrary, as the 11th Circuit has explained, the critical inquiry with respect to filing deadlines is whether "the difficulty of obtaining signatures in time to meet the early filing deadline" can be justified by the asserted state interests. *Bergland v. Harris*, 767 F. 2d 1551, 1555 (11th Cir. 1985). Thus, in *Bergland*, the Court of Appeals vacated the District Court's dismissal of a constitutional challenge to Georgia's July 11 filing deadline – *i.e.*, one nearly identical to the deadline challenged here – because the state failed to submit sufficient evidence to justify it. *See id.* at 1553-54 & n.4. *Bergland* therefore confirms that the burden imposed by a filing deadline, and not its calendar date, is dispositive. Under the great weight of authority cited herein, which invalidates filing deadlines that fall well in advance of a state's primary election, Michigan's filing deadline is unconstitutional.

**B.  Plaintiffs Are Likely to Prevail as to Count 2 Because Michigan's Early Filing Deadline, High Signature Requirement and Distribution Requirement Impose Severe Burdens That Function as an Absolute Bar to Independent Candidates Seeking Access to the General Election Ballot.**

The early filing deadline imposed by § 168.590c(2) is even more clearly unconstitutional as applied in conjunction with the high signature requirement imposed by M.C.L.A. § 168.544f and the signature distribution requirement imposed by M.C.L.A. § 168.590b(4). As a threshold matter, Michigan's 30,000-signature requirement for independent candidates for statewide office is among the most restrictive in the nation: only five states impose higher requirements. Decl. of R. Winger, ¶ 7,8 (concluding that signature requirement is far higher than necessary to protect state's regulatory interests) (ECF No. 1-2, PageID.22). The difficulty of complying with this high signature requirement is compounded, not only by the early filing deadline, but also by the substantial financial and human resources needed to satisfy the distribution requirement, which necessitates fielding petition circulators in half the congressional districts in the state. Comp. ¶ 17, ECF No. 1, Page ID.4. Taken together, these provisions impose burdens so severe that they function as an absolute bar to independent candidates for statewide office seeking access to Michigan's general election ballot. Decl. of R. Winger ¶ 5 (ECF No. 1-2, Page ID.10 - PageID.27). In fact, not one such candidate has ever complied with these requirements since they were enacted in 1988. *Id.*

The excessive restrictions that Michigan now imposes on independent candidates do not arise in a vacuum. Rather, they arise in the historical context of Michigan's utter disregard, if not actual antipathy, for independent candidates. *See* Decl. of R. Winger ¶¶ 3-4 (ECF. No. 1-2, PageID.20 - PageID.21). Until 1988, Michigan had no procedure whatsoever for Independent candidates to seek ballot access. *Id.* This was first held unconstitutional in 1976. *See McCarthy v. Austin*, 423 F.Supp. 990 (W.D. Mich. 1976) (ordering Eugene McCarthy's placement on general election ballot as independent candidate for president). The issue arose again in 1980, because the legislature had

failed to enact remedial legislation following the decision in that case. Gus Hall and Angela Davis, running as independent candidates in Michigan for president and vice-president, respectively, were obliged to file suit. *See Hall v. Austin*, 495 F.Supp. 782 (E.D. Mich. 1980). Once again, a federal court ordered that the independent candidates be placed on Michigan's ballot. *Id.* at 791-92.

