UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAVELINE,
WILLARD H. JOHNSON,                  No. 2:18-cv-12354
MICHAEL LEIBSON, and KELLIE
K. DEMING,                           HON. VICTORIA A. ROBERTS

      Plaintiffs,                    MAG. DAVID R. GRAND

v

RUTH JOHNSON, Secretary of
State of Michigan, SALLY
WILLIAMS, Director of Michigan
Bureau of Elections, in their official
capacities,

      Defendants.
_____

William P. Tedards, Jr.
Attorney for Plaintiffs
1101 30th Street, NW, Suite 500
Washington, DC  20007
202.797.9135

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
_____/

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

Table of Contents....................................................................................i

Index of Authorities.............................................................................ii

Concise Statement of Issues Presented...........................................v

Controlling or Most Appropriate Authority .................................v

Introduction ..........................................................................................1

Statement of Facts...............................................................................3

Argument ...............................................................................................4

I.     The preliminary injunction standard..................................4

II.    Plaintiffs are not likely to succeed on the merits. ...........5

    A.    The applicable standard of review for ballot access and
             equal protection challenges is less exacting scrutiny...........13

    B.    The burden is not substantial or discriminatory and is
             justified by important state interests. ..................................14

    C.    No discrimination on the basis of wealth...............................19

III.   Even if Plaintiffs can demonstrate irreparable harm that
       factor alone does not support injunctive relief...............................21

IV.    An injunction will cause irreparable harm to the State...............22

V.     An injunction is not in the public interest. ...................22

Conclusion and Relief Requested...........................................................22

Certificate of Service ..............................................................................23

# INDEX OF AUTHORITIES

Page

**Cases**

*American Party of Texas v. White*, 415 U.S. 767 (1974)................*passim*

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...........................13

*Arutunoff v. Oklahoma State Election Bd.*, 687 F.2d 1375 (10th Cir. 1982) ..............................................................10

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012)............................5

*Beller v. Kirk*, 328 F. Supp 485 (S.D. Fla, 1970) ......................................9

*Bullock v. Carter*, 405 U.S. 134 (1972) ...................................................18

*Burdick v. Takushi*, 504 U.S. 428 (1992)......................................1, 13, 21

*Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich. 1969) .....................................................................4

*Erard v. Johnson*, 905 F.2d 782 (E.D. Mich. 2017)...........................11, 14

*Ferguson v. Skrupa*, 372 U.S. 726 (1963) ...............................................15

*Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620 (6th Cir. 2000)...............................................................................22

*Green Party of Alaska v. State, Div of Elections*, 147 P.3d 728 (Alaska, 2006) ................................................................9

*Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015)........13

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007) .......5

*Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D. Mich. 1972) ................................................................4

*Jenness v Fortson*, 403 U.S. 431 (1971) ..........................................6, 8, 17

*Jenness v. Fortson*, 403 U.S. 431 (1971) .................................................... 6

*LaRouche v. Kezer*, 990 F.2d 36 (2d Cir. 1993). ..................................... 19

*Libertarian Party New Hampshire v. State*, 910 A.2d 1276 (N.H., 2006) ................................................................................................. 9

*Libertarian Party of Florida v State of Fla*, 710 F.2d 790 (11th Cir. 1983) ............................................................................................... 15

*Libertarian Party v. Bond*, 764 F.2d 538 (8th Cir. 1985) ........................ 9

*Maryland v. King*, 133 S. Ct. 1 (2012) ................................................... 22

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) ................ *passim*

*Nader 2000 Primary Committee, Inc v. Bartlett*, 230 F.3d 1353 (4th Cir. 2000) .......................................................................................... 9

*Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004) ........................................ 10

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ............................................................................................... 22

*Rathmann Group v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989) ............. 4

*Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) ..................................... 10

*Socialist Workers Party v Secretary of State*, 317 N.W.2d 1 (1982) .. 6, 14, 18

*Storer v. Brown*, 415 U.S. 724 (1974) ................................................. 6, 14

