UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

CHRISTOPHER GRAVELINE, WILLARD H. JOHNSON, MICHAEL LEIBSON, and KELLIE K. DEMING,

                              Plaintiffs,

v.

RUTH JOHNSON, Secretary of State of Michigan, and SALLY WILLIAMS, Director of Michigan Bureau of Elections, in their official capacities,

                              Defendants.

Case No. 2:18-cv-12354-VAR-DRG

Judge Victoria A. Roberts
Magistrate Judge David R. Grand

_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL
CHALLENGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

> 1.   Plaintiffs Are Likely To Prevail On The Merits Of Count I -- The Secretary
>      Makes No Attempt To Defend Against It And The Great Weight Of Authority
>      Holds Filing Deadlines Such As Michigan's Unconstitutional.. . . . . . . . . . . . . . . . . 2
>
> 2.   Plaintiffs Are Likely To Prevail On The Merits of Count II -- Controlling
>      Authorities Demonstrate That Michigan's Combination Of Restrictions Is
>      Unconstitutional, But The Secretary Does Not Address The Combination. . . . . . . 3
>
> 3.   Plaintiffs Are Likely To Prevail On The Merits Of Count III -- Controlling
>      Authorities Demonstrate That The Voter-Plaintiffs' Have A Constitutional
>      Right To Vote For Mr. Graveline But The Secretary Offers Only Passing
>      Comment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF AUTHORITIES

Page No.

**CASES**

*American Party of Texas v. White,*
415 U.S. 767 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Certified Restoration Dry Cleaning v. Tenke,*
511 F. 3d 535 (6th Circuit 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Erard v. Johnson,*
905 F.Supp. 2d 799 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Goldman-Frankie v. Austin,*
727 F.2d 603 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hamilton's Bogarts, Inc. v. Michigan,*
501 F.3d 644 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jenness v. Fortson,*
403 U.S. 431 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Libertarian Party of Ohio v. Blackwell,*
462 F. 3d 579 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 5

*Lubin v. Panish,*
415 U.S. 709 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McLaughlin v. North Carolina Board of Elections,*
850 F. Supp. 373 (M.D. N.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Munro v. Socialist Workers Party,*
479 U.S. 189 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Storer v. Brown,*
415 U.S. 724 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Williams v. Rhodes,*
393 U.S. 23 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

**OTHER**

Black's Law Dictionary, 10th ed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**INDEX OF EXHIBITS \***

| Exhibit | Description | ECF No. |
|---------|-------------|---------|
| B | Declaration of Christopher Graveline | ECF No. 1-3 |
| C | Declaration of Willard H. Johnson | ECF No. 1-4 |
| D | Declaration of Michael Leibson | ECF No. 1-5 |
| E | Declaration of Kellie K. Deming | ECF No. 1-6 |

---

\*To avoid duplication, please note that all references in this document to these Exhibits are highlighted in the Courtesy Copy of Plaintiffs' Motion for Preliminary Injunction previously provided to Judge Roberts.

iv

**INTRODUCTION**

Defendants Ruth Johnson and Sally Williams (together, "the Secretary") purport to oppose Plaintiffs' Motion for Preliminary Injunction but, in fact, their Brief in Opposition ("Opp.") largely fails to address Plaintiffs' actual claims or the reasons why Plaintiffs are entitled to preliminary relief. For instance, the Secretary completely disregards Plaintiffs' Count I claim that Michigan's filing deadline for independent candidates is unconstitutional standing alone, because it falls so much earlier than the deadline for the political parties to select their nominees. The Secretary similarly disregards the fact that Plaintiffs' Count II claim challenges Michigan's onerous signature requirements, which are among the most restrictive in the nation, *as applied in combination with its early filing deadline*. And finally, the Secretary makes almost no mention of Plaintiffs' Count III claim that the challenged provisions violate the Voter-Plaintiffs' right to cast their votes effectively, by imposing an absolute bar that no independent candidate has ever overcome.

