UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAVELINE,
WILLARD H. JOHNSON, MICHAEL
LEIBSON, and KELLIE K. DEMING,

      Plaintiffs,

v

RUTH JOHNSON, Secretary of State of
Michigan, SALLY WILLIAMS, Director
of Michigan Bureau of Elections, in their
official capacities,

      Defendants.

No. 2:18-cv-12354

HON. VICTORIA A. ROBERTS

MAG. DAVID R. GRAND

**RESPONSE REQUESTED AS
SOON AS POSSIBLE BUT NO
LATER THAN AUGUST 31**

---

William P. Tedards, Jr.
Attorney for Plaintiffs
1101 30th Street, NW, Suite 500
Washington, DC  20007
202.797.9135

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

    /

---

**DEFENDANTS' EMERGENCY MOTION FOR STAY
PENDING EMERGENCY APPEAL**

Defendant Ruth Johnson, in her official capacity as the Michigan Secretary of State, and Defendant Sally Williams, in her official capacity as Director of Elections, by and through their attorneys, move under Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a)(1)(C) to stay the order granting preliminary injunction issued by this Court on August 27, 2018.  (Doc. 12, Opinion & Order).  The preliminary injunction ordered Defendants to accept Plaintiff Graveline's qualifying petition containing over 14,000 signatures and to canvass the petition to "*determine the validity of the signatures* in time to place Graveline on the ballot if he has sufficient *valid* signatures," *id*. (emphasis added), and if "Graveline has at least 5,000 *valid* signatures . . . his name must be placed on the November 6, 2018 general election ballot," *id.*  In support of their motion, Defendants state as follows:

1.     The Secretary is requesting a decision on this motion for stay pending emergency appeal as soon as possible or at least by August 31, 2018, which is six days (including Labor Day) before the September 7, 2018 ballot certification deadline, see Mich. Comp. Laws § 168.648, and would give Defendants a little time to comply with any modifications to the Court's order granting injunctive relief.

2.     This case raises as-applied constitutional challenges to Mich. Comp. Laws §§ 168.544f, 590c(2), 590b(4), which impose numerical signature

1

requirements and a petition filing deadline with respect to non-party affiliated candidates seeking to run for a statewide office.

3.      Plaintiffs filed their motion for preliminary injunction on August 3, 2018 (Doc. 4), Defendants filed their response on August 13, 2018 (Doc. 8), and Plaintiffs filed a reply on August 20, 2018 (Doc. 9).  The Court heard argument on the motion on August 22, 2018, and five days later, issued its injunction on August 27, 2018 (Doc. 12).  Plaintiff filed his qualifying petition with Defendants on August 28, 2018, at approximately 11:00 a.m.

4.      The September 7, 2018 ballot certification deadline is only a week away, this Court's preliminary injunction threatens the integrity and smooth running of the upcoming election by raising the possibility that Defendants will miss the certification deadline, which then affects ballot printing deadlines. Defendants seek an emergency stay pending their emergency appeal of the preliminary injunction to the Sixth Circuit Court of Appeals.

5.      Defendants are likely to succeed on the merits of the appeal because the challenged provisions, whether applied singly or in combination, were not applied to Plaintiffs in an unconstitutional manner under the circumstances of this case.

6.      Further, Defendants and third parties (the local elections officials in the 83 counties) will or may be irreparably harmed absent a stay if the Court's

ordered canvass of Plaintiffs' 14,000 signatures cannot be completed in time to meet the ballot certification deadline.

7.      Finally, the public interest will be served by the issuance of a stay. The people of Michigan have an interest in seeing the laws of their state enforced and upheld where such laws present no obvious constitutional violation. Moreover, the people have an interest in the fair and orderly holding of elections. Plaintiffs' late request for injunctive relief threatens to disrupt that process by delaying ballot preparation and possibly the availability of absentee ballots, contrary to federal law.

8.      Pursuant to L.R. 7.1, on August 29, 2018, defense counsel sought concurrence in the relief requested in this motion but concurrence was not granted, necessitating the filing of this motion for stay.

WHEREFORE, for the reasons set forth in the attached brief, Defendants Secretary of State Ruth Johnson and Director of Elections Sally Williams respectfully request this Court enter an Order staying the issuance of an injunction pending appeal.

Respectfully submitted,

*s/Heather S. Meingast*
Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

Dated: August 29, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2018, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
Attorney for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAVELINE,
WILLARD H. JOHNSON, MICHAEL           No. 2:18-cv-12354
LEIBSON, and KELLIE K. DEMING,

                                      HON. VICTORIA A. ROBERTS
        Plaintiffs,

                                      MAG. DAVID R. GRAND
v

RUTH JOHNSON, Secretary of State of
Michigan, SALLY WILLIAMS, Director
of Michigan Bureau of Elections, in their
official capacities,

        Defendants.

