UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAVELINE, et al.,

    Plaintiffs,

v.                                                    Case No. 18-12354
                                                     Honorable Victoria A. Roberts

RUTH JOHNSON, et al.,

    Defendants.

_____/

**ORDER DENYING DEFENDANTS' EMERGENCY MOTION
FOR STAY PENDING EMERGENCY APPEAL [ECF No. 14]**

**I.    INTRODUCTION**

In this ballot access case, Christopher Graveline and three of his supporters ("Plaintiffs") challenge three Michigan statutes which they say operate in combination to deprive them of substantial associational and equal protection rights under the First and Fourteenth Amendments to the United States Constitution.

On August 27, 2018, the Court entered an opinion and order granting Plaintiffs' motion for preliminary injunction and directing Defendants – Michigan Secretary of State Ruth Johnson and Director of the Michigan Bureau of Elections Sally Williams ("Director Williams"; collectively, "the State") – to review Graveline's qualifying petition and place him on the November 6, 2018 general election ballot if his petition contained 5,000 valid signatures.

In addition to the fact that Plaintiffs showed that the challenged statutes severely burden their constitutional rights, the Court granted Plaintiffs' motion in large part because the State failed to address highly relevant issues, including: (1) the combined

effect of the challenged statutes; (2) the State's precise interests; (3) the extent to which those interests make it necessary to burden Plaintiffs' rights; and (4) the historical evidence of independent candidates' lack of access to the ballot. Now the State moves for an emergency stay of the injunction – relying almost entirely on new arguments and evidence not previously presented.

The State's emergency motion for stay pending emergency appeal is **DENIED**.

## II. BACKGROUND

Plaintiffs filed this case on Friday, July 27, 2018. Aware of the time sensitive nature of relief sought, the Court emailed Plaintiffs' counsel on July 30, 2018 to arrange a phone conference for that afternoon with counsel for the State. Counsel for the State was not available until August 1.

On August 1, 2018, the Court held a phone conference. During the call, Plaintiffs informed the Court that they were planning to file a motion for preliminary injunction. In determining the briefing schedule, the Court asked what was the last possible day on which the motion could be decided so that the State would still have sufficient time to place Graveline on the ballot. Counsel for the State replied that September 7, 2018 was the date by which the motion and any appeal would need to be decided to allow sufficient time.

Based on those discussions, and the parties' requests for additional time for briefing, the Court set the briefing schedule on Plaintiffs' motion for preliminary injunction. On August 22, 2018, the Court held a hearing.

On August 27, 2018 the Court entered an opinion granting the motion and ordering that: (1) Graveline must immediately present his qualifying petition to the

Bureau of Elections; (2) the State must accept Graveline's filing and determine the validity of the signatures in time to place Graveline on the ballot if he has sufficient valid signatures; and (3) if Graveline has at least 5,000 valid signatures, and at least 100 valid signatures from registered voters in each of at least half of the 14 congressional districts of the state, the State must place him on the November 6, 2018 ballot.

Graveline filed his petition with the Bureau of Elections on August 28, 2018 at approximately 11:00 a.m.

On August 29, 2018, the State filed a notice of appeal and the underlying emergency motion for stay pending emergency appeal. Plaintiffs responded to the motion on August 30.

## III. DISCUSSION

In deciding whether to issue a stay pending an appeal under Rule 62(c), the Court considers the following four factors:

> '(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.'

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam) (citation omitted). The factors are "interrelated considerations that must be balanced together." *Id.* Because the Court considered these factors when it granted the preliminary injunction, the State must essentially show a likelihood of reversal. *George S. Hofmeister Family Trust v. Trans Indus. of Indiana, Inc.*, No. 06-13984, 2007 WL 128932, at *1 (E.D. Mich. Jan. 12, 2007).

### A. The Court Has Limited Jurisdiction Since the State Filed a Notice of Appeal

Because the State filed a notice of appeal, the Court must address the limit of its jurisdiction before considering the merits of the State's motion. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

"Generally, a federal district court is deprived of jurisdiction over an order once a notice of appeal of that order is filed." *George S. Hofmeister Family Trust*, 2007 WL 128932, at *1 (citing *Griggs*, 459 U.S. at 58 (holding that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously")). While some exceptions exist, *see Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177 (1922) ("after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court"), the Court "may not finally adjudicate substantial rights directly involved in the appeal." *Id.*

Rule 62(c) provides that, "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). Courts interpret Rule 62(c) narrowly, "but in narrowing degrees." *George S. Hofmeister Family Trust*, 2007 WL 128932, at *2. Two interpretations prevail:

