UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

| | |
|---|---|
| CHRISTOPHER GRAVELINE, WILLARD H. JOHNSON, MICHAEL LEIBSON, and KELLIE K. DEMING, | **Case No. 2:18-cv-12354-VAR-DRG** |
| Plaintiffs, | **Judge Victoria A. Roberts Magistrate Judge David R. Grand** |
| v. | |
| RUTH JOHNSON, Secretary of State of Michigan, and SALLY WILLIAMS, Director of Michigan Bureau of Elections, in their official capacities, | |
| Defendants. | |
| _____/ | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND PERMANENT INJUNCTIVE RELIEF**

Pursuant to 28 U.S.C. 2201 and 2202 and Fed. R. Civ. P. 56(a), Plaintiffs

hereby move the Court for summary judgment with respect to Count II and Count III

of the Complaint and respectfully request that the Court: (I) enter an order declaring

that M.C.L.A. §§ 168.590c(2), 168.544f, and 168.590b(4) as applied in combination

are unconstitutional; and (ii) enter an order providing that independent candidates for

statewide office shall qualify to access the general election ballot by submitting 5,000

valid signatures on a nomination petition that otherwise complies with Michigan law,

such order to remain in effect until the Legislature enacts remedial legislation.

Pursuant to Local Rule 7.1(a), there was a conference between counsel for the

Plaintiffs and counsel for the Defendants in which both sides confirmed that they would be filing their respective motions for summary judgment in accordance with the scheduling order and neither side concurred in the relief sought (summary judgment) by the other.

In support of this motion, Plaintiffs submit the following Brief in Support of Motion for Summary Judgment and Permanent Injunctive Relief with Exhibits 1-5. Consistent with Fed. R. Civ. P. 65(a)(2) (admissible evidence received on motion for preliminary injunction becomes part of trial record), Plaintiffs' further rely on Exhibits A-G to the Complaint for Declaratory and Injunctive Relief, ECF No. 1-2 to ECF No. 1-8, PageIDs.19-55) which were submitted in support of Plaintiffs' Motion for Preliminary Injunction

DATED:      August 15, 2019                    Respectfully submitted,

                                               /s/ William P. Tedards, Jr.
                                               _____
                                               **WILLIAM P. TEDARDS, JR.***
                                               *Counsel of Record
                                               1101 30th Street, NW, Suite 500
                                               Washington, DC 20007
                                               202-797-9135
                                               BT@tedards.net
                                               (DC 143636) (MI)

                                               **OLIVER B. HALL**
                                               Center for Competitive Democracy
                                               P.O. Box 21090
                                               Washington, D.C. 20009
                                               202-248-9294

oliverhall@competitivedemocracy.org
(DC 976463) (MI)

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

CHRISTOPHER GRAVELINE, WILLARD H. JOHNSON, MICHAEL LEIBSON, and KELLIE K. DEMING,

Plaintiffs,

v.

RUTH JOHNSON, Secretary of State of Michigan, and SALLY WILLIAMS, Director of Michigan Bureau of Elections, in their official capacities,

Defendants.

_____/

**Case No. 2:18-cv-12354-VAR-DRG**

**Judge Victoria A. Roberts
Magistrate Judge David R. Grand**

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

CONCISE STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . .  viii

CONTROLLING OR APPROPRIATE AUTHORITY . . . . . . . . . . . . . . . . . . .  ix

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 2

   The Court's Order Granting Plaintiffs a Preliminary Injunction. . . . . . . . . 5

   The Court of Appeals' Order Denying the Secretary's Motion to Stay . . . . 8

STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO
GENUINE ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   With respect to the requested Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   With respect to the requested Permanent Injunctive Relief . . . . . . . . . . . 12

SUMMARY JUDGMENT LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO
      COUNT II AND A DECLARATION THAT M.C.L.A. §§ 168.590c(2),
      168.544f, AND 168.590b(4) ARE UNCONSTITUTIONAL AS
      APPLIED IN COMBINATION BECAUSE THEY IMPOSE SEVERE
      BURDENS ON PLAINTIFFS' FIRST AND FOURTEENTH
      AMENDMENT RIGHTS AND ARE NOT NARROWLY DRAWN TO
      ADVANCE A STATE INTEREST OF COMPELLING
      IMPORTANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.   The Filing Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.   The Signature Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

The Evidentiary Record With Respect to the 30,000
Signature Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.     The Financial Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO
COUNT III AND A DECLARATION THAT M.C.L.A. §§ 168.590c(2),
168.544f, AND 168.590b(4) ARE UNCONSTITUTIONAL AS
APPLIED IN COMBINATION BECAUSE THEY SEVERELY
BURDEN PLAINTIFFS' RIGHT TO CAST THEIR VOTES
EFFECTIVELY AND ARE NOT NARROWLY DRAWN TO
ADVANCE A STATE INTEREST OF COMPELLING
IMPORTANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.   THE COURT SHOULD ENTER AN ORDER PERMANENTLY
ENJOINING THE SECRETARY FROM ENFORCING M.C.L.A. §
168.544f AND PROVIDING THAT INDEPENDENT CANDIDATES
FOR STATEWIDE OFFICE SHALL QUALIFY TO ACCESS THE
GENERAL ELECTION BALLOT BY TIMELY SUBMITTING A
NOMINATION PETITION WITH AT LEAST 5,000 VALID
SIGNATURES, COMPLYING IN ALL OTHER RESPECTS WITH
CURRENT LAW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

EXHIBIT LIST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment 1

# TABLE OF AUTHORITIES

Page No.

## __CASES__

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix, 5, 13, 22, 25, 27

*Belitskus v. Pizzingrilli,*
    343 F.3d 632 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*Bergland v. Harris,*
    767 F. 2d 1551 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Bolanowski v. Raich,*
    330 F. Supp. 724 (E.D. Mich. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Bullock v. Carter,*
    405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) . . . . . . . . . . . . . . . 21, 24

*Burdick v. Takushi,*
    504 U.S. 428 (1992), 112 S.Ct. 2059,
    119 L.Ed.2d 245 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . ix, 5, 9, 13, 14, 20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Clean-Up '84 v. Heinrich,*
    590 F. Supp. 928 (M.D. Fl. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cromer v. South Carolina,*
    917 F.2d 819 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Delaney v. Bartlett,*
    370 F. Supp. 2d 373 (M.D.N.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Dixon v. Maryland State Bd. of Elections,*
    878 F.2d 776 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fulani v. Krivanek*,
    973 F.2d 1539 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Goldman-Frankie v. Austin*,
    727 F. 2d 603 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Graveline, et al. v. Ruth Johnson, et al.*,
    No. 18-1992, Doc. 12-2 (6th Cir., September 6, 2018) . . . . . . . . ix, 8, 14, 29