In 1984, the Michigan legislature still had failed to enact a procedure for independent candidates to obtain ballot access. An independent candidate for the State Board of Education filed suit, the district court again declared Michigan's ballot access scheme unconstitutional, and the Secretary of State was ordered to place the candidate on the ballot. *See Goldman-Frankie v. Austin*, 727 F.2d 603, 607-08 (6th Cir. 1984). The Sixth Circuit affirmed, reasoning that "it would be understandable if the courts looked with increasing disfavor on the State's arguments regarding requisite support for a candidate when the State possesses the power to establish a uniform method of assuring such support and continuously refuses to do so." *Id.*

Michigan finally took action to address its failure to provide independent candidates with any means of attaining ballot access in 1988, when it enacted the statutory scheme currently in place. But this statutory scheme demonstrably fails to remedy the constitutional defect: not one candidate for statewide office has been able to comply with it in the 30 years since it was enacted. As the Supreme Court has explained, "past experience" is a reliable (though not unerring) indicator of whether a ballot access law is unconstitutionally burdensome. *Storer v. Brown*, 415 U.S. 724, 742 (1974). The relevant inquiry is whether "a reasonably diligent independent candidate be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?" *Id.* "It will be one thing if independent candidates have qualified with some regularity," the Court concluded, "and quite a different matter if they have not." *Id.*

The first step in analyzing the constitutionality of a ballot access law is to consider the "character and magnitude of the asserted injury" to Plaintiffs' First and Fourteenth Amendment rights. *Anderson v. Celebrezze*, 460 U.S. at 789. Here, as in *Anderson*, the challenged provisions "have a substantial impact on independent-minded voters." *Id.* at 790. That is especially true of Plaintiffs herein, who want to vote for an independent candidacy for the office of Attorney General precisely because they believe that Michigan's chief law enforcement officer should be a non-partisan actor. Decl. of W. Johnson ¶ 3 (ECF No. 1-4, PageID.39 - PageID.40); Decl. of M. Leibson ¶ 3 (ECF No. 1-5, PageID.42-PageID.43); Decl. of K. Deming ¶ 3 (ECF No. 1-6, Page ID.45 - Page ID.46). Indeed, that conviction is what motivated Plaintiff Graveline to resign his position as a federal prosecutor in order to run for Attorney General. *See* Decl. of C. Graveline ¶¶ 3-7 (ECF No. 1-3, PageID.29 - PageID.32). If Plaintiff Graveline does not appear on the ballot, the Plaintiff-Voters' rights will be severely burdened by their inability to vote for a non-partisan candidate for that office. Decl. of W. Johnson ¶ 4 (ECF No. 1-4, PageID.40); Decl. of M. Leibson ¶ 4 (ECF No. 1-5, PageID.43); Decl. of K. Deming ¶ 4 (ECF No. 1-6, PageID.46); *see also See Williams*, 393 U.S. at 31 ("the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot").

Plaintiffs' associational and equal protection rights are also heavily burdened. *See Anderson v. Celebrezze*, 460 U.S. at 793-94 ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment"); *cf. Williams*, 393 U.S. at 31 ("The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes"). As the Supreme Court has explained, "the primary values protected by the First Amendment … are served when election campaigns are not monopolized by the existing

parties." *Anderson v. Celebrezze*, 460 U.S. at 794 (citation omitted). Yet that is what the challenged statutory scheme does here: in the entire 30 years since it was enacted, it has served to exclude all independent candidates for statewide office from Michigan's general election ballot.

To justify its statutory scheme under the *Anderson v. Celebrezze* analysis, Michigan must show that the requirements imposed are "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citation omitted). This it cannot do. Michigan's statutory scheme simply "operate[s] to freeze the political status quo" by functioning as an absolute bar to independent candidates. *Jenness v. Fortson*, 403 U.S. 431, 438 (1971) at 438. As such, it cannot withstand scrutiny under *Anderson*.  This conclusion is buttressed by the evidence in the record. Plaintiff Graveline is a well-known and well-respected federal prosecutor who only recently resigned his position to run for Attorney General of Michigan. Decl. of C. Graveline ¶ 6, ECF No. 1-3, PageID.31 - PageID.32. Among his early supporters was former United States Attorney Barbara McQuade, who endorsed his candidacy. *Id.* at ¶ 8. Plaintiff Graveline commenced his petition drive almost immediately after launching his campaign, recruited 231 volunteers to collect signatures on his behalf, and also paid a professional petitioning firm $37,258 to collect signatures, notwithstanding his status as a non-wealthy "career public servant and family man". *Id.* at ¶¶ 9-13. Such efforts surely qualify as "reasonably diligent," *Storer*, 415 U.S. at 742, and yet they still yielded only 14,157 total signatures -- less than half the required number of valid signatures -- by the deadline. Decl. of C. Graveline ¶ 15 (ECF No. 1-3, PageID.35). The evidence thus makes clear that the combined burdens imposed by Michigan's high signature requirement, early filing deadline, and distribution requirement are sufficient to exclude even the most diligent of candidates. §§ 168.590c(2), 168.544f and 168.590b(4) are therefore unconstitutional as applied.