*Timmons v. Twin Cities Area New* Party, 520 U.S. 351 (1997).11, 16, 19, 21

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2nd Cir. 1995) ....................................................................................... 4

## Statutes

Mich. Comp. Laws § 168.544f .................................................................... 3

Mich. Comp. Laws § 168.590b(4) ................................................................ 3

Mich. Comp. Laws § 168.590c(2) ................................................................ 3

Mich. Comp. Laws § 168.685(1) ........................................................... 11, 12

Mich. Comp. Laws 168.544f ...................................................................... 1

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Whether a preliminary injunction should be denied because Plaintiffs have failed to establish the requisite elements for this request for extraordinary relief.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*American Party of Texas v. White*, 415 U.S. 767 (1974)

*Erard v. Johnson*, 905 F.2d 782 (E.D. Mich. 2017)

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986)

# INTRODUCTION

"[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."

*Burdick v. Takushi*, 504 U.S. 428, 441, n. 10 (1992).

Under Michigan law, all candidates for state-wide public office without political party affiliation, including candidates for state Attorney General, must submit a minimum of 30,000 valid signatures. Mich. Comp. Laws 168.544f.  In this case, Plaintiff Christopher Graveline did not comply with state election law when he attempted to file his nominating petition for Attorney General.  While Plaintiffs collected approximately 14,157 signatures in 42 days, Graveline fell short by a significant amount.  (Complaint Exhibit B, Declaration of Christopher Graveline, R.1, Page ID # 35.)

There is a logical and reasonable explanation though for Plaintiff Graveline admitted noncompliance with the July 19, 2018 filing deadline.  He waited until June 4, 2018 to begin his campaign. (Complaint Exhibit B, Declaration of C. Graveline, ¶9, R. 1, Page ID #

1

33.)  By comparison, several other candidates for Attorney General filed their statements of organization several months earlier in 2017.[1]

Plaintiff Graveline and three individual voters now seek a preliminary injunction to enjoin what are eminently reasonable requirements imposed on candidates seeking to run with no political party affiliation.  Plaintiffs' request should be denied because they have failed to meet the prerequisites for awarding injunctive relief.

---

[1] For example, the following statements of organization were filed by others seeking to run for Attorney General (in chronological order):

Friends of Dana Nessel (August 15, 2017) https://cfrsearch.nictusa.com/committees/518223#.

Pat Miles for Attorney General (August 19, 2017) https://cfrsearch.nictusa.com/committees/518247.

Tonya Schuitmaker for Michigan (September 18, 2017) https://cfrsearch.nictusa.com/committees/518247.

Tom Leonard for Michigan (October 4, 2017) https://cfrsearch.nictusa.com/committees/518295#.

William Noakes for Attorney General (October 17, 2017) https://cfrsearch.nictusa.com/committees/518307#.

Gerald T. Van Sickle Committee (July 14, 2018) https://cfrsearch.nictusa.com/committees/519019#.

## STATEMENT OF FACTS

Accepting as true the factual allegations in the complaint and the matters of public record, the facts are straight-forward.  On or about June 4, 2018, Plaintiff Graveline filed a statement of organization to become a candidate for the office of Attorney General with no political party affiliation.[2]  (Complaint ¶1, R. 1, Page ID # 3.)  As a candidate for statewide office, Mr. Graveline is required to comply with Michigan's Election Law, which includes statutory deadlines.