What the Secretary proffers instead is a generalized discussion of the state's interest in regulating ballot access. But Plaintiffs do not dispute that Michigan has such an interest. Rather, Plaintiffs claim that *these particular statutory provisions* Michigan has enacted – its early filing deadline and onerous signature requirements – are unconstitutional based on the specific arguments, evidence, and authorities set forth in their motion.

The Secretary's assertion that there is a "logical and reasonable" explanation for Plaintiff Graveline's "non-compliance" with the challenged provisions – that he simply "waited" too long to start his campaign (Opp. at 1-2, ECF No. 8, PageID.106 – PageID.107) – only confirms her disregard for the basis of Plaintiff's claims. "Several other candidates for Attorney General filed their statements of organization" in 2017, the Secretary avers, but fails to acknowledge that these candidates were all running as Democrats or Republicans. Opp. at 2 & n.1 (ECF No. 8, PageID.107).

By suggesting that independent candidates such as Mr. Graveline should be compelled to launch their campaigns so early in the election cycle, the Secretary adopts a position that the Sixth Circuit has expressly rejected as contrary to "the great weight of authority." *Libertarian Party of Ohio v. Blackwell*, 462 F. 3d 579, 590 (6th Cir. 2006).

## PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE

As the Secretary concedes, to determine whether plaintiffs are entitled to preliminary relief in First Amendment cases, "the crucial inquiry" is whether they have "demonstrated a likelihood of success on the merits." Opp. at 5 (ECF No. 8, Page ID.110) (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (explaining that "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute"). While plaintiffs "must show more than a mere possibility of success," they need not "prove [their] case in full at a preliminary injunction hearing." *Certified Restoration Dry Cleaning v. Tenke*, 511 F. 3d 535, 543 (6th Circuit 2007) (citations omitted). Rather, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* (citation omitted). Plaintiffs have satisfied this standard.

1.  **Plaintiffs Are Likely To Prevail On The Merits Of Count I -- The Secretary Makes No Attempt To Defend Against It And The Great Weight Of Authority Holds Filing Deadlines Such As Michigan's Unconstitutional.**

The Secretary's complete failure to acknowledge that this case involves a challenge to Michigan's filing deadline for independent candidates is itself a strong indication that this claim raises questions sufficiently serious to warrant the issuance of a preliminary injunction. *See Certified Restoration Dry Cleaning*, 511 F. 3d at 543. The Secretary could hardly have failed to notice that Plaintiffs assert this claim in Count I of their Complaint. Nor could the Secretary have overlooked

the 17 cases Plaintiffs cite that strike down filing deadlines such as Michigan's, which fall well

before the political parties select their nominees. Motion at 3-6 (ECF No. 4, PageID.76 - PageID.79).

The Secretary's inability or unwillingness to address this claim on the merits thus appears to be a

tacit admission that Michigan's filing deadline raises serious constitutional questions, because it falls

50 days before the political parties are required to select their nominees. Buttressed by the Sixth

Circuit's finding that "the great weight of authority" holds such deadlines unconstitutional, therefore,

Plaintiffs have demonstrated that they are likely to prevail on the merits of the Count I claim.

*Libertarian Party of Ohio*, 462 F.3d at 590.

2.     **Plaintiffs Are Likely To Prevail On The Merits Of Count II -- Controlling Authorities Demonstrate That Michigan's Combination Of Restrictions Is Unconstitutional, But The Secretary Does Not Address The Combination.**

In line with the instructions of the U.S. Supreme Court and the Sixth Circuit that **(A)** "a rule

which requires a party to demonstrate a particular percentage of support" in order to obtain ballot

access will rarely be constitutional or unconstitutional *per se*, so the "combined burden" of ballot

access restrictions must be addressed[1] and **(B)** "past experience" is a reliable indicator of whether

---

[1]See, *e.g.*, *Erard v. Johnson*, op. Cit. on p. 11 of Defendants' Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opposition"), at 905 F.Supp. 2d 799:

> The First Amendment analysis, however, is not so simple: "it is this combined burden on the party's rights that [a Court] must address." *Libertarian Party of Ohio*, 462 F.3d at 592-93 (noting that analyzing "the burdens imposed by the challenged [ballot-access] statutes separately, rather than addressing their collective impact," would constitute error); *see also McLaughlin v. N. Carolina Bd. Of Elections*, 65 F.3d 11215, 12234 (4th Cir. 1995) ("Because it is rare indeed that a rule which requires a party to demonstrate a particular percentage of support in order to secure or retain ballot access would be unconstitutional *per se*, a reviewing court must determine whether 'the totality of the [state's] restrictive laws taken as a whole imposes a[n unconstitutional] burden on voting and associational rights.'" (quoting *Williams v. Rhodes*, 393 U.S. 23, 34, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968))).

a set of ballot access restrictions are unconstitutional,[2] the Complaint challenges the imposition of the Michigan restrictions *in combination*, addressing their "collective impact," with particular regard to the striking history of successful exclusion (not one independent statewide candidate has obtained ballot access in the 30 years this system has been in place).

The Opposition ignores both the combined burden challenge (Complaint, Count II) and Michigan's long history of successful exclusion using this system. Focusing only on the signature requirement, the Opposition in effect invites the Court to commit the "error" identified in *Libertarian Party of Ohio* at 462 F.3d 592-23 (as cited by *Erard, supra*, n.1), *i.e.*, the Opposition asks the Court to find the Michigan system to be constitutional *per se*, based solely on the signature requirement.

The *Erard* opinion is focused on minor party ballot access as opposed to an independent candidate, a distinction of consequence. *See Storer v. Brown*, *supra*, at 745 ("[t]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other"); *see also Goldman-Frankie v. Austin*, 727 F.2d 603, 607-608 (6th Cir. 1984). For example, in the minor party context, the magistrate judge in *Erard* found it compelling how the Michigan legislature amended the law in 2002 to actually make it easier for a minor party to access the ballot.  *Id*., at 804-805. But the Michigan legislature has done nothing to ease *independent candidate* access since the current electoral scheme was adopted in 1988. The results have been predictable, with not a single independent qualifying for a statewide office.

---

[2]*Storer v. Brown*, 415 U.S. 724, 742 (1974):

The relevant inquiry is whether "a reasonably diligent independent candidate be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?" *Id*. "It will be one thing if independent candidates have qualified with some regularity," the Court concluded, "and quite a different matter if they have not." *Id*.

The Secretary's citation to various Supreme Court cases is inapposite, because the legal and factual basis for Plaintiffs' Count II claim differs in critical respects from those cases. The Court's decision in *Jenness v. Fortson*, for example, was predicated on its finding that "Georgia in no way freezes the status quo." *See Jenness v. Fortson*, 403 U.S. 431, 439 (1971). The record in this case shows just the opposite: Michigan has in fact frozen the political status quo, by absolutely barring independent candidates for statewide office from its ballot.

*American Party of Texas v. White* is also distinguishable, in that the statutory scheme challenged in that case – unlike Michigan's – provided independent candidates with a substantial period of time to obtain ballot access *after* the primary elections were held. *See American Party of Texas v. White*, 415 U.S. 767, 788 (1974). And once again, Texas, unlike Michigan, had a demonstrated historical record of candidates complying with the challenged requirements. *See*, *e.g.*, *American Party of Texas*, 415 U.S. at 787.

The Secretary's reliance on *Munro v. Socialist Workers Party* is misplaced for similar reasons, not least of which is that Washington's demonstrated history of ballot clutter was a key factor in the Court's decision to uphold the challenged requirement. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 196 (1986) (observing that in the year before the challenged provisions were enacted, "the largest number of minor political parties in Washington's history – 12 – appeared on the general election ballot"). Moreover, the requirements challenged in *Munro* were not "more lenient" than Michigan's, as the Secretary asserts. Opp. at 9 (ECF No. 8, PageID.114. To appear on the state's "blanket primary" ballot in *Munro*, a candidate just needed to be nominated at convention, and the challenged provision simply required that primary winners receive at least 1 percent of the total vote for the office they were seeking in order to appear on the general election ballot. *See Munro*, 479 U.S. at 191-92. As Michigan's striking history of excluding all independent candidates

for statewide office confirms, its requirements are far more onerous.