_____

William P. Tedards, Jr.
Attorney for Plaintiffs
1101 30th Street, NW, Suite 500
Washington, DC  20007
202.797.9135

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

_____/

**BRIEF IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
FOR STAY PENDING EMERGENCY APPEAL**

# TABLE OF CONTENTS

Page

Concise Statement of Issues Presented ...................................................... ii

Controlling or Most Appropriate Authority .............................................. iii

Introduction ................................................................................................. 1

Statement of Facts ....................................................................................... 2

Argument ...................................................................................................... 4

I.   This Court's preliminary injunction should be stayed pending
     Defendants' emergency appeal ........................................................... 4

II.  Defendants cannot comply with the terms of the injunction and still
     timely comply with state law.  Thus, the irreparable harm, harm to
     others, and public interest factors weigh in favor of the State. ....... 5

III. Defendants are likely to prevail on the merits of their appeal. ...... 13

     A.   The statutes, alone or in combination, are not unconstitutional
          as applied to Plaintiffs. ........................................................... 14

          1.   Mich. Comp. Laws § 168.590b(4). .......................... 16

          2.   Mich. Comp. Laws § 168.590c(2). ........................... 17

          3.   Mich. Comp. Laws § 168.544f. ................................ 19

     B.   The Court's selection of 5,000 signatures as the threshold
          requirement for Plaintiffs' qualifying petition was arbitrary and
          ignores the facts of this case and Michigan law ................... 23

Conclusion and Relief Requested ........................................................... 24

Certificate of Service ............................................................................... 25

i

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.      A stay of an injunction balances four factors: (1) probability of success on the merits; (2) irreparable to the defendant; (3) irreparable harm to third parties; and (4) public harm.  Here, Defendants Secretary of State and Director Williams can establish a likelihood of success on the merits of their appeal of this Court's mandatory preliminary injunction, and the harm to Defendants, third parties, and the public weigh in favor of Defendants.  Should this Court stay its' order granting injunctive relief pending an appeal?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)

*Burdick v. Takushi*, 504 U.S. 428, 433 (1992)

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006)

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016)

*Green Party of Tennessee v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015)

*Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016)

**INTRODUCTION**

This Court entered a mandatory injunction ordering the Secretary of State and the Director of Elections to perform election duties within days that would ordinarily take weeks if not months to complete.  This Court concluded that Plaintiff Graveline demonstrated a substantial likelihood of success on his as-applied First and Fourteenth Amendment challenges to Mich. Comp. Laws §§ 168.544f, 590b(4) and 590c(2), and ordered Defendants to take steps to place him on the November 6, 2018 general election ballot as a non-party affiliated (NPA or independent) candidate for Michigan Attorney General.

For the reasons stated below, this Court should, on an expedited basis, stay its order granting a preliminary injunction pending Defendants emergency appeal to the Sixth Circuit.  Without a stay, the Secretary of State, Director of Elections Sally Williams, local elections officials, and even the public will be harmed.  The injunction threatens the smooth running of the November 6, 2018 general election by compelling Defendants to depart from ordinary processes and by possibly delaying the printing of ballots statewide.  Accordingly, Defendants ask this Court to issue an immediate stay of the preliminary injunction pending their emergency appeal.

1

## STATEMENT OF FACTS

While the facts of this case are familiar to the Court, Defendants highlight the following in summary form:

- In 1988, the requirement that signatures on qualifying petitions be collected within 180 days of filing is enacted in 1988 P.A. 116, Mich. Comp. Laws ¶ 168.590b(3), along with the requirement that candidates for Attorney General must collect at least 100 signatures from ½ of the congressional districts of the state, Mich. Comp. Laws ¶ 168.590b(4);

- Also in 1988, the requirement that a qualifying petition for the office of Attorney General be filed on the 110th day before the general election is enacted in 1988 P.A. 116;

- In 1999, the current, population-based signature requirement applicable to statewide, non-party affiliated candidates (30,000) is enacted in 1999 P.A. 218, which added Mich. Comp. Laws § 168.544f.

Over 20 years elapse and no candidate or voter challenges any of these requirements for NPA candidates for Attorney General, or any other statewide office.  During that time, Ross Perot qualifies as an NPA candidate for president in Michigan in 1996, and Ralph Nader qualifies as an NPA candidate for president in Michigan in 2004.  (Winger Dec., Doc. 1-2, Pg ID 21, ¶ 5).  *See also*, *Deeleuw v. State Board of Canvassers*, 688 N.W. 2d 847 (Mich. Ct. App. 2004).  And other than the assertion by Plaintiff's expert, Mr. Winger, that the Libertarian Party considered the NPA candidate requirements too onerous to pursue in 2012, (Winger Dec., Doc. 1-2, Pg ID 21, ¶ 6), Defendants are not personally aware of any persons before Plaintiff who have wanted to file as an NPA candidate for

Attorney General or for some other office, but did not do so because he or she

thought it too burdensome.

- August 2017 – October 2017, the notable partisan candidates for Attorney General – Nessel, Miles, and Noakes as Democrats, and Leonard and Schuitmaker as Republicans – create their candidate committees to run for office, which information is readily accessible online. (Doc. 8, Defs' Resp. to PI, Pg ID 107 and n 1).