> The first interprets the rule to mean that the district court's authority to suspend or modify an injunction pending appeal is limited to modifications that preserve the status quo between the parties already before the circuit

> court by virtue of the notice of appeal. At least three circuits have applied this rule. *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 n. 1 (9th Cir. 1984); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962).
>
> Other circuits have gone beyond the status quo rule to allow, for example, substantive modification imposing more requirements in an injunction order pending appeal when the district court's action 'preserve[s] the integrity of the proceeding in the court of appeals.' *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3rd Cir. 1989); *see also Bd. Of Educ. of St. Louis v. State of Missouri*, 936 F.2d 993, 996 ([8]th Cir. 1991). *Ortho* did state that Rule 62(c) does not grant district court 'open-ended' authority to reconsider a preliminary injunction order. 887 F.2d at 464.
>
> Citing each of the above five case[s], the Sixth Circuit has held that it 'need not weigh in on this controversy. . . .' *Basicomputer Corp. v. Scott*, 973 F.2d 507, 513 (6th Cir. 1992). *Basicomputer* involved an action to enforce noncompetition covenants and confidentiality agreements in employment contracts. *Id.* at 508. The district court modified its preliminary injunction order after it was appealed by shortening the time period when two parties could not compete. *Id.* at 513. Acknowledging that this modification altered the status quo, the Sixth Circuit avoided choosing between the two interpretations of Rule 62(c), holding that it would in any event vacate the district court's injunction because 'it is based on an erroneous view of Ohio law.' *Id.*

*George S. Hofmeister Family Trust*, 2007 WL 128932, at *2 (footnote omitted and paragraph break added).

Based on the foregoing, the Court finds that its jurisdiction is limited; it may only act to: (1) preserve the status quo between the parties; or (2) preserve the integrity of the proceedings before the court of appeals. It is important to note that the "relevant status quo" is "the new status quo between the parties that the court's grant of the injunction creates." *Id.*, at *2 n. 1.

The State asks the Court to stay the injunction. However, a stay would go well beyond preserving the status quo or preserving the integrity of the proceedings in the court of appeals. For this reason alone, the State's motion is denied. *See id.* ("The

5

relief Defendants seek is total reconsideration, which bears no resemblance to preserving the status quo or the more forgiving rule of preserving the integrity of the case for appellate proceedings. Accordingly, and for the reasons stated below, the court is not persuaded that Defendants' motion should be granted.").

Moreover, as discussed below, the Court finds that a stay is not warranted after weighing the four factors set forth above.

**B.     The State's Motion is Based on New Arguments and Evidence Not Previously Submitted, Which the Court Cannot Consider**

In weighing the four factors in consideration of a motion to stay, the Court is not permitted to examine new evidence. *See George S. Hofmeister Family Trust*, 2007 WL 128932, at *3 ("The Sixth Circuit will simply not hear any issues that Defendants failed to raise, and preserve for appeal, when this court considered Plaintiff's motion for a preliminary injunction.") (citing *United States v. $100,375 in U.S. Currency*, 70 F.3d 438, 441 (6th Cir. 1995)). *See also United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1165, 1170 (D. Colo. 1998) ("'Once the appeal is taken, . . . jurisdiction passes to the appellate court. Thereafter the appellant is not usually entitled as of right to present new evidence or argument to the trial court.'") (quoting *Ideal Toy Corp.*, 302 F.2d at 625)).

**C.     The State's New Claims of Irreparable Harm and Damage to the Public Ring Hollow**

The State's motion for stay is based primarily on irreparable harm and damage to the public. It argues generally that the September 7 deadline for certifying the ballot will not allow the State time to review Graveline's ballot, and that several other deadlines are related to the September 7 date.

The State also says that, "[a]s Defendants understand the Court's order," it requires the State to depart from its ordinary review procedures to conduct a more burdensome review of the signatures accompanying Graveline's petition. On this basis, the State says it will not be able to review Graveline's petition in time for the September 7 deadline for certifying the ballot.

The State says that this will cause irreparable harm and damage to the public because: (1) the citizens of Michigan have an interest in seeing their laws enforced; and (2) any delay after the September 7 deadline intrudes into the two-week period for final ballot preparation and jeopardizes the State's ability to comply with statutory requirements regarding preparation of absentee ballots.

First, nothing in the Court's order suggests that the State should abandon its ordinary procedure for examining nominating petitions. The Court merely reduced the signature requirement for Graveline from 30,000 to 5,000.