*Graveline, et al. v. Ruth Johnson, et al.*,
    No. 18-12354, ECF No. 12 (E.D. Mich., August 27, 2018) . . . . . . 13, 14, 28

*Green Party of Ga. v. Kemp*,
    171 F. Supp. 3d 1340 (N.D. Ga. 2016),
    *aff'd* 674 Fed. Appx. 974 (11th Cir. 2017) . . . . . . . . . . . . . . . . ix, 27, 29, 30

*Green Party of Mich. v. Land*,
    541 F. Supp. 2d 912 (E.D. Mich. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Hall v. Austin*,
    495 F. Supp. 782 (E.D. Mich. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Harper v. Virginia Bd. of Elections*,
    383 U.S. 663 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Illinois State Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

*Jenness v. Fortson*,
    403 U.S. 431 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

*Jones v. McGuffage*,
    921 F. Supp. 2d 888, 902 (N.D. Ill. 2013). . . . . . . . . . . . . . . . . . . . . . . . . 29

*Lawrence v. Blackwell*,
    430 F.3d 368 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Libertarian Party of Ohio v. Blackwell*,
    462 F.3d 579 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix, 8, 16

*Lubin v. Panish*,
        415 U.S. 709 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 25

*McCarthy v. Austin*,
        423 F. Supp. 990 (W.D. Mich. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McLaughlin v. North Carolina Board of Elections*,
        850 F. Supp. 373 (M.D. N.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Macbride v. Exon*,
        558 F.2d 443 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mogk v. City of Detroit*,
        335 F. Supp. 698 (E.D. Mich. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Moore v. Philip Morris Cos., Inc.*,
        8 F.3d 335 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*NAACP v. Button*,
        371 U.S. 415 [83 S.Ct. 328, at 341, 9 L.Ed. 2d 405] (1963). . . . . . . . . . . 27

*Ondo v. City of Cleveland*,
        795 F.3d 597 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Republican Party of Arkansas v. Faulkner County*,
        49 F.3d 1289 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Storer v. Brown*,
        415 U.S. 724 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix, 19

*Tompkins v. Crown Corr, Inc.*,
        726 F.3d 830 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. Rhodes*,
        393 U.S. 23 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix, 25, 26, 27

## **STATUTES**

28 U.S.C. 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Motion, p. 1

28 U.S.C. 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

M.C.L.A. § 168.544f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 17, 20, 30

M.C.L.A. § 168.590c(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 20, 30

M.C.L.A. § 168.590b(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20, 30

## <u>OTHER AUTHORITIES</u>

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, 1, 3, 13, 14, 24, 27

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, 1, 3, 13, 14

L. Tribe, American Constitutional Law (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 22

**CONCISE STATEMENT OF THE ISSUES PRESENTED**

1.  Whether Plaintiffs are entitled to a summary judgment as to Count II and a declaration that M.C.L.A. §§ 168.590c(2), 168.544f, and 168.590b(4) are unconstitutional as applied in combination because they impose severe burdens on Plaintiffs' First and Fourteenth Amendment rights and are not narrowly drawn to advance a state interest of compelling importance.

2.  Whether Plaintiffs are entitled to a summary judgment as to Count III and a declaration that M.C.L.A. §§ 168.590c(2), 168.544f, and 168.590b(4) are unconstitutional as applied in combination because they severely burden Plaintiffs' right to cast their votes effectively and are not narrowly drawn to advance a state interest of compelling importance.

3.  Whether the Court should enter an Order permanently enjoining enforcement of the signature requirement imposed by M.C.L.A. § 168.544f and providing that independent candidates for statewide office shall qualify to access the general election ballot by timely submitting a nomination petition with at least 5,000 valid signatures, complying in all other respects with current law, such order to remain in effect until the Legislature enacts remedial legislation.

## CONTROLLING OR APPROPRIATE AUTHORITY

1.  *Christopher Graveline, et al. v. Ruth Johnson, et al.*,
    No. 18-1992, Doc. 12-2 (6th Cir., September 6, 2018).

2.  *Libertarian Party of Ohio v. Blackwell*,
    462 F.3d 579 (6th Cir. 2006).

3.  *Anderson v. Celebrezze*,
    460 U.S. 780 (1983).

4.  *Burdick v. Takushi*,
    504 U.S. 428 (1992).

5.  *Storer v. Brown*,
    415 U.S. 724 (1974).

6.  *Williams v. Rhodes*,
    393 U.S. 23 (1968).

7.  *Illinois State Bd. of Elections v. Socialist Workers Party*,
    440 U.S. 173 (1979).

8.  *Green Party of Georgia v. Kemp*,
    171 F. Supp. 3d 1340 (N.D. Ga. 2016), *aff'd* 674 Fed.
    Appx. 974 (11th Cir. 2017).

## INTRODUCTION

Plaintiffs Christopher Graveline, Willard H. Johnson, Michael Leibson and Kellie K. Deming respectfully submit this brief in support of their motion for summary judgment. As set forth below, the Court should grant Plaintiffs summary judgment as to Count II and Count III of their Complaint, because the undisputed facts and evidence in the record demonstrate that the challenged provisions of the Michigan Election Code are unconstitutional as applied in combination, in that they severely burden Plaintiffs' First and Fourteenth Amendment rights, and the provisions are not narrowly tailored to further a compelling state interest. The Court expressly reached that conclusion when it entered its order granting Plaintiffs' preliminary injunctive relief, finding that Plaintiffs had demonstrated "a strong likelihood of success on their claims that [the challenged provisions] are unconstitutional as applied to them." The Sixth Circuit Court of Appeals expressly concurred when it declined to stay that order.

Defendants Ruth Johnson, Michigan Secretary of State, and Sally Williams, Director of Michigan Bureau of Elections ("the Secretary") are unable to submit evidence or cite authority that would provide the Court with grounds to reverse its conclusion and uphold the provisions. The Court should therefore enter a final judgment declaring the provisions unconstitutional as applied in combination. Further, consistent with the Court of Appeals' guidance, the Court should enter an

order permanently enjoining the Secretary from enforcing M.C.L.A. § 168.544f and providing that independent candidates for statewide office shall qualify to access the general election ballot provided that they timely submit nomination petitions containing at least 5,000 valid signatures, and which comply in all other respects with current Michigan law. In short, the Court should convert its preliminary injunction into a permanent injunction, to remain in effect until the Legislature enacts remedial legislation establishing constitutional ballot access requirements for independent candidates for statewide office.