**Michigan's Electoral Scheme Also Imposes Unconstitutional Financial Burdens On Independent Candidates**

These provisions are also unconstitutional as applied because they impose an impermissible financial burden on independent candidates and voters who seek to associate for the advancement of their political goals. Well-settled Supreme Court precedent holds that states may not require that voters, candidates or political parties bear the costs of the states' own legislative choices with respect to regulating elections. *See Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) (holding poll tax of $1.50 unconstitutional); *Bullock v. Carter*, 405 U.S. 134 (holding filing fees ranging as high as $8,900 unconstitutional); *Lubin v. Panish*, 415 U.S. 709 (holding filing fees of any amount unconstitutional in the absence of non-monetary alternatives); *see also Belitskus v. Pizzingrilli*, 343 F.3d 632 (3rd Cir. 2003) (holding Pennsylvania's filing fees unconstitutional as applied to candidates unable to pay them); *Republican Party of Arkansas v. Faulkner County*, 49 F.3d 1289 (8th Cir. 1995) (holding that Arkansas cannot require political parties to hold and pay for primary elections); *Fulani v. Krivanek*, 973 F.2d 1539 (11th Cir. 1992) (holding unduly burdensome nomination petition signature verification fees unconstitutional); *Dixon v. Maryland State Bd. of Elections*, 878 F.2d 776 (4th Cir. 1989) (holding mandatory filing fee of $150 for non-indigent write-in candidates unconstitutional); *McLaughlin v. North Carolina Board of Elections*, 850 F. Supp. 373 (M.D. N.C. 1994) (holding five-cent per signature verification fee unconstitutional); *Clean-Up '84 v. Heinrich*, 590 F. Supp. 928 (M.D. Fl. 1984) (holding ten-cent per signature verification fee unconstitutional).

As the Supreme Court has explained, "it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or ***economic status***." *Anderson v. Celebrezze*, 460 U.S. at 793 & n.15 (emphasis added) ("courts quite properly 'have more carefully appraised the fairness and openness of laws that determine which political groups can place *any* candidate of their

choice on the ballot') (quoting L. Tribe, American Constitutional Law 774 (1978)). Michigan's statutory scheme runs afoul of this precedent because the combined effect of the challenged provisions is to exclude all non-wealthy candidates – as evidenced by the complete failure of any statewide independent candidate to comply with the provisions in the entire 30 years since they were enacted. Decl. of R. Winger ¶ 5 (ECF No. 1-2, PageID.21). Plaintiff Graveline, for example, retained a professional signature gathering firm that guaranteed it could collect signatures at a validity rate of 75 percent – but at a price of $6 per signature. *See* Decl. of C. Graveline ¶ 13 (ECF No. 1-3, PageID.35). To hire that firm to collect 30,000 valid signatures therefore would have cost Plaintiff Graveline's campaign $225,000. *Id.* This made it "a practical impossibility" to hire professionals to complete the petition drive. *Id.* ¶ 14 (ECF No. 1-3, PageID.35).