In this lawsuit, Plaintiff Graveline and three supporters of Graveline mount a constitutional challenge to several election requirements, including (1) the 30,000 minimum signature requirement that candidates for Attorney General without political party affiliation must obtain, with at least 100 registered voters in each of at least 1/2 of the congressional districts in the state (Mich. Comp. Laws § 168.544f; § 168.590b(4)); (2) the filing deadline for filing the qualifying petition, which was July 19, 2018 (Mich. Comp. Laws § 168.590c(2)(not later than 4 p.m. on the 110th day before the general election); and (3) the

---

[2] https://cfrsearch.nictusa.com/committees/518994 (last accessed on August 15, 2018).

requirement that signatures on a qualifying petition shall not be obtained more than 180 days immediately before the date of filing. Mich. Comp. Laws § 168.590b(3).  Plaintiffs' motion for preliminary injunctive relief should be denied because they have failed to meet the requirements for granting this request for extraordinary relief.

**ARGUMENT**

## I.    The preliminary injunction standard.

It is well settled that a preliminary injunction is an extraordinary remedy which a court grants only upon a clear showing of substantial likelihood of success at trial and irreparable injury if the defendant is not restrained.  *Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich. 1969).  A movant must meet an even higher standard for relief where—as here—the injunction will alter rather than maintain the status quo or where the injunction will provide the movant with substantially all the relief sought during the trial on the merits.  *See generally Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D. Mich. 1972); *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2nd Cir. 1995); *Rathmann Group v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989).

4

Courts balance four factors in determining whether to grant a temporary or preliminary injunction:  "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).  In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (internal citations and quotations omitted).  This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id.*

## II.    Plaintiffs are not likely to succeed on the merits.

Plaintiffs assert that the signature requirement, distribution requirement, and filing deadline for Attorney General candidates with no political affiliation imposes severe burdens and prevents candidates from obtaining ballot access.  Plaintiffs also contend that these requirements impose facially unconstitutional financial burdens on

5

independent candidates because Plaintiff Graveline could not recruit sufficient volunteers to avoid paying the cost of a professional petition drive, estimated to cost approximately $225,000. These arguments fail.

Courts have repeatedly held that regulation of elections by restricting access to the ballot is constitutionally permissible, *Socialist Workers Party v Secretary of State*, 317 N.W.2d 1 (1982) (citing *Jenness v Fortson*, 403 U.S. 431, 442 (1971)), and that states may use means that are effective. *Storer v. Brown*, 415 U.S. 724, 736 (1974). States are permitted to require candidates and new parties to demonstrate a modicum of community support. See *Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986). In numerous cases, the United States Supreme Court has upheld against equal protection or voting rights challenges various state statutory or regulatory provisions requiring minor parties and their candidates to gather a specified number or percentage of signatures of voters on petitions for ballot access, even though the amount needed was allegedly high or was not needed by other parties.

For example, in *Jenness v. Fortson*, 403 U.S. 431, 441 (1971), the United States Supreme Court upheld a Georgia election law under

6

which the nominee of any minor party could have his name placed on the general election ballot if within a 180-day deadline he filed a nominating petition signed by not less than 5% of the eligible voters. The Court noted that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other, and accordingly held that the State had not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot. The Court observed that there is an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest in avoiding confusion, deception, and frustration of the democratic process at the general election.

Similarly, in *American Party of Texas v. White*, 415 U.S. 767, 783 (1974), the Supreme Court held that various preconditions imposed by a Texas election law for access to the general election ballot by minor parties and candidates, such as requiring within a 55-day period evidence of support in the form of signatures by persons numbering at

7

least 1% of the total vote cast for governor at the last preceding general

election, did not violate equal protection rights.  The Court held that the

state's admittedly vital interests of preservation of the integrity of the

electoral process and regulating the number of candidates on the ballot

to avoid undue voter confusion were sufficiently implicated to insist

that political parties appearing on the general ballot demonstrate a

significant, measurable quantum of community support.  The Court

explained that so long as the larger parties had to demonstrate major

support among the electorate at the last election, whereas the smaller

parties did not have to do so, the latter, without being invidiously

treated, could be required to establish their position in some other

manner.  Reasoning that to demonstrate this degree of support did not

appear either impossible or impractical, the Court was unwilling to

assume that the requirement imposed a substantially greater hardship

on minority party access to the ballot.