**The Michigan Restrictions Are Subject to Strict Scrutiny Analysis**

The Opposition gives lip service to the principle that "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest" (Opp. p. 13 (ECF No. 8, Page ID.119), but then asserts that here "the burden in question is not substantial" because signature requirements can prevent "frivolous candidates from clogging the ballot and confusing voters" (citing *Erard* quoting a general statement from the Eleventh Circuit).

This is erroneous in at least three respects. First, total exclusion from the ballot of all independent candidates for 30 years, "freezing the political status quo" by functioning as an absolute bar, is inarguably a severe restriction. Second, as *Erard* itself emphasizes, it is "error" to isolate one provision and use that as a "litmus test" for the entire ballot access system. Third, the Opposition's assertion is unaccompanied by any analysis as to whether Mr. Graveline actually has a "modicum of support"[3] or whether he is just a "frivolous candidate clogging the ballot and confusing voters." The available evidence certainly does not suggest that Mr. Graveline is a "frivolous" candidate who will needlessly clog Michigan's ballot. (See below.)

**3.     Plaintiffs Are Likely To Prevail On The Merits Of Count III -- Controlling Authorities Demonstrate That The Voter-Plaintiffs' Have A Constitutional Right To Vote For Mr. Graveline But The Secretary Offers Only Passing Comment.**

The Secretary provides only cursory comment as to Count III, but the Court should not ignore the Voter-Plaintiffs' important First Amendment rights. *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (finding ballot access laws to "place burdens on two different, although overlapping, kinds of rights — the right of individuals to associate for the advancement of political beliefs, and the right of

---

[3]Black's Law Dictionary, Tenth Ed. defines modicum on p. 1146 as follows: "**modicum.** (14c) A small amount."

6

qualified voters, regardless of their political persuasion, to cast their votes effectively" and that both of these rights "rank among our most precious freedoms"). Plaintiff Graveline bases his candidacy on his position that the attorney general should be a non-partisan office, independent of any political party.[4]

In a political environment that is increasingly acrimonious and overly sectarian, Mr. Graveline's candidacy stands out in its appeal for collaboration and non-partisanship. If the State successfully blocks Mr. Graveline's access to the ballot, the Voter-Plaintiffs will be left with only partisan candidates to choose from. The clear implication of *Williams*, however, as the Supreme Court itself has recognized, is that "a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." (*Anderson*, 460 U.S. at 787 (quoting *Lubin v. Panish*, 415 U.S. 709, 716 (1974)) and "all political ideas cannot and should not be channeled into the programs of our two major parties." *Williams v. Rhodes*, *supra* at 39.

## CONCLUSION

Plaintiffs' Motion for Preliminary Injunction should be granted because Defendants' Opposition provides no basis for denial.

DATED:        August 20, 2018                Respectfully submitted,

                                             */s/ William P. Tedards, Jr.*

                                             **WILLIAM P. TEDARDS, JR.***
                                             1101 30th Street, NW, Suite 500
                                             Washington, DC 20007
                                             202-797-9135
                                             BT@tedards.net
                                             (DC 143636) (MI)

---

[4] Exhibit B – Declaration of Christopher Graveline, at ¶ 5 (ECF No. 1-3, PageID.31), and his non-partisan stance is a primary reason the Voter-Plaintiffs wish to vote for him, (Exhibit C – Declaration of Willard Johnson, at ¶ 3 (ECF No. 1-4, PageID.39 - PageID.40); Exhibit D – Declaration of Michael Leibson, at ¶ 3 (ECF No. 1-5, PageID.42 - PageID.43); Exhibit E – Declaration of Kellie Deming, at ¶ 3 (ECF No. 1-6, PageID.45 - PageID.46).

**OLIVER B. HALL**\*\*
Center for Competitive Democracy
P.O. Box 21090
Washington, D.C. 20009
202-248-9294
oliverhall@competitivedemocracy.org
(DC 976463)

\*Counsel of Record
\*\*Bar membership pending                    Counsel for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2018, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, thereby serving all counsel of record.

*/s/ William P. Tedards, Jr.*

**WILLIAM P. TEDARDS, JR.**\*
(DC 143636) (MI)