- January 19, 2018, the 6-month window (180 days) for signature collection under Mich. Comp. Laws ¶ 168.590b(3) commences;

- Plaintiff Graveline becomes aware of the Democratic candidates for Attorney General, (Graveline Dec., Doc. 1-3, Pg ID 29-30, ¶ 3);

- April 15, 2018, Democratic Party holds early "endorsement" convention and informally nominates Nessel as nominee for Attorney General; Plaintiff is aware of the convention and its result; Plaintiff begins to consider Republican candidates, (Graveline Dec., Doc. 1-3, Pg ID 29-31, ¶¶ 3-4);

- Early May 2018, Plaintiff begins to seriously consider running for Attorney General, (Graveline Dec., Doc. 1-3, Pg ID 32, ¶8);

- June 1, 2018, Plaintiff leaves his employment as federal prosecutor to become a candidate, (Graveline Dec., Doc. 1-3, Pg ID 32-33, ¶8);

- June 4, 2018, Plaintiff creates his candidate committee, (Graveline Dec., Doc. 1-3, Pg ID 33, ¶9);

- June 5, 2018, Plaintiff begins circulating qualifying petitions, (Graveline Dec., Doc. 1-3, Pg ID 33, ¶9);

- July 19, 2018, Plaintiff attempts to file petitions with Defendant Secretary of State, but filing is rejected as incomplete, (Graveline Dec., Doc. 1-3, Pg ID 35, ¶16);

- July 27, 2018, Plaintiffs file the instant lawsuit, (Compl., Doc. 1, Pg ID 1).

Plaintiffs thereafter filed their motion for preliminary injunction on August 3, 2018 (Doc. 4), Defendants filed their response on August 13, 2018 (Doc. 8), and Plaintiffs filed a reply on August 20, 2018 (Doc. 9).  This Court heard argument on the motion on August 22, 2018, and five days later, issued its injunction on August 27, 2018 (Doc. 12).

Thirty-nine days elapsed between the July 19, 2018, rejection of Plaintiff Graveline's filing and this Court's issuance of its injunction.  There are now only 8 days or 5 business days (September 3 is Labor Day) until the September 7, 2018, deadline for the Secretary of State to certify all candidates and proposals for the November 2018 general election ballot.

## ARGUMENT

## I.    This Court's preliminary injunction should be stayed pending Defendants' emergency appeal.

In *Coalition to Defend Affirmative Action v. Granholm*, the Sixth Court set out the familiar standard for a stay pending appeal:

> [W]e consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay."  All four factors are not prerequisites but are interconnected considerations that must be balanced together. [473 F.3d 237, 244 (6th Cir. 2006) (citations omitted).]

Every factor of this balancing test supports an emergency stay.  The Court's late injunction was error and must be stayed to ensure that Michigan runs a fair and orderly election.

## II.   Defendants cannot comply with the terms of the injunction and still timely comply with state law.  Thus, the irreparable harm, harm to others, and public interest factors weigh in favor of the State.

Defendants acknowledge that the first factor, success on the merits, is ordinarily of primary concern in a First Amendment challenge.  (Doc. 12, Opinion & Order, p 22, Pg ID 166).  And ordinarily Defendants would address this factor first.  But the analysis set forth below on the second, third, and fourth factors is helpful and informative of the likelihood of success factor, and thus Defendants address these factors first.

This Court ordered Plaintiff Graveline to "immediately present" his qualifying petition to the Bureau of Elections.  (Doc. 12, Opinion & Order, p 25, Pg ID 169).  The Court further ordered that "the State must accept Graveline's filing as complete and *determine the validity of the signatures* in time to place Graveline on the ballot if he has sufficient *valid* signatures," *id.* (emphasis added), and if "Graveline has at least 5,000 *valid* signatures, and at least 100 *valid* signatures from registered voters in each of at least half of the 14 congressional districts of the state, his name must be placed on the November 6, 2018 general election ballot," *id.*

Michigan election deadlines generally work backwards from the date of an election, here the November 6, 2018, general election.  One crucial deadline is the deadline for making absentee ballots available to overseas and military voters. Under the Federal Military and Overseas Voters Empowerment Act (MOVE Act), 52 U.S.C.A. § 20302(a)(8), and coordinating state statutes, Mich. Comp. Laws §§ 168.714, 759a, absentee ballots must be available for distribution 45 days before the general election, or by **September 22, 2018**.  (Ex. 1, Williams Affidavit, ¶ 16). To meet this deadline, state law requires that absentee ballots be delivered to the county clerks by the 47th day before the election, or by **September 20**, **2018**, for this cycle. Mich. Comp. Laws § 168.712. (Ex. 1, Williams Affidavit, ¶ 15).

To help ensure these deadlines are met, state law requires the Secretary of State to certify the November general election ballot to all 83 county clerks 60 days before the election, or by **September 7, 2018**, for this cycle.  Mich. Comp. Laws § 168.648.  This includes the certification of candidates for nonpartisan offices.  (Ex. 1, Williams Affidavit, ¶ 4).  This deadline gives the local county election officials, whose job it is to prepare and print ballots, *id*., ¶¶ 5, 11, about 13 days in which to fully prepare proof ballots for review and approval by candidates and the Secretary of State, and then to print and deliver ballots, including absent voter ballots, to the county clerks by September 20, *id*., ¶¶ 7, 9.