Furthermore, the State raised none of these issues in response to Plaintiffs' motion for preliminary injunction or at the hearing. The State informed the Court at the outset of this case – during the August 1 phone conference – that September 7, 2018 was the "drop-dead" date by which it needed a decision. During the hearing, counsel for the State confirmed this date and questioned what the lower number of signatures may be. [*See* Hearing Transcript, p. 45]. However, the State never raised or even hinted that it would have an issue canvassing the signatures. Indeed, when Plaintiffs' counsel stated that the relief should be to place Graveline on the ballot outright, the State's counsel balked at that idea and stated, "In terms of automatic placement on the ballot, essentially that would mean that whatever signatures [Graveline] has gathered

would not be canvassed . . . which in all candor, I have [not] seen . . . happen." [Hearing Transcript, p. 46].

Considering the State's previous representations that it would be able to arrange for Graveline to be placed on the ballot if the motion was decided by September 7, and the State's failure to raise any concern about reviewing Graveline's petition until now, "[the State's] new claims of irreparable harm, *which were plainly foreseeable*, ring hollow, self-serving and exaggerated." *See George S. Hofmeister Family Trust*, 2007 WL 128932, at *3 (emphasis added). The Court abided by that date and did not order the State to do anything other than what it would normally do. Its argument of irreparable harm fails.

    **D.**    **The State Does Not Demonstrate that it is Likely to Prevail on the Merits of Its Appeal**

In arguing that it will likely prevail on the merits of its appeal, the State similarly raises new arguments and relies on evidence not previously presented. The State argues for the first time that the challenged statutes – in combination – are not unconstitutional. Much of the evidence the State relies upon (e.g., deadlines for reviewing petitions and preparing ballots) was never presented in response to Plaintiffs' motion for preliminary injunction. As already stated, however, the Court cannot consider this new argument in evaluating the merits of the State's motion for stay. *See George S. Hofmeister Family Trust*, 2007 WL 128932, at *3; *Power Eng'g Co.*, 10 F. Supp. 2d at 1170.

The State also argues that each of the challenged statutes is constitutional. But the Court never found any statute unconstitutional standing alone.

Even if the Court considered new arguments and evidence, the State falls far short of showing a likelihood of prevailing on the merits of its appeal. Of particular note, although the State summarily states that the statutes, alone or in combination, are constitutional, it never *actually* addresses the combined effect of the challenged statutes. Additionally, the State does not address the historical evidence demonstrating independent candidates' lack of access to the ballot for statewide office. Nor does the State show that the statutes are narrowly tailored.

Finally, the State argues that the Court's selection of 5,000 signatures as the threshold requirement for Graveline's qualifying petition is arbitrary and ignores the facts of this case and Michigan law. This argument lacks support.

The selection of 5,000 signatures was not arbitrary. Plaintiffs presented unrebutted evidence from an expert that 5,000 signatures is enough to satisfy the State's interests to preserve the integrity of the election process, regulate the number of people on the ballot, and ensure that candidates have a substantial modicum of support. As discussed during the hearing and set forth in the opinion, other courts have reduced the signature requirement when presented with ballot access challenges.

After finding that Plaintiffs demonstrated a likelihood of success on the merits, the Court had to fashion a remedy specific to Plaintiffs. Ordering the State to place Graveline on the ballot outright would ignore the State's interests of ensuring that candidates have a substantial modicum of support before gaining ballot access. Selecting any other signature requirement would be arbitrary. Thus, the Court followed established precedent and based its signature number on the only record evidence – i.e., the declaration of Richard Winger submitted by Plaintiffs.

## IV. CONCLUSION

Based on the foregoing, the Court finds that the State fails to sustain its burden to show that it is entitled to a stay pending an appeal under Rule 62(c).

"In First Amendment cases, 'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits [since] the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action.'" *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (citations omitted); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."). Where, as here, Plaintiffs show a strong likelihood of success on the merits of their First Amendment claim – warranting a preliminary injunction – and the State fails to show that it is likely to succeed on appeal in its motion for stay, the remaining three factors are significantly impacted.

"With regard to the factor of irreparable injury, for example, it is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib. Co.*, 154 F.3d at 288 (citation omitted). Moreover, "the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* (citation omitted). Relatedly, although the State and Michigan residents have an interest in seeing the state law enforced, that is only so for constitutional laws. *See id.*

Because Plaintiffs show a strong likelihood of success on the merits of their claim that the challenged statutes are unconstitutional as applied to them, the public interest and the State's interest in having those laws enforced are less weighty. *See id.*

The State's emergency motion for stay pending emergency appeal is **DENIED**.

**IT IS ORDERED**.

                                                  s/Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated: August 30, 2018