## FACTUAL AND PROCEDURAL BACKGROUND

This action commenced on July 27, 2018, when Plaintiff Graveline, an independent candidate for Attorney General of Michigan, and three voters who wish to support independent candidates such as Graveline, filed their Complaint against Defendants in their official capacities to challenge the constitutionality of three provisions of the Michigan Election Code, as applied in combination. (ECF No. 1.) Specifically, the Complaint challenges the requirement that independent candidates for statewide office submit nomination petitions 110 days before the general election, *see* M.C.L.A. § 168.590c(2) (the "Filing Deadline") (hereinafter all statutory citations are to the Michigan Election Code unless otherwise specified); the requirement that such nomination petitions contain the signatures of 30,000 qualifying voters, *see* § 168.544f (the "Signature Requirement"); and the requirement that such nomination

petitions be signed by at least 100 registered electors in each of at least half of the congressional districts in the state, *see* § 168.590b(4) (the "Distribution Requirement"). (ECF No. 1, PageID.2.) In Count II, Plaintiffs assert that these provisions violate their speech, associational, due process and equal protection rights, as guaranteed by the First and Fourteenth Amendments. (ECF No. 1, ¶¶ 37-40, PageID.15.) In Count III, Plaintiffs assert that the provisions violate their right to cast a meaningful and effective vote. (ECF No. 1, ¶¶ 41-44, PageID.16.) The Complaint requests that the Court enter a declaratory judgment holding §§ 168.544f, 168.590b(4), and 168.590c(2) unconstitutional as applied in combination with one another, as well as an order placing Plaintiff Graveline on Michigan's 2018 general election ballot as an independent candidate for Attorney General, and such other and further relief as the Court deems proper. (ECF No. 1, PageID.17.)

The facts giving rise to this case are set forth in the Complaint, (ECF No. 1, ¶¶ 1-32, PageIDs.3-13.), and in Plaintiffs' Statement of Material Facts as to Which There Is No Genuine Issue, *infra*, pp. 9-12. The facts are also summarized in this Court's August 27, 2018 order granting Plaintiffs' motion for a preliminary injunction (ECF No. 12) and in the Court of Appeals' September 6, 2018 order denying the Secretary's emergency motion for stay pending appeal. Plaintiffs therefore rely on those materials and will not repeat their allegations here.

In its August 27, 2018 order, the Court directed Plaintiff Graveline to submit

3

the nomination petitions he had previously attempted to submit on the filing deadline of July 19, 2018 and directed the Secretary to accept the filing and place Plaintiff Graveline on Michigan's 2018 general election ballot as an independent candidate for Attorney General, provided that his nomination petitions contained at least 5,000 valid signatures, including at least 100 valid signatures from each of at least half of Michigan's 14 congressional districts. (ECF No. 12, PageID.168.) On August 29, 2018, the Secretary appealed from that order and filed an emergency motion for stay pending appeal. (ECF No. 13, PageID.170; ECF No. 14, PageID.171.) On August 30, 2018, Plaintiffs filed their opposition to the motion, (ECF No. 16), and the Court entered an order denying the motion that same day. (ECF No. 17.) On September 4, 2018, the Secretary filed an emergency motion for stay pending appeal with the Court of Appeals. The Plaintiffs filed their opposition to that motion on September 5, 2018, and the Court of Appeals entered its order denying the motion on September 6, 2018. On October 15, 2018, the Court of Appeals entered an order dismissing the Secretary's appeal.

Plaintiff Graveline complied with the requirements set forth in this Court's August 27, 2018 order, and he appeared on Michigan's 2018 general election ballot. Meanwhile, the litigation proceeded in this Court, with the parties taking discovery, which consisted entirely of expert reports. The Plaintiffs submitted an expert report and a rebuttal report by Richard Winger, editor and publisher of Ballot Access News,

and the Secretary submitted an expert report and rebuttal report by Colleen Kelley, a statistical consultant, as well as an expert report by Lee Albright, president of National Petition Management. Neither party took any further discovery.

### The Court's Order Granting Plaintiffs a Preliminary Injunction

In its order granting Plaintiffs a preliminary injunction, this Court found that Plaintiffs had met "their burden to show that the character and magnitude of their injuries is significant and that the Michigan statutes – in combination – severely burden the constitutional rights not only of Graveline, but also of the Plaintiff-Voters." (ECF No. 12, PageID.146.) The Court further found that the state interests the Secretary sought to protect "are not sufficiently weighty to justify the reach and breadth of the challenged statutes," and that "there are less restrictive means by which [the Secretary] can achieve [those] goals." (*Id.*) The Court thus concluded that Plaintiffs "have a strong likelihood of success on their claims that Mich. Comp. Laws §§ 168.590c(2), 168.544f, and 168.590b(4) are unconstitutional as applied to them." (*Id.*)

The Court reached its findings and conclusions by applying the analytical framework the Supreme Court established for constitutional review of ballot access laws in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). (ECF No. 12, PageID.152.) Under that framework, a court must first identify the "character and magnitude of the asserted injury" to Plaintiffs'

5

constitutional rights. (ECF No. 12, PageID.152 (quoting *Anderson*, 460 U.S. at 789.)

Next, the court must "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule," then "determine the legitimacy and strength of each of those interests" and "consider the extent to which those interests make it necessary to burden the plaintiff's rights." (*Id.*) Finally, the Court must weigh these factors to determine whether the state law is constitutional. (*Id.*) Regulations that impose "severe" burdens on a plaintiff's constitutional rights are upheld only if they are "narrowly drawn to advance a state interest of compelling importance," while regulations that "do not seriously burden a plaintiff's rights" are subject to a lesser standard of review, pursuant to which "a state's important regulatory interests" are typically sufficient to justify the burdens imposed." (*Id.*, PageIDs.152-53.)

Applying the *Anderson/Burdick* framework in this case, the Court found that the challenged provisions severely burdened three distinct constitutional rights: (1) Plaintiff Graveline's right to appear on Michigan's general election ballot as an independent candidate; (2) the Plaintiff-Voters' right to cast a meaningful and effective vote; and (3) Plaintiffs' freedom to associate for the advancement of their political beliefs. (*Id.*, PageIDs.153-61.) The Court emphasized that it was obliged to analyze the "combined effect" of the challenged provisions. (*Id.*, PageID.156.) Accordingly, it found that the combined effect of the Filing Deadline, Signature

Requirement and Distribution Requirement was to "operate to freeze the political status quo," and effectively bar independent candidates from accessing the ballot. (*Id.*, PageIDs.157-58 (quoting *Jenness v. Fortson*, 403 U.S. 431, 438 (1978)). As the Court observed, not one independent candidate for statewide office had complied with the requirements in the 30 years since they were enacted. (*Id.*, PageIDs.157-58.)