Nor was it possible for Plaintiff Graveline to recruit sufficient volunteers to avoid paying the cost of a professional petition drive. After all, his campaign recruited 231 volunteer signature gatherers in the time allotted, who contributed a combined total of more than 1,000 hours of work. *Id.* ¶¶ 11,15 (ECF No. 1-3, Page ID.34, PageID.35). Signature gathering is "a time-consuming and laborious endeavor," however, which takes "several minutes" for each attempt to collect a signature. *See* Decl. of J. Urbanic ¶ 4 (ECF No. 1-7, PageID.49). Thus, even volunteer signature gatherers who work diligently and efficiently can collect, on average, 6-8 signatures in 60-90 minutes of petition circulating. *Id.* ¶ 5 (ECF No. 1-7, PageID.49 - PageID.50). Additionally, signature gatherers' efforts are often hampered by inclement weather, potential signers' reluctance to be detained, and interference or obstruction by state or local officials who may be unaware that petitioning in public spaces is constitutionally protected conduct. *See* Decl. of C. Byrd ¶¶ 4,6 (ECF No. 1-8, PageID.53, PageID.54). Furthermore, Plaintiff Graveline's volunteers, like Plaintiff Graveline himself, were non-wealthy working people, with professional obligations and domestic duties that prevented them

12

from working full-time on a petition drive without pay. *Id.* ¶ 7 (ECF No. 1-8, PageID.54 - PageID.55).

The evidence thus shows that, as a practical matter, Michigan makes independent candidates' ability to pay a condition of their participation in its electoral process. Those who can muster the hundreds of thousands of dollars necessary to hire professionals might have a chance. But those who cannot raise such funds, such as Plaintiff Graveline, are excluded. It is well settled that the Constitution does not permit discrimination on the basis of financial status in the electoral context, where fundamental First Amendment rights are implicated. *See Lubin*, 415 U.S at 718; *Belitskus*, 343 F.3d at 647. That is especially true in light of the large sums of money needed to obtain ballot access as an independent candidate, which are "patently exclusionary" in character. *Bullock*, 405 U.S. at 143. Michigan's statutory scheme is therefore unconstitutional on the additional ground that it imposes an impermissible financial burden that discriminates against non-wealthy candidates. *Id.*; *Lubin*, 415 U.S. at 718.

### C.   Michigan's Statutory Scheme is Unconstitutional as Applied to the Plaintiff-Voters

The constitutional right of qualified voters, regardless of their political persuasion, to cast their votes effectively is one of the country's most important freedoms. By hindering the electoral choice by which these Plaintiff-Voters would have the opportunity to choose among competing alternatives that would otherwise exist, *i.e.* effectively excluding the independent candidacy of Plaintiff Graveline, the State of Michigan is severely burdening the Plaintiff-Voters right to cast a meaningful and effective vote.

This claim is grounded in the Supreme Court's recognition that ballot access laws "place burdens on two different, although overlapping, kinds of rights–the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political

persuasion, to *cast their votes effectively." Williams v. Rhodes*, *supra* at 30 (finding that both rights

"rank among our most precious freedoms"). As the Court explained in *Williams*, "the right to vote

is heavily burdened if that vote may be cast only for one of two parties at a time when other parties

are clamoring for a place on the ballot." *Id*. At 31. The clear implication of *Williams*, as the Court

itself has recognized, is that "a voter hopes to find on the ballot a candidate who comes near to

reflecting his policy preferences on contemporary issues." *Anderson v. Celebrezze*, *supra*, 460 U.S.

at 787 (quoting *Lubin*, *supra* at 718).

These propositions are settled law in the Sixth Circuit and the Eastern District of Michigan.