Thus, *Jenness* and *American Party* established with unmistakable

clarity that states have an "undoubted right to require candidates to

make a preliminary showing of substantial support in order to qualify

for a place on the ballot. . . ."  *Munro*, 479 U.S. at 194 (citations

8

omitted).  The Court confirmed these principles in *Munro* when it

upheld a state statute restricting the general election ballot to

candidates receiving at least 1% of the total vote in the primary.

Michigan's statute is more lenient by requiring only 1% of the

total votes cast for Governor in the preceding election, rather than a

percentage of the total votes.  Numerous state and federal cases have

upheld ballot access restrictions on similar grounds.[3]  Moreover, the

---

[3] See, e.g., *Green Party of Alaska v. State, Div of Elections*, 147 P.3d 728
(Alaska, 2006) (Statutory three percent requirement for recognition as a
political party was not an unconstitutional infringement on ballot
access that violated a third-party candidate's right to free speech and
equal protection); *Libertarian Party New Hampshire v. State*, 910 A.2d
1276 (N.H., 2006) (State's interest in requiring some preliminary
showing of significant support before printing the name of a political
organization's candidate on the ballot was sufficient to justify the
reasonable, nondiscriminatory restrictions that were placed on minor
parties' rights under statutory nomination scheme, which conditioned
placement on ballot by number of votes received in previous election or
number of voters signing nomination papers, and thus the statutes did
not violate the state constitution's equal protection guarantee); *Nader
2000 Primary Committee, Inc v. Bartlett*, 230 F.3d 1353 (4th Cir. 2000)
(upholding a North Carolina ballet access law that required new party
aspirants to submit a petition containing the signatures of 2% of the
number of registered voters who voted in the most recent general
election for governor); *Beller v. Kirk*, 328 F. Supp 485 (S.D. Fla, 1970),
judgment aff'd without opinion, 403 U.S .925 (1971) (upholding
constitutionality of a Florida statute requiring 3% of the electorate to
sign petitions in order for a third party to appear on the ballot);
*Libertarian Party v. Bond*, 764 F.2d 538, 539 (8th Cir. 1985) (upholding
Missouri statute that permitted the formation of new parties if the

Supreme Court has never required a state to make a particularized

showing of the existence of voter confusion, ballot overcrowding, or the

presence of frivolous candidacies prior to the imposition of reasonable

restrictions on ballot access.  *Munro*, 479 U.S. at 195.  In other words,

the state is not required to provide elaborate, empirical verification of

the weightiness of the state's asserted justifications.  See *Munro*, 479

U.S. at 195-196 ("Legislatures . . . should be permitted to respond to

---

party filed a timely petition that was "signed by the number of
registered voters in each of the several congressional districts which is
equal to at least one percent of the total number of votes cast in the
district for governor in the last gubernatorial election, or by the number
of registered voters in each of one-half of the several congressional
districts which is equal to at least two percent of the total number of
votes cast in the district for governor at the last gubernatorial
election"); *Arutunoff v. Oklahoma State Election Bd.*, 687 F.2d 1375
(10th Cir. 1982) (upholding Oklahoma's requirement that a new
political party demonstrate political support by obtaining the signatures
of registered voters equal to 5% of the total votes cast in the preceding
general election for either president or governor); *Rogers v. Corbett*, 468
F.3d 188 (3d Cir. 2006) (upholding Pennsylvania statute requiring
candidate of minor political party for statewide office to obtain
nominating signatures equal to two percent of vote total of highest-
polling candidate in previous statewide election); *Nader v. Keith*, 385
F.3d 729 (7th Cir. 2004) (upholding Illinois Election Code provisions
requiring that candidate not nominated by party receiving at least 5%
of votes in most recent statewide election obtain nominating petitions
signed by at least 25,000 qualified voters, that address on each petition
be where petitioner is registered to vote, and that petitions be
submitted to state board of elections at least 134 days before election).

potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights.")  And significantly, Michigan is permitted to "enact reasonable election regulations that may, in practice, favor the traditional two-party system." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 353 (1997).