6

The complexity of the ballot printing process cannot be overstated.  As explained by Director Williams, ballot preparation essentially began after the August 7 primary, but there are rolling deadlines for certifying the primary results, and there are exacting ballot production standards that must be met by every county.  *Id.*, ¶¶ 6, 9-10, 12.  These include requirements that candidate names be rotated, among others, *id.*, ¶ 9, which results in every county printing multiple ballot styles, sometimes even hundreds of ballots for one county, *id.*, ¶ 12.  This process can take up to three weeks to complete.  *Id.*, ¶ 14.  And at this time, over 7.4 million ballots must be printed statewide by the counties for the November 6, 2018, general election.  *Id.*, ¶ 8.

In order to meet the 60-day, certification deadline, i.e. September 7, the Legislature required candidates filing qualifying petitions to file their petition on the 110th day before the November general election, here July 19, 2018, for this cycle. Mich. Comp. Laws § 168.590c(2).  *Id.*, ¶ 17.  This deadline gives Defendants roughly 50 days or so to canvass qualifying petitions, which canvass is conducted by the Bureau of Elections on behalf of the Board of State Canvassers.  *Id.*, ¶ 17(a)-(d).  By law, it is the Board of State Canvassers, not Defendants, that determines and certifies whether a qualifying petition, like Plaintiff's, has sufficient valid signatures, and this certification must be made 60 days before the November election, which again is September 7 for this cycle.  Mich. Comp. Laws

§§ 168.552(8), 168.590f(1)-(2).  To complete the canvass for a statewide candidate, Director Williams' staff in the Bureau ordinarily conducts a face review of every petition sheet, which entails staff looking at every line to determine whether there are any errors that would disqualify a signature on its face, like a missing date or an incorrect jurisdiction.  (Ex. 1, Williams Affidavit, ¶¶ 17(a)-(d), 22).  The Bureau also conducts random registration checks per sheet.  *Id.*  It is estimated that conducting a face review of 15,000 signatures would take the Bureau at least 4 days to complete.  *Id.*, ¶ 22.

But as Defendants understand the Court's order, the Court has ordered Defendants to determine the validity of each individual signature on Plaintiff's petition sheets, meaning each signature would have to be compared against the qualified voter file to determine whether the signature is that of a qualified and registered voter.  *Id.*, ¶ 23.  And Defendants must perform this process as to Plaintiff's qualifying petition in the 8 days, only 5 business days given the Holiday, remaining before the September 7 deadline.  Defendants cannot conduct this level of review and meet the statutory deadlines.

As explained by Director Williams in her affidavit, the Bureau has been canvassing a sample of 3,799 signatures related to another petition for the last three weeks, and that process is not yet complete, despite 12 full-time employees

expending many hundreds of hours on this canvass. *Id.*, ¶ 24.[1]  It is estimated that,

at a minimum, it would take Director Williams and her staff more than three weeks

to conduct an in-depth canvass to ensure that Plaintiff has submitted at least 5,000

*valid* signatures as seemingly required by the Court's order.  *Id.*  Defendants only

received Plaintiff's petition on August 28 at 11:19 a.m., *id.*, ¶ 28, which, to

Defendants, did not satisfy the Court's order that the petition be "immediately"

present to Defendants and caused additional delay, *id.* Three weeks of canvassing

puts Defendants well past the September 7 certification deadline, and well into the

ballot preparation and printing period, which must be completed by September 20

to ensure that absent voter ballots are available for distribution by September 22

under the MOVE Act, as discussed above.

Moreover, this estimate does not account for any challenge that might be

filed regarding Graveline's petition.  *Id.*  If a challenge is filed, a staff report

regarding the challenges to and the sufficiency of the petition must be published at

least 2 business days in advance of the State Board of Canvassers hearing to

consider the sufficiency of Graveline's qualifying petition.  Mich. Comp. Laws §§

168.552(8)-(10), 168.590f(1)-(2).  In view of the September 7 deadline for

---

[1] This is the petition to amend the Constitution filed by the Promote the Vote ballot
proposal committee.  See
https://www.michigan.gov/documents/sos/Announcement_-
_PTV_2nd_Challenge_Deadline_630170_7.pdf.

certifying the November general election ballot, a staff report would be required to be published by September 4, 2018. *Id*. However, because Plaintiff's qualifying petition was not filed until August 28, 2018, both the challenge deadline and the deadline to publish any staff report will elapse at 5:00 p.m. on September 4, 2018. (Ex. 1, Williams Affidavit, ¶ 25). In other words, it will not be possible to assess the strength of any challenge that might be filed prior to publishing the staff report. Furthermore, publication of any staff report by September 4th is imperative to ensure compliance with the statutorily-required certification date and to prevent any delays in ballot printing. *Id*.