Having found that the challenged provisions severely burden Plaintiffs' constitutional rights, the Court determined that the Secretary "must set forth precise interests of compelling importance and show that the regulations are necessary and narrowly tailored to advance those interests." (*Id.*, PageID.163 (citations omitted).) This the Secretary failed to do. Instead, the Court observed, the Secretary relied upon "generalized and hypothetical interests identified in other cases." (*Id.*) The asserted interests are important, the Court found, but "they are far from the precise interests required under the *Anderson/Burdick* framework to justify ballot access laws that severely burden a candidate's and individual voters' rights." (*Id*., PageIDs.165-66 (citations omitted).) Further, the Court found, the Secretary did not even attempt to demonstrate that the challenged provisions "are narrowly tailored" to meet the asserted interests. (*Id.*, PageID.166.) The Court therefore concluded that the Secretary "falls far short of satisfying its burden to show that the severe burdens caused by the scheme are justified." (*Id.*)

### The Court of Appeals' Order Denying the Secretary's Motion to Stay

The Court of Appeals denied the Secretary's motion to stay this Court's order because it found that the Secretary was not "likely to succeed in showing that the district court abused its discretion by entering the preliminary injunction." *See Graveline v. Johnson*, No. 18-1992, Opinion, ECF No. 12-2, p. 6 (6th Cir., Sept. 6, 2018) (not published) ("Slip Op."). Like this Court, the Court of Appeals analyzed the constitutionality of the challenged provisions under the *Anderson/Burdick* framework. (*See Id.* at 6-11.) In conducting its analysis, the Court of Appeals focused on two prior cases, *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005), which upheld Ohio's ballot access requirements for independent congressional candidates, and *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), which struck down Ohio's ballot access requirements for minor political parties. (Slip Op. at 7-9.) "Michigan's treatment of independent candidates," the Court of Appeals found, "falls closer to *Libertarian Party* than to *Lawrence*." (Slip Op. at 9.) And like this Court, the Court of Appeals found that the challenged provisions severely burden Plaintiffs' constitutional rights: "The numerical signature requirement here, in combination with the signature collection window and filing deadline, is a severe burden on independent candidates and those who wish to vote for them." (Slip Op. at 10.)

Because the challenged provisions impose a severe burden, the Court of

Appeals determined that the Secretary was required to show that they are "narrowly drawn to advance a state interest of compelling importance." (Slip Op. at 11 (quoting *Burdick*, 504 U.S. at 434).) Once again, the Secretary failed to make the required showing. The "generalized interests" the Secretary asserted are important, the Court of Appeals found, but the Secretary "made no argument as to why these specific measures are necessary." (Slip Op. at 11.) Thus, the Secretary failed to demonstrate that the challenged provisions "are narrowly drawn to protect [the state's] interests." (*Id.*)

The Court of Appeals also rejected the Secretary's objections to the remedy this Court fashioned when it directed the Secretary to place Plaintiff Graveline on Michigan's 2018 general election ballot provided that his nomination petitions contained 5,000 valid signatures, including at least 100 valid signatures from registered voters in at least half of the state's congressional districts. (*Id.* at 12.) "Surely some signature requirement better serves the State's asserted interests than none at all," the Court of Appeals reasoned. (*Id.*) Thus, the Court of Appeals concluded, "the district court's remedy was within its equitable discretion." (*Id.*)

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

**With respect to the requested Declaration:**

1.    Since the State of Michigan enacted the current electoral scheme for

independent candidates in 1988, not one independent candidate for statewide office has qualified for the ballot. (Declaration of Richard Winger, Exhibit A to the Complaint for Declaratory and Injunctive Relief (ECF No. 1-2), ¶ 5, Page ID.21.)

2.     Michigan's 30,000 signature minimum requirement for independent candidates for statewide office is higher than all but five states. (*Id*., ¶ 8, Page ID.22.)

3.     Michigan's 30,000 signature requirement is an arbitrary number, in that Michigan imposes a signature requirement of 12,000 for districts with populations up to 4,999,999, but imposes the 30,000 signature requirement on districts with populations of 5,000,000 or more. (M.C.L.A. § 168.544f.)

4.     In the history of American elections, with a single exception (Ohio in 1984), no state requiring 5,000 or more signatures has ever had more than eight candidates on the general election ballot for statewide office. (Decl. of R. Winger, ECF No. 1-2, ¶ 7; EXPERT REPORT OF RICHARD WINGER, December 14, 2018 (attached as Exhibit 1), EXPERT REPORT OF RICHARD WINGER, April 15, 2019 with attached Exhibit A, "Historical Ballot Access Results in States that Imposed Signature Requirements of 5,000 or Greater" (attached as Exhibit 2).)

5.     Most often, volunteer efforts to gather signatures for ballot petitions fail, and professionals must be used. (("Michigan Independent Candidate Signature Gathering Report" by Lee Albright (Defendants' signature gathering expert), February 26, 2019, p. 2.)

6.     Assuming the industry standard 75% validity rate, 40,000 signatures must be gathered to reasonably assure meeting a 30,000 signature requirement. A 75% validity rate is difficult to maintain. There must be a process in place to scrutinize petitions for signatures of unregistered signers, for duplicate signatures, and other irregularities frequently found on petitions, like incomplete signature blocks, people signing in pencil, etc. (*Id.*, p. 1.)

7.     In addition to having a process in place for validating petitions, it is necessary to take into account such things as availability of venue and availability of workforce, weather, and the number of other petitions being circulated at the time and what is being paid for those signatures. (*Id.*)

8.     As an independent candidate for Michigan Attorney General, Christopher Graveline was able to recruit 231 volunteers who collected 7,899 signatures. To augment the volunteer efforts, Mr. Graveline hired a professional signature gathering firm, SMI Enterprises, which collected billable signatures at a rate of $6.00 per billable signature with a 75% validity guarantee rate. The firm collected over 6,000 billable signatures at an expense of $37,258. The cost of a full professional effort to produce 30,000 valid signatures would have been approximately $225,000. (Declaration of Christopher Graveline, Exhibit B to the Complaint, ECF No. 1-3, at ¶¶ 11-13.)

9.     Plaintiffs wish to support and vote for independent candidates in

Michigan's future elections for Attorney General. They believe both major political

parties utilize the Office of Attorney General in an overly partisan manner and that

the office should be non-partisan. (Exhibits 4 and 5, Declarations of Willard Johnson

and Michael Leibson, ¶¶ 3-4.)