*See, e.g., Libertarian Party of Ohio v. Blackwell*, *supra* at 585:

> When analyzing the statutes, we are cognizant that "the state laws
> place burdens on two different, although overlapping, kinds of rights
> – the right of individuals to associate for the advancement of
> political beliefs and the right of qualified voters, regardless of their political
> persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393
> U.S. 23, 30, 90 S.Ct. 5, 21 L.Ed.2d 24 (1968); *see also Anderson v.
> Celebrezze*, 460 U.S. 780, 786, 103 S.Ct. 1564, 75 L.Ed.2d 547
> (1983) ("[T]he rights of voters and the rights of candidates do not
> lend themselves to neat separation; laws that affect candidates always
> have at least some  theoretical correlative effect on voters.") (quoting
> *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92
> (1972). The right to cast an effective vote "is of the most fundamental
> significance under our constitutional structure." *Burdick v. Takushi*,
> 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

**Cf**. *Goldman-Frankie v. Austin*, *supra* at 605 ("Plaintiffs' charge poses no new issue of constitutional

law. First, it is settled that restrictions on access to the ballot impinge on the fundamental right to

associate for the advancement of political beliefs and the fundamental right to vote. *Illinois State

Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230

(1979); *Williams v. Rhodes*, *supra* at 30). **See also** *Green Party of Mich. v. Land*, 541 F. Supp. 2d

912, 917 (E.D. Mich. 2008); *Mogk v. City of Detroit*, 335 F. Supp. 698, 700 (E.D. Mich. 1971)

("*Reynolds, supra,* and *Williams, supra,* hold that a citizen has a right to vote effectively and, by

14

logical extension, that means that he is to be given a wide latitude in his choice of public officials. His right to support a candidate of his choice—including himself—cannot be arbitrarily restricted."); *Bolanowski v. Raich*, 330 F. Supp. 724, 727 (E.D. Mich. 1971) ("The Supreme Court has also made it clear that when the right of association and the right to vote effectively are infringed, "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms. *NAACP v. Button*, 371 U.S. 415, 438 (1963)"; *Williams v. Rhodes*, *supra* at 31.)

In this case, the exclusion of the independent candidacy of Plaintiff Graveline through the use of M.C.L.A. §§ 168.544f, 168.590b(4), and 168.590c(2), separately and in combination, to deprive the Plaintiff-Voters of an effective choice is burdensome, unreasonable, and is not narrowly tailored to meet any compelling or legitimate state interest.

Plaintiff Graveline offers the voters a non-partisan professional choice for the position of attorney general – a departure from what he sees as a continuing history of politicization of the office by members of the Republican and Democratic parties. Decl. of Christopher Graveline, Exh. B, ¶¶ 3-7, ECF No. 1-3, Page ID.29 - PageID.32. He believes that the Office of the Michigan Attorney General should not be used to advance a political agenda but should concentrate instead on improving the lives of citizens by prompt and judicious enforcement of the law to address societal concerns. *Id*., ¶ 5.

The voters of Michigan, including the three Plaintiff-Voters in this action (Christopher Graveline, Willard H. Johnson, Michael Leibson, and Kellie K. Deming), who have different political histories but want to vote for Mr. Graveline, deserve the opportunity to make that choice.

## II.   THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT GRANT THEM INJUNCTIVE RELIEF.

It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (citing *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam)). The Third Circuit, for example, has characterized this injury as "intolerable," and has emphasized that such a case involves "a fundamental First Amendment right to political participation – not an inconvenience or burden but wholesale disinfranchisement." *Constitution Party of PA v. Aichele*, 757 F.3d 347, 346, 365 n.21 (3d Cir. 2014).

Here, absent the injunctive relief requested, the Plaintiffs will suffer exactly that "wholesale disinfranchisement." On July 19, 2018, the State of Michigan excluded Mr. Graveline from the ballot. When Mr. Graveline attempted to file the statutorily required two copies of notarized Affidavits of Identity and his 14,157 qualifying petitions at the Bureau of Election offices in Lansing, the Bureau refused to accept any of the filings stating that they did not consider it a "complete filing." (*See* Exhibit H, David Foster email (ECF No. 1-9, Page ID.57.)