The case of *Erard v. Johnson*, 905 F.2d 782 (E.D. Mich. 2017) provides insight into the issues pending before this Court.  Plaintiff Erard, a longtime member and official of the Socialist Party, challenged Michigan's election law requirement for establishing new political parties, which is very similar to the 1% requirement for candidates seeking to become elected to Attorney General without political party affiliation.  Under Mich. Comp. Laws § 168.685(1), a candidate of a "new political party" will not be printed on Michigan's general election ballot unless the party timely produces "signatures of registered and qualified electors equal to not less than 1% of the total number of votes cast" for governor at the last gubernatorial election.  Mich. Comp. Laws § 168.685(1).  Section 685 imposed similar requirements requiring a

distribution of at least 100 registered voters in each of 1/2 of the
congressional districts of the state along with establishing a
requirement that signatures shall be obtained not more than 180 days
immediately before the date of filing.  The Socialist Party fell well short
of obtaining the required 32,261 signatures by the July 19, 2012
deadline for the 2012 general election.[4]  Erard maintained that this
was, at least in part, because this requirement is both
unconstitutionally burdensome and inequitable.  Erard's challenge was
rejected.

The Court adopting the report and recommendation of the
magistrate, denied the motion for preliminary injunction concluding:

- Michigan's petition submission deadline, which is 110 days
  in advance of the November general election, i.e., mid-to-late
  July is only slightly burdensome; [*Id.* at 800]

- Michigan's cap on the number of signatures that can be
  gathered from one geographic area—100 from each of half of
  Michigan's 15 congressional districts, Mich. Comp. Laws §
  168.685(1)— imposes at most a slight burden on ballot
  access.  [*Id.*]

---

[4] This minimum number of signatures found to be valid in *Erard* is even
a higher minimum (30,000) number than that required for candidates
like Graveline running for statewide office with no political party
affiliation.

- Plaintiff is not likely to demonstrate that the signature requirement violates his First Amendment right to associate for the advancement of political beliefs or to cast his vote effectively.  [*Id.* at 806]

The same result should occur here.

## A. The applicable standard of review for ballot access and equal protection challenges is less exacting scrutiny.

The U.S. Supreme Court has repeatedly stressed that there is no "litmus-paper test" for evaluating constitutional challenges to ballot-access restrictions.  *Munro*, 479 U.S. at 193 (quoting *Storer*, 415 U.S. at 730).  With regard to Plaintiffs' assertion that the challenged restriction violates First and Fourteenth Amendment associational rights, courts examine the character and magnitude of the burden in question, the importance of the individual interests at stake, and the state interests asserted in support of the classification.  *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 427, 433 (1992); *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015).  Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review and a state's "important regulatory interests" will usually be enough to justify "reasonable,

nondiscriminatory restrictions."  See *Anderson,* 460 U.S. at 788.

Applying this balancing test here, strict scrutiny is not triggered

because, as argued below, the burden in question is not substantial and

Michigan has important regulatory interests.  See *Erard*, 905 F. Supp.

2d at 806 ("this Court previously has recognized that signature

requirements promote the important state interest ensuring that only

bona fide independent candidates with a measure of support gain ballot

access, preventing frivolous candidates from clogging the ballot and

confusing voters.")

Neither is the compelling state interest test triggered with regard

to the equal protection argument.  *Socialist Workers Party*, 412 U.S. at

589 (citing *American Party*, 415 U.S. at 781).