At this time, even if Defendants perform the ordinary face review of Plaintiff's qualifying petition, which is estimated to take at least 4 days, Defendants cannot complete the canvass, accommodate a seven-day challenge period for interested persons, and publish a staff report within two business days of a State Board of Canvassers meeting that the Board is required to hold to certify Plaintiff's petition as sufficient, all before the **September 7, 2018** deadline. *Id*., ¶ 26. And obviously, Defendants cannot conduct an in-depth canvass of at least 5,000 signatures to determine their validity before these deadlines expire as the Court appears to contemplate in its order.

Missing the September 7 certification deadline is extremely problematic because every day past that deadline intrudes into the two-week period for final

ballot preparation by the 83 counties, and jeopardizes the State's ability to comply

with the MOVE Act regarding absentee ballots.  *Id.*, ¶ 27.  And because this is a

statewide race, delays or changes affect all 7.4 million ballots that must be printed

for the November 6 general election.  *Id.*

      As with virtually any elections case, "[t]iming is everything."  *Crookston v.*

*Johnson*, 841 F.3d 396 (6th Cir. 2016) (staying preliminary injunction that

enjoined a longstanding Michigan election statute just weeks before election).  See

also *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections .

. . can themselves result in voter confusion and consequent incentive to remain

away from the polls.  As an election draws closer, that risk will increase.");

*William v. Rhodes*, 393 U.S. 23, 34-35 (1968) (addressing the risk of disrupting the

election process).  As the Sixth Circuit observed in *Crookston*, 841 F.3d at 398:

> When an election is "imminen[t]" and when there is
> "inadequate time to resolve [ ] factual disputes" and legal disputes,
> courts will generally decline to grant an injunction to alter a State's
> established election procedures. *See Purcell v. Gonzalez*, 549 U.S. 1,
> 5–6 [ ] (2006) (per curiam). That is especially true when a plaintiff has
> unreasonably delayed bringing his claim . . . . *See Operating*
> *Engineers Local 324 Health Care Plan v. G & W Constr. Co.*, 783
> F.3d 1045, 1053 (6th Cir. 2015); *Nader v. Blackwell*, 230 F.3d 833,
> 835 (6th Cir. 2000); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980).
> Call it what you will—laches, the *Purcell* principle, or common
> sense—the idea is that courts will not disrupt imminent elections
> absent a powerful reason for doing so.

      While Plaintiffs did not, per se, delay in filing their constitutional claims

after the July 19 rejection of the qualifying petition, Graveline certainly has

delayed in bringing these matters to a head.  He delayed becoming a candidate, he delayed circulating petitions, and certainly he could have filed the present litigation challenging these decades-old statutes well before July 27, 2018.  But he did not. As a result, Defendants are now confronted with choosing to comply with certain statutory requirements and ignoring others.  And it's not just Defendants who are harmed.  Delay in certifying the ballot potentially harms third parties – the local election officials in the 83 counties who must prepare and print ballots.

Finally, the public's interest is harmed as well. The people of Michigan have an interest in seeing the laws of their state enforced and upheld where such laws present no obvious constitutional violation.  Moreover, the people have an interest in the fair and orderly holding of elections.  Plaintiffs' late request for injunctive relief threatens to disrupt that process by delaying ballot preparation and possibly the availability of absentee ballots, contrary to federal law.

These factors thus weigh in favor of staying the injunction. *See Nader v. Blackwell*, 230 F.3d 833, 835 (6th Cir. 2000) (noting that "[a] state's interest in proceeding with an election increases as time passes, decisions are made, and money is spent.").

As Defendants argue below, Plaintiffs failed to demonstrate a "substantial" likelihood of success on the merits of their claims, and instead this factor tips in favor of Defendants, or at best presents too close a question to call.  And in that

case, where the harm factors weigh strongly in favor of Defendants, on balance the factors weigh in favor of Defendants and in favor of staying the injunction.

## III.    Defendants are likely to prevail on the merits of their appeal.

The Court concluded that Plaintiffs demonstrated a substantial likelihood of success on the merits of their claims that Mich. Comp. Laws §§ 168.544f, 168.590b(4), and 168.590c(2), as applied in combination to Graveline, unconstitutionally burdened Plaintiffs' First and Fourteenth Amendment rights. (Doc. 12, Opinion & Order, p 2, Pg ID 146).  The Court rejected Defendants argument that any burden caused by these statutes was not severe and was supported by the State's interests in having NPA candidates demonstrate a modicum of support in order to appear on a statewide ballot, and to mitigate voter confusion by tempering the number of candidates that could appear on the ballot for a statewide office.  *Id.*  The Court then invoked its equitable powers in fashioning a remedy and deciding that Plaintiff Graveline should only have to submit 5,000 valid signatures, instead of the 30,000 required by Michigan law. *Id.*, pp 23-24, Pg ID 167-168.  It should be noted that this is not the relief that Plaintiff requested in his motion for preliminary injunctive relief. ("Plaintiffs request that the Court issue a Preliminary Injunction directing the Defendants to place Plaintiff Christopher Graveline on the November 6, 2018 General Election ballot) (Doc. 4, Plaintiff's Brief in Support of Motion for Preliminary Injunction, p 18, Pg ID 91).