10. Plaintiffs have an interest in voting for independent candidates in

Michigan's future elections for Governor, Lieutenant Governor, and Secretary of

State. The presence of independent candidates in Michigan's elections benefits the

Plaintiffs because they raise issues and present views that Republican and Democratic

candidates may oppose or disregard. (*Id*., ¶¶ 5-6.)

**With respect to the requested Permanent Injunctive Relief:**

See Nos. 4, 9, and 10, above.

## SUMMARY JUDGMENT LEGAL STANDARD

In *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015), the Sixth

Circuit Court of Appeals states:

> We review de novo a district court's grant of summary judgment.
> *Tompkins v. Crown Corr, Inc*., 726 F.3d 830, 837 (6th Cir. 2013).
> Summary judgment is appropriate if there is no genuine issue of material
> fact and the movant is entitled to judgment as a matter of law. Fed. R.
> Civ. P. 56(a).
>
> \* \* \*
>
> While the burden is initially on the moving party to show the absence of
> any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S.
> 317, 323 (1986), the nonmoving party must then present "significant
> probative evidence" to "do more than show that there is some
> metaphysical doubt as to the material facts" to defeat the motion, *Moore*

*v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). ... When the nonmovant does not effectively address the movant's assertion of a fact, the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## ARGUMENT

I.   **PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT II AND A DECLARATION THAT M.C.L.A. §§ 168.590c(2), 168.544f, AND 168.590b(4) ARE UNCONSTITUTIONAL AS APPLIED IN COMBINATION BECAUSE THEY IMPOSE SEVERE BURDENS ON PLAINTIFFS' FIRST AND FOURTEENTH AMENDMENT RIGHTS AND ARE NOT NARROWLY DRAWN TO ADVANCE A STATE INTEREST OF COMPELLING IMPORTANCE.**

Plaintiffs are entitled to summary judgment as to Count II of their Complaint. The undisputed facts and evidence in the record demonstrate that, as applied in combination, the Filing Deadline, Signature Requirement and Distribution Requirement severely burden Plaintiffs' First and Fourteenth Amendment rights, and the provisions are not narrowly tailored to further a compelling state interest. As such, they cannot withstand scrutiny under the *Anderson/Burdick* analysis. *See Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434. The Court should declare the provisions unconstitutional as applied in combination.

This Court and the Sixth Circuit Court of Appeals have already determined, on a preliminary basis, that the Filing Deadline, Signature Requirement, and Distribution Requirement, as applied in combination, impose a "severe" burden on Plaintiffs' constitutional rights. (*Graveline v. Johnson*, No. 18-12354, Opinion and Order

Granting Plaintiffs' Motion for Preliminary Injunction, ECF No. 12, PageID.161 (E.D. Mich., August 27, 2018) ("In sum, the Court finds that Plaintiffs satisfy their burden to show that, as applied, the combination of Michigan's ballot access regulations severely burden their fundamental rights under the First and Fourteenth Amendments."); *Graveline v. Johnson*, No. 18-1992, Opinion, Doc. 12-2, p. 10 (6th Cir., Sept. 6, 2018) ("The numerical signature requirement here, in combination with the signature collection window and filing deadline, is a severe burden on independent candidates and those who wish to vote for them.") Under the *Anderson/Burdick* analysis, therefore, the Secretary is required to "set forth precise interests of compelling importance and show that the regulations are necessary and narrowly tailored to address those interests [citation omitted]" (*Graveline v. Johnson*, E.D. Mich., *supra* at PageID.163); *see Burdick*, 504 U.S. at 434.

This Court has also determined, on a preliminary basis, that the Secretary has failed to advance a sufficiently compelling interest, or to show that the challenged provisions are narrowly drawn to advance such an interest. (ECF No. 12, PageIDs.165-66.)  The Court of Appeals concurred. The State's general interest in "the integrity of its election process," avoiding "voter confusion," and presenting "clogged ballots" is valid, the Court of Appeals explained, but the Secretary has "made no argument as to why these specific measures are necessary. There is no indication that Michigan's laws are narrowly drawn to protect its interests."

(*Graveline v. Johnson*, 6th Cir., *supra*, at p. 11.)

Accordingly, at the preliminary stage of these proceedings, this Court concluded that Plaintiffs had demonstrated that "they have a strong likelihood of success on their claims that Mich. Comp. Laws §§ 168.590c(2), 168.544f, and 168.590b(4) are unconstitutional as applied to them…." (ECF No. 12, PageID.146.) Plaintiffs now move for summary judgment. In further support of their claims, Plaintiffs submit the following materials: (1) EXPERT REPORT OF RICHARD WINGER (December 14, 2018) (Exhibit 1); (2) Rebuttal EXPERT REPORT OF RICHARD WINGER (April 15, 2019) (Exhibit 2); (3) Expert Report of Lee Albright (Exhibit 3); (4) Declaration of Michael Leibson (Exhibit 4); and (5) Declaration of Willard H. Johnson (Exhibit 5). Based on these materials, the evidence in the record, and the discussion below, Plaintiffs are entitled to a final judgment in their favor.

### A.    The Filing Deadline.

Section 168.590c(2) sets the deadline for independent candidates to submit nomination petitions 50 days prior to the deadline for major political parties to hold their nomination conventions and 110 days before the general election. (Comp. ¶ 34.) This deadline imposes an undue burden, because it requires that independent candidates conduct their petition drives well before the major party nominees are known, and before voters are paying attention to, much less actively engaged in, the

electoral process. The Secretary cannot proffer any valid interest that could justify the imposition of such a burden.

The "great weight of authority" holds that "filing deadlines well in advance of the primary and general elections" are unconstitutional. *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 590 (6th Cir. 2006) (striking down minor party filing deadline in November, which fell 120 days before primary election, on the ground that, *inter alia*, it was "well in advance of the primary and general elections").

Indeed, the number of Supreme Court and lower federal courts cases striking down such deadlines is legion. In their motion for preliminary injunction, which is incorporated herein by reference, Plaintiffs cite no fewer than 14 such cases. (Plaintiffs' Motion for Preliminary Injunction, ECF No. 4, PageIDs.15-17.) The Eighth Circuit has explained the rationale that supports this long line of precedents:

> The American political system is basically the two-party system with which all are familiar, and ordinarily popular dissatisfaction with the functioning of that system sufficient to produce third party movements and independent candidacies does not manifest itself until after the major parties have adopted their platforms and nominated their candidates.

*MacBride v. Exon*, 558 F.2d 443, 449 (8th Cir. 1977).