## III.   THE BALANCE OF THE EQUITIES TIPS DECIDEDLY IN PLAINTIFFS' FAVOR

"There are few greater burdens that can be placed on a political party [or independent candidate] than being denied access to the ballot" and "any regulation of this right 'must be narrowly drawn to advance a state interest of compelling importance.'" *Libertarian Party of Ohio v. Blackwell*, *supra* at 593 (citing *Burdick v. Takushi*, *supra* at 434).

General arguments to the effect that the state laws do not limit a candidate's right to recruit supporters and engage in political speech are not persuasive. *Id*. at 591. A statute that affects the key First Amendment right of access to the ballot does not become less burdensome because it leaves

other First Amendment rights intact. *Id.*, citing *California Democratic Party v. Jones*, 530 U.S. 567, 581 (2000).

Assertions of "an interest in regulating the number of candidates in order to promote political stability ... and avoid voter confusion" are not compelling. "A state may not legitimately claim that preventing other parties from accessing the ballot is needed to protect political stability." *Id.* at 594.

It is difficult to imagine a "state interest of compelling importance" which would necessitate keeping Mr. Graveline off the ballot as an independent candidate for the position of attorney general, particularly when there are Michigan citizens who wish to vote for him rather than the candidates of the major parties.

## IV.     AN INJUNCTION IS IN THE PUBLIC INTEREST.

Granting the requested injunctive relief is in the public interest because, as the Supreme Court has observed, "all political ideas cannot and should not be channeled into the programs of our two major parties." *Williams v. Rhodes, supra* at 39 (citation omitted). Yet that is precisely what is happening in Michigan due to the State's unconstitutional application of M.C.L.A. §§ 168.590c(2), 168.544f, and 168.590b(4) in combination. The challenged statutory scheme thus harms the voting rights, not only of the Plaintiffs, but of all Michigan voters. "By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences" *Illinois State Bd. of Elections v. Socialist Workers Party, supra* at 184).

This important right to vote for alternative Independent candidates is well-established in the Sixth Circuit:

> While a voter is not guaranteed that one of the political parties will reflect his or her values, "the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams*, 393 U.S. at 31, 89 S.Ct. 5; *see also Anderson*, 460 U.S. at 787, 103 S.Ct. 1564. "In short, the primary values protected by the First Amendment . . .

17

are served when election campaigns are not monopolized by the existing political parties." *Anderson*, 460 U.S. at 794, 103 S.Ct. 1564.

*Libertarian Party of Ohio v. Blackwell*, *supra* at 588-89.

In this case there are no legitimate countervailing concerns. This request for injunctive relief arises entirely because Michigan is enforcing a statutory scheme that is unconstitutional. But the enforcement of an unconstitutional law vindicates no public interest. See, *e.g.*, *ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("Neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law")).

## CONCLUSION

For the reasons stated, Plaintiffs request that the Court issue a Preliminary Injunction directing the Defendants to place Plaintiff Christopher Graveline on the November 6, 2018 General Election ballot.

DATED:        August 3, 2018                    Respectfully submitted,

                                                */s/ William P. Tedards, Jr.*

                                                _____
                                                **WILLIAM P. TEDARDS, JR.***
                                                1101 30th Street, NW, Suite 500
                                                Washington, DC 20007
                                                202-797-9135
                                                BT@tedards.net
                                                (DC 143636) (MI)

                                                **OLIVER B. HALL****
                                                Center for Competitive Democracy
                                                P.O. Box 21090
                                                Washington, D.C. 20009
                                                202-248-9294
                                                oliverhall@competitivedemocracy.org
                                                (DC 976463)

*Counsel of Record
**Bar membership pending                      Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2018, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, thereby serving all counsel of record.

In addition, the foregoing document was also served via email to counsel for Defendants as follows:

Denise Barton (AG)
Attorney General's Office State of Michigan
BartonD@michigan.gov

/s/ William P. Tedards, Jr.

_____

**WILLIAM P. TEDARDS, JR.**\*
(DC 143636) (MI)

19