**B.   The burden is not substantial or discriminatory and is justified by important state interests.**

The elections laws challenged here are not overly burdensome or

invidiously discriminatory.  In *Storer*, 415 U.S. at 742, the Supreme

Court recognized that the inquiry is whether a *reasonably* diligent

candidate or minor party can be expected to satisfy the signature

requirements.  *Storer* upheld a requirement of signatures totaling 5% of

the vote of the last general election.  See *Libertarian Party of Florida v*

14

*State of Fla*, 710 F.2d 790 (11th Cir. 1983) (finding it significant that a named third party had twice qualified its slate of candidates by meeting the 3% of the state's registered voter signature petition requirement and reasoning that this success demonstrated that the law did not freeze the status quo but provided a realistic means of access).

Nor is the petition signature requirement for independent candidates more burdensome than the election performance requirement for retention of ballot access for candidates from a political party.  States need not treat political parties and candidates identically for state laws to withstand constitutional challenge.  Statutes create many classifications that do not deny equal protection; it is only "invidious discrimination which offends the Constitution."  *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963) (footnote omitted).  The Supreme Court has explained the distinction between mere differences and invidious discrimination:

> The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. [A State is not] guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot. Sometimes the grossest discrimination can lie in

treating things that are different as though they were
exactly alike . . .

*American Party*, 415 U.S. at 781-782 (citing *Jenness*, 403 U.S. at
441-442).

Thus, for example, the Supreme Court in *American Party* held the

plaintiffs' burden was not satisfied merely because small parties must

proceed by convention when major parties are permitted to choose their

candidates by primary election, because, although "[t]he procedures are

different," "the Equal Protection Clause does not necessarily forbid the

one in preference to the other." *American Party*, 415 U.S. at 782, n. 13.

And again, the state's reasonable election regulations may, in practice,

favor the traditional two-party system. *Timmons*, 520 U.S. at 353.

There are two standards for determining whether a primary or

convention system will be used to nominate candidates. Achieving 5%

of the total vote cast for all Secretary of State candidates qualifies the

party to use a primary rather than a convention, while those with fewer

votes than the 5% must use a convention process. Whether by petition

performance or election performance, all parties must re-establish

ballot access status in each November general election. Certainly,

Plaintiffs have made no showing that petition signatures are harder to

collect than votes. In fact, a petition signature requirement is arguably more predictable and reliable, and thus less burdensome, than a voting requirement. And even if this Court determines that the petition signature requirement for independent candidates is somewhat more burdensome than the standard that must be met by candidates affiliated with a major or minor party, the signature requirement for independent candidates is not substantially more burdensome.

First, the signature requirement is less burdensome than requirements upheld by the Supreme Court in *Jenness* and *American Party*. *Jenness*, 403 U.S. at 441; *American Party*, 415 U.S. at 782-783. Second, there are no other suffocating restrictions on petition circulation. The filing time of 180 days is reasonable; it is identical to the time period upheld in *Jenness* and far more lenient than the 55-day circulation period upheld in *American Party*. Moreover, the number of signatures required in that time period is practicable. Too, the requirement that the signatures be obtained from at least one-half of the state's congressional districts is not overly burdensome where the state's interest in requiring a significant modicum of support naturally extends to a showing of statewide support. *Jenness*, 403 U.S. at 442

17

("important state interest in requiring some preliminary showing of a *significant* modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding voter confusion, deception and even frustration of the democratic process at the general election.")  (Emphasis added.) Michigan's interests cannot be served equally well in significantly less burdensome ways.

But even if this Court determines that the challenged provision substantially burdens First Amendment laws or invidiously discriminates against independent candidates, triggering strict scrutiny, the State has a compelling interest in protecting the integrity of its election process, *see American Party*, 415 U.S. at 781) in preventing the clogging of the state's election machinery, and in avoiding voter confusion.  See *Socialist Workers Party*, 412 U.S. at 589 (citing *Bullock v. Carter*, 405 U.S. 134, 145 (1972)); see also *Socialist Party*, 412 Mich. at 591, n. 14 (noting that the Supreme Court in *American Party of Texas v. White* described "preservation of the integrity of the electoral process and regulating the number of candidates on the ballot to avoid undue voter confusion" as compelling

18

state interests).  The Supreme Court has also recognized the State's

interest in screening out frivolous candidates and discouraging party-

splintering and factionalism.  *Timmons*, 520 U.S. at 367.