This Court erred in concluding this factor weighed in favor of Plaintiffs because Plaintiffs did not make a "substantial" showing that the statutes, alone or in combination, were unconstitutionally applied to Plaintiffs under the circumstances of this case.

**A.    The statutes, alone or in combination, are not unconstitutional as applied to Plaintiffs.**

The "right to vote in any manner ... [is not] absolute," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citation omitted), as the Constitution recognizes the states' clear prerogative to prescribe time, place, and manner restrictions for holding elections.   U.S. Const. art. I, § 4, cl. 1.  Indeed, there "must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick*, 504 U.S. at 433 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).  Federal law thus generally defers to the states' authority to regulate the right to vote.  *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203-04 (2008) (Stevens, J., op.) (recognizing that neutral, nondiscriminatory regulation will not be lightly struck down, despite partisan motivations in some lawmakers, so as to avoid frustrating the intent of the people's elected representatives).

When a constitutional challenge to an election regulation requires courts to resolve a dispute concerning these competing interests, courts apply the *Anderson-*

*Burdick* analysis from *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v.*

*Takushi*, *supra*, which requires the following considerations:

> [T]he court must first consider the character and magnitude of the
> asserted injury to the rights protected by the [Constitution] that the
> plaintiff seeks to vindicate. Second, it must identify and evaluate the
> precise interests put forward by the State as justifications for the
> burden imposed by its rule. Finally, it must determine the legitimacy
> and strength of each of those interests and consider the extent to
> which those interests make it necessary to burden the plaintiff's rights.

*Green Party of Tennessee v. Hargett*, 791 F.3d 684, 693 (6th Cir. 2015) (internal

quotation marks and citations omitted).  "Though the touchstone of *Anderson-*

*Burdick* is its flexibility in weighing competing interests, the 'rigorousness of [the

court's] inquiry into the propriety of a state election law depends upon the extent to

which a challenged regulation burdens First and Fourteenth Amendment rights.' "

*Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016) (quoting

*Burdick*, 504 U.S. at 434).

If a state imposes "severe restrictions" on a plaintiff's constitutional right to

vote, its regulations survive only if "narrowly drawn to advance a state interest of

compelling importance." *Burdick*, 504 U.S. at 434. But "minimally burdensome

and nondiscriminatory" regulations are subject to a "less-searching examination

closer to rational basis" and " 'the State's important regulatory interests are

generally sufficient to justify the restrictions.' " *Ohio Council 8 Am. Fed'n of State*

*v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016) (citing *Hargett*, 767 F.3d at 546, and

quoting *Burdick*, 504 U.S. at 434).  Regulations falling somewhere in between—

"i.e., regulations that impose a more-than-minimal but less-than-severe burden—

require a 'flexible' analysis, 'weighing the burden on the plaintiffs against the

state's asserted interest and chosen means of pursuing it.' "  *Ohio Democratic*

*Party*, 834 F.2d at 627 (quoting *Hargett*, 767 F.3d at 546).

   1. **Mich. Comp. Laws § 168.590b(4).**

   The Court did not find any of the statutes independently unconstitutional.

And for good reason.  There is nothing severely burdensome in requiring a

statewide NPA candidate like Graveline to obtain at least 100 signatures from

registered electors in at least half (7 of the 14) congressional districts in Michigan

as required by § 590b(4), which amounts to at least 700 signatures that are then

counted towards the 30,000 required by § 544f.[2]  Indeed, Graveline concedes that

he met the requirement by obtaining at least 100 signatures from 12 of the 14

districts.  (Compl., ¶ 25, Pg ID 12).  Moreover, the Court ordered that Graveline

comply with this requirement in order to be placed on the ballot. (Doc. 12, Opinion

& Order, p 25, Pg ID 169). Since Graveline and the other Plaintiffs were not

harmed by the application of this statute to Graveline, and the Court has ordered

compliance with this statute, Plaintiffs' as-applied claims based on § 590b(4),

---

[2] Certain partisan candidates are subject to the identical requirement.  See Mich.
Comp. Laws §§ 168.93, 168.53.

whether independently or combined, should have been rejected.  It's a classic case of "no harm, no foul."

### 2.   **Mich. Comp. Laws § 168.590c(2).**

Similarly, there is nothing severely burdensome in requiring a statewide NPA candidate like Graveline to file his qualifying petition by the 110th day before the November general election, as required by § 590c(2), which was July 19, 2018 for this cycle.   As discussed above, the Secretary of State must certify the November general election ballot to the 83 counties 60 days before the election, Mich. Comp. Laws § 168.648, which for this cycle is September 7.  During the 50-day period between the two deadlines, Defendants must accept and process any challenges filed against a qualifying petition, as well as review every petition sheet and signature for any facial defects, and randomly conduct registration checks.[3] This must be done in time for the State Board of Canvassers to certify a qualifying petition as sufficient, which also must be done 60 days before the election or by September 7 for this cycle. Mich. Comp. Laws § 168.552.