As the Eleventh Circuit has explained, the critical inquiry with respect to filing deadlines is whether "the difficulty of obtaining signatures in time to meet the early filing deadline" can be justified by the asserted state interests. *Bergland v. Harris*, 767 F.2d 1551, 1555 (11th Cir. 1985). Thus, in *Bergland*, the Court of Appeals

16

vacated the District Court's dismissal of a constitutional challenge to Georgia's July 11 filing deadline – *i.e.*, one nearly identical to the deadline challenged here – because the state failed to submit sufficient evidence to justify it. *See id.* at 1553-54 & n.4. *Bergland* therefore confirms that the burden imposed by a filing deadline, and not its calendar date, is dispositive. Under the great weight of authority cited herein, which invalidates filing deadlines that fall well in advance of a state's primary election, Michigan's filing deadline is unconstitutional.

**B.     The Signature Requirement.**

The early Filing Deadline imposed by § 168.590c(2) is even more clearly unconstitutional as applied in conjunction with the high Signature Requirement imposed by § 168.544f and the Distribution Requirement imposed by § 168.590b(4). As a threshold matter, Michigan's 30,000-signature requirement for independent candidates for statewide office is among the most restrictive in the nation: only five states impose higher requirements. Decl. of R. Winger, ¶¶ 7,8 (concluding that signature requirement is far higher than necessary to protect state's regulatory interests) (ECF No. 1-2, PageID.22). See also Exhibit 1, EXPERT REPORT OF RICHARD WINGER (December 14, 2018) p. 3.

The difficulty of complying with this high signature requirement is compounded, not only by the early filing deadline, but also by the substantial financial and human resources needed to satisfy the requirement. (See Part C., below.)

17

Taken together, these provisions impose burdens so severe that they function as an absolute bar to independent candidates for statewide office seeking access to Michigan's general election ballot. Decl. of R. Winger ¶ 5 (ECF No. 1-2, Page ID.10-27). In fact, not one such candidate has ever complied with these requirements since they were enacted in 1988. *Id.*

The excessive restrictions that Michigan now imposes on independent candidates do not arise in a vacuum. Rather, they arise in the historical context of Michigan's utter disregard, if not actual antipathy, for independent candidates. *See* Decl. of R. Winger ¶¶ 3-4 (ECF. No. 1-2, PageIDs.20-21). Until 1988, Michigan had no procedure whatsoever for independent candidates to seek ballot access. *Id*. This was first held unconstitutional in 1976. *See McCarthy v. Austin*, 423 F. Supp. 990 (W.D. Mich. 1976) (ordering Eugene McCarthy's placement on general election ballot as independent candidate for president). The issue arose again in 1980, because the legislature had failed to enact remedial legislation following the decision in that case. Gus Hall and Angela Davis, running as independent candidates in Michigan for president and vice-president, respectively, were obliged to file suit. *See Hall v. Austin*, 495 F. Supp. 782 (E.D. Mich. 1980). Once again, a federal court ordered that the independent candidates be placed on Michigan's ballot. *Id.* at 791-92.

In 1984, the Michigan legislature still had failed to enact a procedure for independent candidates to obtain ballot access. An independent candidate for the

State Board of Education filed suit, the district court again declared Michigan's ballot access scheme unconstitutional, and the Secretary was ordered to place the candidate on the ballot. *See Goldman-Frankie v. Austin*, 727 F.2d 603, 607-08 (6th Cir. 1984). The Sixth Circuit affirmed, reasoning that "it would be understandable if the courts looked with increasing disfavor on the State's arguments regarding requisite support for a candidate when the Secretary possesses the power to establish a uniform method of assuring such support and continuously refuses to do so." *Id.*

Michigan finally took action to address its failure to provide independent candidates with any means of attaining ballot access in 1988, when it enacted the statutory scheme currently in place. But this statutory scheme demonstrably fails to remedy the constitutional defect: not one candidate for statewide office has been able to comply with it in the 30 years since it was enacted. As the Supreme Court has explained, "past experience" is a reliable (though not unerring) indicator of whether a ballot access law is unconstitutionally burdensome. *Storer v. Brown*, 415 U.S. 724, 742 (1974). The relevant inquiry is whether "a reasonably diligent independent candidate can be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?" *Id.* "It will be one thing if independent candidates have qualified with some regularity," the Court concluded, "and quite a different matter if they have not." *Id.*

To justify its statutory scheme under the *Anderson/Burdick* analysis, Michigan

19

must show that the requirements imposed are "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citation omitted). This it cannot do. Michigan's statutory scheme simply "operate[s] to freeze the political status quo" by functioning as an absolute bar to independent candidates. *Jenness v. Fortson*, 403 U.S. 431, 438 (1971). As such, it cannot withstand scrutiny under *Anderson/Burdick*. The evidence thus makes clear that the combined burdens imposed by Michigan's high signature requirement, early filing deadline, and distribution requirement are sufficient to exclude even the most diligent of candidates. Sections 168.590c(2), 168.544f, and 168.590b(4) are therefore unconstitutional as applied in combination.

### The Evidentiary Record With Respect to the 30,000 Signature Requirement

The Plaintiffs have presented affirmative evidence, "proving the negative" that the 30,000 signature requirement is not narrowly drawn to advance a compelling state interest. See Statements of Material Fact Nos. 3 and 4 on p. 10, *supra*:

3.   Michigan's 30,000 signature requirement is an arbitrary number, in that Michigan imposes a signature requirement of 12,000 for districts with populations up to 4,999,999, but imposes the 30,000 signature requirement on districts with populations of 5,000,000 or more. (M.C.L.A. § 168.544f.)

4.   States requiring 5,000 or more signatures do not experience overcrowding, citing three reports of Richard Winger based on comprehensive empirical evidence.

In response, the Defendants have presented a statistician to argue with Mr.

20

Winger about the 5,000 signature figure, but the State **has presented no evidence to support the 30,000 figure** that is at issue.

>    C.    **The Financial Burden.**

These provisions are also unconstitutional as applied because they impose an impermissible financial burden on independent candidates and voters who seek to associate for the advancement of their political goals. Well-settled Supreme Court precedent holds that states may not require that voters, candidates or political parties bear the costs of the states' own legislative choices with respect to regulating elections. *See Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) (holding poll tax of $1.50 unconstitutional); *Bullock v. Carter*, 405 U.S. 134 (holding filing fees ranging as high as $8,900 unconstitutional); *Lubin v. Panish*, 415 U.S. 709 (holding filing fees of any amount unconstitutional in the absence of non-monetary alternatives); *see also Belitskus v. Pizzingrilli*, 343 F.3d 632 (3rd Cir. 2003) (holding Pennsylvania's filing fees unconstitutional as applied to candidates unable to pay them); *Republican Party of Arkansas v. Faulkner County*, 49 F.3d 1289 (8th Cir. 1995) (holding that Arkansas cannot require political parties to hold and pay for primary elections); *Fulani v. Krivanek*, 973 F.2d 1539 (11th Cir. 1992) (holding unduly burdensome nomination petition signature verification fees unconstitutional); *Dixon v. Maryland State Bd. of Elections*, 878 F.2d 776 (4th Cir. 1989) (holding mandatory filing fee of $150 for non-indigent write-in candidates unconstitutional);

*McLaughlin v. North Carolina Board of Elections*, 850 F. Supp. 373 (M.D. N.C. 1994) (holding five-cent per signature verification fee unconstitutional); *Clean-Up '84 v. Heinrich*, 590 F. Supp. 928 (M.D. Fl. 1984) (holding ten-cent per signature verification fee unconstitutional).