Michigan has a recognized interest in ensuring that candidates for

statewide office demonstrate a modicum of statewide support, and to do

so, voters must necessarily publicly show their support at the petition

stage.  This does not, however, lock a voter into voting for that

candidate on the general election ballot.

## C.     No discrimination on the basis of wealth.

Plaintiffs argue that the election regulations for independent

candidates for Attorney General impose an unconstitutional financial

burden.  Not so.  The purpose of the signature requirement is not to

ferret out candidates with minimal financial resources but instead to

ensure adequate statewide support.  This is an important purpose—not

unconstitutional discrimination.  See *LaRouche v. Kezer*, 990 F.2d 36,

41 (2d Cir. 1993).

Plaintiffs also argue that volunteer petition circulators regularly

are hampered by inclement weather and encounter potential signers

who are reluctant to be detained.  A petition-signer's fear or apathy is

not an impediment created by the State.  The Supreme Court rejected this argument in *Munro*, holding that "States are not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." *Munro*, 479 U.S. at 198.

Thus, under Michigan law, *all* parties must establish their ballot access status in each November general election.  They do so either by petition performance—collecting 1% of the total number of votes cast for all candidates for governor—or by election performance—principal candidate receiving 1% of the total number of votes cast for the successful candidate for Secretary of State.

The U.S. Supreme Court and Michigan courts have recognized that "States have a 'strong interest' in the stability of their political systems" and, while they may not enact "unreasonably exclusionary restrictions," they "need not remove all of the many hurdles third parties face in the American political arena today." *Timmons*, 520 U.S. at 367.

Here, the statutes do not unfairly disadvantage independent candidates, but rather they avoid the waste and confusion of

encumbering the ballot with parties that have not demonstrated a modicum of statewide support.  Furthermore, the individual Plaintiffs have failed to show a likelihood of success on the claim that these election regulations severely burden their right to cast a meaningful vote.  Plaintiff Graveline did not follow Michigan's election regulations. Limiting Plaintiffs' choice of candidates "to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Burdick*, 504 U.S. at 440, n.10.

## III.    Even if Plaintiffs can demonstrate irreparable harm that factor alone does not support injunctive relief.

Even if one or more of the Plaintiffs could demonstrate irreparable harm in the sense that Plaintiff Graveline will not appear as a candidate on the ballot, as set forth above Plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional claims.  As the Sixth Circuit has held, "a finding that there is simply no likelihood of success on the merits is usually fatal" to a request for injunctive relief.  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).  In addition, as discussed below, the

other injunctive factors weigh against Plaintiffs and in favor of

Defendants.

## IV.    An injunction will cause irreparable harm to the State.

An injunction will irreparably harm the State.  The Supreme

Court has recognized that "anytime a State is enjoined by a court from

effectuating statutes enacted by representatives of its people, it suffers

a form of irreparable injury."  *Maryland v. King*, 133 S. Ct. 1, *3 (2012)

(C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. of Cal. v.*

*Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).  The election laws

challenged here were duly enacted by the Michigan Legislature.

## V.    An injunction is not in the public interest.

The injunctive relief sought here is not in the public interest.  The

people of Michigan have a strong interest in having the State's election

laws effectuated.  See *Maryland*, 567 U.S. at *3.

In sum, Plaintiffs have not met the factors that justify the

extraordinary relief they seek, which is placement of Plaintiff Graveline

on the November 6 general election ballot.

### CONCLUSION AND RELIEF REQUESTED

WHEREFORE,  Plaintiffs' request for preliminary injunctive

relief should be denied.

Respectfully submitted,

*s/Denise C. Barton*
Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434

Dated:  August 16, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2018, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

*s/Denise C. Barton*
Denise C. Barton (P41535)
Assistant Attorney General
Attorney for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434