By law, Plaintiffs had 180 days (6 months) in which to circulate Graveline's qualifying petition before the 110th day filing deadline elapsed on July 19, 2018.

---

[3] Notably, the canvass of nominating petitions filed by partisan candidates must be completed within 45 days.  (Ex. 1, Williams Affidavit, ¶ 18). The 50-day canvass is consistent with the higher signature requirements for NPA qualifying petitions and is reasonable.  *Id.*

Mich. Comp. Laws § 168.590b(3).[4]  For his own personal reasons, Graveline let almost 5 months of this 6 month window elapse, and only started circulating petitions on or about June 5, 2018.  (Graveline Dec., Doc. 1-3, Pg ID 33, ¶ 9).  In the 43 or so days that Plaintiffs circulated petitions, they collected 7,899 signatures without the assistance of paid circulators.  *Id*., Pg ID 34, ¶ 11.  That works out to about 183 signatures per day.  If Plaintiffs had circulated for 180 days at that rate, they would have collected just over 33,000 signatures, slightly over the 30,000 required by § 544f.  Adding in the approximately 6,200 signatures collected by the paid circulators, the cost of which was primarily covered by contributions, *id*., Pg ID 35, ¶¶ 11, 13-15, Graveline would have collected close to 40,000 signatures, comfortably over the 30,000 required by § 544f.

Considering the 6-month circulation period permitted by § 590b(3) in combination with the 110th day filing deadline imposed by § 590c(2), and Plaintiffs' relative success in collecting signatures, the filing deadline did not impose a *severe* burden as applied to Plaintiffs.  Indeed, Graveline's "burden" was largely self-imposed due to his own delay in circulating petitions.  Plaintiff's employment as a federal employee is what delayed his ability to gather signatures when Graveline "began to seriously consider" running for governor in early May,

---

[4] The 180-day signature requirement is present in Mich. Comp. Laws §§ 168.472a (constitutional petitions) and 168.685 (new political party candidates).

18

as "the Hatch Act precluded me from becoming a candidate for what is considered a partisan office including raising or spending any money to advance the campaign."   (Graveline Dec., Doc. 1-3, Pg ID 31-33, ¶¶ 6, 8-9).  Any burden created by the filing deadline was minimal, or at best somewhere between the minimal and severe burdens contemplated in the *Anderson-Burdick* analysis.  And this burden was supported by the State's important regulatory interests.

The 110th day deadline is not arbitrary or designed to short-change NPA candidates; it is part of a carefully constructed set of election deadlines extending backwards from the date of the November general election.[5]  Many of those deadlines are discussed above and in Director Williams' affidavit. Without doubt, a longer filing deadline would presumably have permitted Graveline to collect more signatures.  But extending § 590c(2)'s longstanding deadline would come at the expense of the various other longstanding and carefully considered election deadlines designed to ensure that all petitions filed with the Secretary of State can be properly canvassed and certified 60 days before the November general election.  Section 590c(2) is not unconstitutional and was not unconstitutionally applied to Plaintiffs.

3.   <strong>Mich. Comp. Laws § 168.544f.</strong>

---

[5] The Michigan Election Law, Mich. Comp. Laws § 168.1 *et seq.*, is replete with deadlines.  *See, e.g.*, 2018 Michigan Election Dates, https://www.michigan.gov/documents/sos/2018_Dates_600221_7.pdf.

This leaves only § 544f at issue, which required Graveline to collect at least 30,000 valid signatures to qualify as a statewide NPA candidate.  Defendants disagree that § 544f, as applied to Plaintiff Graveline in this case, imposed a severe burden on Plaintiffs' constitutional rights.  Instead, the statute falls somewhere in between the burdens—"regulations that impose a more-than-minimal but less-than-severe burden—require a 'flexible' analysis, 'weighing the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it.' " *Ohio Democratic Party*, 834 F.2d at 627 (citation omitted).

Defendants do not dispute that many other states apparently have lesser signature requirements for independent candidates seeking to run for a statewide office.  But it's also true, as noted by Plaintiffs' expert, that there are at least five states with higher signature requirements than Michigan – Alabama, Arizona, Georgia, North Carolina, and Texas.  (Winger Dec., Doc. 1-2, Pg ID 22, ¶ 8).[6] And as fully set forth in Defendants' response to the motion for preliminary injunction, numerous federal courts have upheld similar signature requirements regarding minor parties and their candidates, which candidates are similarly situated in many respects to independent or NPA candidates.  (Doc. 8, Defs' Resp.

---

[6] Defendants simply did not have time to obtain an expert in the ten days they had to respond to Plaintiffs' motion for preliminary injunction to rebut statements contained in Mr. Winger's declaration.

to PI, Pg ID 111-117).  This includes a recent Michigan case, *Erard v. Johnson*,

905 F.2d 782 (E.D. Mich. 2017) (rejecting argument that 1% signature requirement

for minor party candidate was unconstitutional).  And the Sixth Circuit has

recognized that states have "an important interest in ensuring that candidates

demonstrate a "significant modicum of support," before gaining access to the

ballot, primarily in order to avoid voter confusion, ballot overcrowding, and

frivolous candidacies."  *Libertarian Party of Kentucky v. Grimes*, 835 F.3d 570,

577 (6th Cir. 2016) (citation omitted).