As the Supreme Court has explained, "it is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or ***economic status***." *Anderson*, 460 U.S. at 793 & n.15 (emphasis added) ("courts quite properly 'have more carefully appraised the fairness and openness of laws that determine which political groups can place *any* candidate of their choice on the ballot') (quoting L. Tribe, American Constitutional Law 774 (1978)). Michigan's statutory scheme runs afoul of this precedent because the combined effect of the challenged provisions is to exclude all non-wealthy candidates – as evidenced by the complete failure of any statewide independent candidate to comply with the provisions in the entire 30 years since they were enacted. Decl. of R. Winger ¶ 5 (ECF No. 1-2, PageID.21).

Most often, volunteer efforts to gather signatures for ballot petitions fail, and professionals must be used. ("Michigan Independent Candidate Signature Gathering Report" by Lee Albright (the State's signature gathering expert), February 26, 2019, p. 2.) Assuming the industry standard 75% validity rate, 40,000 signatures must be gathered to reasonably assure meeting a 30,000 signature requirement. A 75%

validity rate is difficult to maintain. There must be a process in place to scrutinize petitions for signatures of unregistered signers, for duplicate signatures, and other irregularities frequently found on petitions, like incomplete signature blocks, people signing in pencil, etc. (*Id*., p. 1.) In addition to having a process in place for validating petitions, it is necessary to take into account such things as availability of venue and availability of workforce, weather, and the number of other petitions being circulated at the time and what is being paid for those signatures. (*Id*.)

As an independent candidate for Michigan Attorney General, Christopher Graveline was able to recruit 231 volunteers who collected 7,899 signatures. To augment the volunteer efforts, Mr. Graveline hired a professional signature gathering firm, SMI Enterprises, collected billable signatures at a rate of $6.00 per billable signature with a 75% validity guarantee rate. The firm collected over 6,000 billable signatures at an expense of $37,258. The cost of a full professional effort to produce 30,000 valid signatures would have been approximately $225,000. (Declaration of Christopher Graveline, Exhibit B to the Complaint, ECF No. 1-3, at ¶¶ 11-13.)

Mr. Graveline's volunteers corroborate the opinions of Mr. Albright. Signature gathering is "a time-consuming and laborious endeavor," which takes "several minutes" for each attempt to collect a signature. (Decl. of J. Urbanic ¶ 4 (ECF No. 1-7, PageID.49). Thus, even volunteer signature gatherers who work diligently and efficiently can collect, on average, 6-8 signatures in 60-90 minutes of petition

23

circulating. (*Id.* ¶ 5, PageIDs.49-50). Additionally, signature gatherers' efforts are often hampered by inclement weather, potential signers' reluctance to be detained, and interference or obstruction by state or local officials who may be unaware that petitioning in public spaces is constitutionally protected conduct. (Decl. of C. Byrd ¶¶ 4, 6 (ECF No. 1-8, PageID.53, PageID.54). Further, volunteers are typically non-wealthy working people, with professional obligations and domestic duties that prevent them from working full-time on a petition drive without pay. (*Id.* ¶ 7 (ECF No. 1-8, PageIDs.54-55.)

The evidence thus shows that, as a practical matter, Michigan makes independent candidates' ability to pay a condition of their participation in its electoral process. Those who can muster the hundreds of thousands of dollars necessary to hire professionals might have a chance. But those who cannot raise such funds are excluded. It is well settled that the Constitution does not permit discrimination on the basis of financial status in the electoral context, where fundamental First Amendment rights are implicated. *See Lubin*, 415 U.S at 718; *Belitskus*, 343 F.3d at 647. That is especially true in light of the large sums of money needed to obtain ballot access as an independent candidate, which are "patently exclusionary" in character. *Bullock*, 405 U.S. at 143. Michigan's statutory scheme is therefore unconstitutional on the additional ground that it imposes an impermissible financial burden that discriminates against non-wealthy candidates. *Id.*; *Lubin*, 415 U.S. at 718.

**II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III AND A DECLARATION THAT M.C.L.A. §§ 168.590c(2), 168.544f, AND 168.590b(4) ARE UNCONSTITUTIONAL AS APPLIED IN COMBINATION BECAUSE THEY SEVERELY BURDEN PLAINTIFFS' RIGHT TO CAST THEIR VOTES EFFECTIVELY AND ARE NOT NARROWLY DRAWN TO ADVANCE A STATE INTEREST OF COMPELLING IMPORTANCE.**

The challenged provisions also violate the Plaintiffs' right to cast their votes effectively. This claim is grounded in the Supreme Court's recognition that ballot access laws "place burdens on two different, although overlapping, kinds of rights–the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to *cast their votes effectively." Williams*, 393 U.S. at 30 (finding that both rights "rank among our most precious freedoms"). As the Court explained in *Williams*, "the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Id*. at 31.

The clear implication of *Williams*, as the Supreme Court itself has recognized, is that "a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." *Anderson*, 460 U.S. at 787 (quoting *Lubin*, *supra* at 718). In this case, the Plaintiffs are among the large segment of the voting public who want, and are entitled to, a wider range of choices in Michigan's elections – including independent candidates. They believe both major political parties utilize the Office of Attorney General in an overly partisan manner and that

25

the office should be non-partisan. (Appx Tabs 4 and 5, Declarations of Willard Johnson and Michael Leibson, ¶¶ 3-4.) The Plaintiffs also have an interest in voting for independent candidates in Michigan's future elections for Governor, Lieutenant Governor, and Secretary of State. The presence of independent candidates in Michigan's elections will benefit the Plaintiffs because such candidates raise issues and present views that Republican and Democratic candidates may oppose or disregard. (*Id*., ¶¶ 5-6.)

As such, the Plaintiffs' rights are heavily burdened by the challenged provisions. *See Williams*, 393 U.S. at 31. It is undisputed that these provisions have operated as an absolute bar that has prevented independent candidates for statewide office from participating in Michigan's general elections for the 30 years since the provisions were enacted. By hindering the electoral choice by which the Plaintiffs would have the opportunity to choose among competing alternatives that would otherwise exist, *i.e.* effectively excluding the independent candidates for statewide office, the State of Michigan is severely burdening their right to cast a meaningful and effective vote.