But the real defect in Plaintiffs' as-applied challenge to § 544f is that, as

discussed above, Plaintiffs likely would have met the threshold 30,000 signature

requirement permitting them to file Graveline's qualifying petition had they

circulated petitions for the full 180 days permitted by law.  Graveline generally

defends his delay in becoming a candidate and circulating petitions on the fact that

the major parties are not required by law to officially select their nominees for

Attorney General any earlier than the 60th day before the November general

election, Mich. Comp. Laws § 168.591(1), which is September 7 for this cycle.

(Graveline Dec., Doc. 1-3, Pg ID 36, ¶ 17).  This means that an independent

candidate who is motivated to run for office due to dissatisfaction with the major

party official nominees could not do so because he or she would already have had

to collect signatures and file a qualifying petition under §§ 544f, 590b(3), and

21

590c(2) before the party nominating conventions are held to formally select nominees. *Id.*

It is true that qualifying petitions must be filed by the 110th day before the November general election, which is 50 days before the last day on which the major parties can hold their nominating conventions – the 60th day before the November election.  Plaintiffs also cite a litany of cases striking down various filing deadlines, including some that required minor party or independent candidates to file before major party candidates were known.  (Doc. 4, Plfs' PI Brf., Pg ID 76-79).   Although, as Plaintiffs note, Michigan's deadline is somewhat later "than those . . . held unconstitutional."  *Id.*, Pg ID 79.  Moreover, there is only one Sixth Circuit case cited, *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), which is distinguishable in that it did not involve Michigan or a numerical signature requirement, and the filing deadline was much longer.

But here, the five major party candidates for Attorney General– Nessel, Miles, and Noakes as Democrats, and Leonard and Schuitmaker as Republicans – had declared their candidacies in the Fall of 2017 by creating candidate committees.  (Doc. 8, Defs' Resp. to PI, Pg ID 107 and n 1).  And Graveline concedes that he was aware of the major party candidates running for Attorney General before or by April 2018, and that he began considering running in early May of 2018, but then waited until early June to quit his job, declare his candidacy,

22

and begin circulating petitions. (Graveline Dec., Doc. 1-3, Pg ID 29-33, ¶¶ 3-4, 8-9). It is plain that Graveline was dissatisfied with the cast of potential nominees well before the July 19, 2018, filing deadline and as early as April 15, 2018, with respect to the Democratic candidates. Moreover, given the relatively small number of potential nominees, five, it would not have been difficult for Graveline to research these candidates early on to determine whether any satisfactorily represented his views, and to decide at that time whether he should throw his hat in the ring.

All of these facts tend to show that Graveline could have met the signature requirement had he not unduly delayed becoming a candidate. As a result, Plaintiffs did not demonstrate a "substantial"' likelihood of success on the merits of their as applied challenge to § 544f.

### B. The Court's selection of 5,000 signatures as the threshold requirement for Plaintiffs' qualifying petition was arbitrary and ignores the facts of this case and Michigan law.

The Court chose 5,000 signatures as the threshold requirement based on the limited evidence presented to it through Plaintiffs' expert's declaration. (Doc. 12, Opinion & Order, Pg ID 168). The 5,000 requirement falls far closer to the qualifying signature requirement for populations in districts of 1 million to 1.9 million people, rather than the 5 million plus set out in § 544f for statewide

districts.  Michigan's population is approximately 9.9 million.[7]  Moreover, as noted in Director Williams' affidavit, in 2018 alone at least four NPA candidates timely filed approximately the same number of signatures collected within *a single congressional district* that the Court ordered Plaintiff Graveline to file for a *statewide office*.  (Ex. 1, Williams Affidavit, ¶ 20(a)-(d)).  Similarly, 9 out of 10 nonpartisan circuit court or probate court judicial candidates filed more signatures to qualify than Plaintiff will be required to file for the statewide office of Attorney General.  *Id.*, ¶ 21.  The 5,000 signatures for a statewide office is out of sync with requirements for non-statewide district races.  It is now just as easy to file an NPA qualifying for a statewide office as it is to qualify in a single congressional district or in a nonpartisan circuit court district.

Moreover, the 5,000 figure ignores the fact that Plaintiffs collected over 14,000 signatures here.  (Doc. 1, Compl., ¶ 25, Pg ID 12).  Plaintiffs relative success in collecting signatures supports a higher threshold requirement than the 5,000 arbitrarily chosen by the Court.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, this Court should immediately stay the issuance of the preliminary injunction pending emergency appeal.

---

[7] See Census, Michigan, Quick Facts,
https://www.census.gov/quickfacts/fact/table/mi,US/PST045217.

Respectfully submitted,

s/Heather S. Meingast
Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

Dated:  August 29, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2018, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

s/Heather S. Meingast
Heather S. Meingast (P55439)
Assistant Attorney General
Attorney for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434