As this Court has recognized, "a citizen has a right to vote effectively and, by logical extension, that means that he is to be given a wide latitude in his choice of public officials. His right to support a candidate of his choice—including himself—cannot be arbitrarily restricted." *Mogk v. City of Detroit*, 335 F. Supp. 698,

700 (E.D. Mich. 1971). Other federal courts have recognized the salutary role that independent candidates play in broadening the electoral process to allow voters to exercise their rights more effectively. "Unaffiliated candidates enhance the political process by challenging the status quo and providing a voice for voters who feel unrepresented by the prevailing political parties." *Delaney v. Bartlett*, 370 F. Supp. 2d 373, 377 (citing *Anderson*, 460 U.S. at 794). Moreover, "Third-party and independent candidates in particular play an important role in the voter's exercise of his or her rights." *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1352 (N.D. Ga. 2016), *aff'd* 674 Fed. Appx. 974 (11th Cir. 2017). In light of this, and because independent candidates are more responsive to emerging issues and less likely to wield long term or widespread governmental control, "independent candidacies must be accorded even more protection than third party candidacies." *Cromer v. South Carolina*, 917 F.2d 819, 823 (4th Cir. 1990).

Consequently, "when the right of association and the right to vote effectively are infringed, only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." *Bolanowski v. Raich*, 330 F. Supp. 724, 727 (E.D. Mich. 1971) (citing *NAACP v. Button*, 371 U.S. 415, 438 (1963); *Williams v. Rhodes*, *supra* at 31.); *see also Green Party of Mich. v. Land*, 541 F. Supp. 2d 912, 917 (E.D. Mich. 2008). The Secretary is unable to advance any such interest, or show that the challenged

requirements are narrowly drawn to further that interest. Therefore, Plaintiffs are entitled to summary judgment with respect to Count III.

**III.  THE COURT SHOULD ENTER AN ORDER PERMANENTLY ENJOINING THE SECRETARY FROM ENFORCING M.C.L.A. § 168.544f AND PROVIDING THAT INDEPENDENT CANDIDATES FOR STATEWIDE OFFICE SHALL QUALIFY TO ACCESS THE GENERAL ELECTION BALLOT BY TIMELY SUBMITTING A NOMINATION PETITION WITH AT LEAST 5,000 VALID SIGNATURES, COMPLYING IN ALL OTHER RESPECTS WITH CURRENT LAW.**

Pursuant to 28 U.S.C. 2202, the Court may grant "[f]urther necessary or proper relief based on a declaratory judgment ... against any adverse party whose rights have been determined by such judgment." And the Court has stated that it has flexibility to fashion an appropriate equitable remedy following a declaration when the remedy is in furtherance of the public interest. (*Graveline v. Johnson*, E.D. Mich., *supra* at PageID.167.)

Following those principles, the Court lowered the signature requirement from 30,000 to 5,000 for purposes of the preliminary injunction directing the State to accept Mr. Graveline's July 19, 2018 qualifying petition as complete. The Court stated that this decision -- supported by Richard Winger's opinion that 5,000 signatures for general election ballot access would sufficiently demonstrate a substantial modicum of support and protect against an overcrowded ballot (Decl. of R. Winger, ECF No. 1-2, PageID.22) -- reflects a "constitutionally valid balancing of the competing interests at stake." (*Graveline v. Johnson*, E.D. Mich., *supra* at

28

PageID.168, citing *Jones v. McGuffage*, 921 F. Supp. 2d 888, 902 (N.D. Ill. 2013).

The State did not contest the accuracy of Mr. Winger's comprehensive 50-year empirical analysis of United States ballot access restrictions during the preliminary injunction phase, and it has not mounted an effective challenge during the current phase either. See Exhibit 1 (EXPERT REPORT OF RICHARD WINGER, December 14, 2018) and Exhibit 2 (EXPERT REPORT OF RICHARD WINGER Submitted in Reply to Rebuttal of Richard Winger Expert Report Submitted by Colleen Kelly, Ph.D, with attached Exhibit A, "Historical Ballot Access Results in States that Imposed Signature Requirements of 5,000 or Greater," dated April 15, 2019.

In short, because the facts and the legal principles are essentially unchanged, the Court should convert its preliminary injunction into a permanent injunction, to remain in effect until the Legislature enacts remedial legislation establishing constitutional ballot access requirements for independent candidates for statewide office, consistent with the Court of Appeals' conclusion that "Surely some signature requirement better serves the State's asserted interests than none at all," *cf. Green Party of Georgia v. Kemp, supra* at 1373, 1374: "[T]he best way to address this infirmity is by a reduction in the number of signatures required. *** The Court has only addressed the number of petition signatures because the Court finds that to be the most efficient way to remedy the constitutional violation and provide structure for the upcoming election." See *Graveline v. Johnson*, 6th Cir., *supra* at p. 10 citing this

approach with approval:

> [*S*]*ee also Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016) (finding a one-percent signature requirement to be a severe burden and setting a requirement of 7,500 signatures), *aff'd* 674 F. App'x 974 (11th Cir. 2017) ("The judgment of the district court is affirmed based on the district court's well-reasoned opinion.").

## CONCLUSION

For the reasons stated, Plaintiffs request a Summary Judgment in their favor with respect to Counts II and Count III of the Complaint, an order declaring that M.C.L.A. § 168.590c(2), 168.544f, and 168.590b(4) as applied in combination are unconstitutional, and an order providing that independent candidates for statewide office shall qualify to access general election ballots by submitting a nomination petition with 5,000 valid signatures that otherwise complies with Michigan law, such order to remain in effect until the Legislature enacts remedial legislation.

DATED:      August 15, 2019            Respectfully submitted,

                                       */s/ William P. Tedards, Jr.*

                                       **WILLIAM P. TEDARDS, JR.**\*
                                       *Counsel of Record
                                       1101 30th Street, NW, Suite 500
                                       Washington, DC 20007
                                       202-797-9135
                                       BT@tedards.net
                                       (DC 143636) (MI)

                                       OLIVER B. HALL
                                       Center for Competitive Democracy
                                       P.O. Box 21090

Washington, D.C. 20009
202-248-9294
oliverhall@competitivedemocracy.org
(DC 976463) (MI)

Counsel for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, thereby serving all counsel of record.

*/s/ William P. Tedards, Jr.*

**WILLIAM P. TEDARDS, JR.**\*
(DC 143636) (MI)