UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAVELINE,
WILLARD H. JOHNSON,
MICHAEL LEIBSON, and KELLIE
K. DEMING,

    Plaintiffs,

v

JOCELYN BENSON, Secretary of
State of Michigan, JONATHAN
BRATER, Director of Michigan
Bureau of Elections, in their official
capacities,

    Defendants.

No. 2:18-cv-12354

HON. VICTORIA A. ROBERTS

MAG. DAVID R. GRAND

---

William P. Tedards, Jr.
Attorney for Plaintiffs
1101 30th Street, NW, Suite 500
Washington, DC 20007
202.797.9135

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659

                                      /

**DEFENDANTS' MOTION TO ALTER OR AMEND
THE COURT'S FINDINGS**

1

Defendants Secretary of State Jocelyn Benson and Director of Elections Jonathan Brater, through their attorneys, Heather Meingast and Erik A. Grill, Assistant Attorneys General for the State of Michigan, and in support of Defendants' motion to amend the Court's findings pursuant to Fed. R. Civ. P. 52(b), states as follows:

1. On December 22, 2019, the Court issued its opinion and order denying Defendants' motion for summary judgement and granting Plaintiffs' motion for summary judgment. (R. 42 Opinion & Order, PageID.865).

2. The Court held that the combined effect of Mich. Comp. Laws §§ 168.590c(2), 168.544f, and 168.590b(b) was unconstitutional as applied against independent candidates for statewide office.

3. In its remedy, the Court permanently enjoined the State of Michigan from enforcing the statutes in combination against independent candidates, and further used its equity powers to order—as an interim measure—that petitions for independent candidates must be signed by at least 12,000 qualified and registered electors instead of the 30,000 required by the statutes.

4. The opinion and order, however, is unclear whether the 12,000-signature figure included in the remedy is intended to act as ceiling for any future legislation.

5. The findings also do not reference what the maximum number of allowed signatures should be in light of the 12,000-signature remedy.

6. Clarification of these points is essential to avoid confusion while drafting a replacement statute, as well as the administration of the election under the Court's remedy.

7. Plaintiffs do not concur with the relief sought in this motion.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendants Secretary of State Jocelyn Benson and Director of Elections Jonathan Brater respectfully request that this Honorable Court enter an order altering or amending its findings, pursuant to Fed. R. Civ. P. 52(b), in addition to any other relief this Court deems just and equitable under the circumstances.

                                        Respectfully submitted,

                                        *s/Erik A. Grill*
                                        Erik A. Grill (P64713)
                                        Heather S. Meingast (P55439)
                                        Assistant Attorneys General
                                        Attorneys for Defendants
                                        P.O. Box 30736
                                        Lansing, Michigan 48909
                                        517.335.7659
                                        Email: grille@michigan.gov
                                        P64713

Dated: January 21, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAVELINE,
WILLARD H. JOHNSON,
MICHAEL LEIBSON, and KELLIE
K. DEMING,

    Plaintiffs,

v

JOCELYN BENSON, Secretary of
State of Michigan, JONATHAN
BRATER, Director of Michigan
Bureau of Elections, in their official
capacities,

    Defendants.

No. 2:18-cv-12354

HON. VICTORIA A. ROBERTS

MAG. DAVID R. GRAND

_____

William P. Tedards, Jr.
Attorney for Plaintiffs
1101 30th Street, NW, Suite 500
Washington, DC  20007
202.797.9135

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
ALTER OR AMEND THE COURT'S FINDINGS**

i

# TABLE OF CONTENTS

                                                                                                    Page

Table of Contents ..................................................................................... ii

Index of Authorities ................................................................................. iv

Concise Statement of Issue Presented .................................................... ivv

Statement of Facts ..................................................................................... 1

Argument ................................................................................................... 3

I.     The Court should supplement its findings to clarify the meaning of its order and to make additional findings so that Defendants may effectively apply the Court's order. ....................... 3

     A.     The Court should amend its findings to clarify whether the Legislature is barred from passing a statutory signature limit in excess of 12,000. .......................................... 4

     B.     The Court should supplement its findings to establish the maximum number of signatures that may submitted in contrast to the 12,000-signature minimum under the Court's order. .......................................... 6

Conclusion and Relief Requested .............................................................. 8

Certificate of Service ................................................................................. 9

# INDEX OF AUTHORITIES

Page

**Cases**

*American Train Dispatchers Asso. v. Norfolk & W. R. Co.*, 627 F. Supp. 941 (N.D.Ind.1985) ...................................................................... 4

*GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999) ................................................................................................ 4

*Kenney v. United States*, 2010 U.S. Dist. LEXIS 1941, \*2 (E.D. Ken., January 8, 2010) ........................................................................... 4

*Nat'l Metal Finishing Co. v. BarclaysAmerican/ Commercial, Inc.*, 899 F.2d 119 (1st Cir. 1990) ...................................................................... 3

**Statutes**

Mich. Comp. Laws 168.590c(2) ............................................................ 2, 1

Mich. Comp. Laws 168.544f, ......................................................... *passim*

Mich. Comp. Laws 168.590b(4) ................................................................. 1

**Rules**

Fed. R. Civ. P. 52(b) ............................................................................ 2, 3

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Whether the Court's December 22, 2019 order should be amended to clarify the scope and operation of the Court's remedy?

## STATEMENT OF FACTS

On December 22, 2019, this Court entered its opinion and order granting Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment. (R. 42, Opinion & Order, PageID.865-911). The Court held that Mich. Comp. Laws §§ 168.590c(2), 168.544f, and 168.590b(4) are unconstitutional as applied in combination against independent candidates for statewide office, and permanently enjoined the State from enforcing them in combination against independent candidates for statewide office. (R. 42, PageID.909).

Defendants requested that, in the event the Court issued an injunction, it leave the drafting of a new signature requirement to the Michigan Legislature. *Id*. The Court agreed that the responsibility to craft a new statute ultimately lies with the Legislature, and that "it is free to do so at any juncture." *Id*. But, because this is an election year, the Court determined that it was necessary to set a temporary requirement:

> However, because 2020 is an election year and upon us, the Court feels compelled to make sure a procedure is in place now for independent candidates for statewide office to access the ballot. This will protect not only the rights of prospective

1

> independent candidates and those who wish to vote for them, but also the State itself and its citizens and voters. Indeed, having some ballot access requirements for independent statewide candidates – even if temporary – is better than the alternative of none.
>
> As a Court of equity, it is within this Court's powers to fashion a remedy. Although the focus of this challenge concerned the combined effect of the filing deadline and the signature requirement, the Court finds that "the best way to address [the statutory scheme's] infirmity is by a reduction in the number of signatures required."
>
> Accordingly, as an interim measure, the Court ORDERS:
>
> 1. An independent candidate for statewide office may qualify for the ballot by submitting a qualifying petition pursuant to the same scheme challenged by Plaintiffs, except that the petition must be signed by 12,000 qualified and registered electors instead of 30,000. The same filing deadline applies, as does the geographic distribution requirement.
>
> 2. This interim requirement EXPIRES when the Michigan Legislature enacts a permanent measure replacing the invalidated scheme for independent candidates for statewide office.

*Id.* at PageID.909-910.

The opinion and order describes the Court's process of arriving at this figure as being based upon the number of signatures required for the preceding population threshold in the statute, § 544f, and also a figure that Graveline satisfied:

> Although Plaintiffs wanted the Court to require 5,000 signatures, the State expressed concerns – and submitted some evidence – that 5,000 signatures may not adequately

2

> protect the important state interests discussed above. However, considering that 12,000 signatures adequately protects the State's interests in districts with populations up to 4,999,999, see Mich. Comp. Laws. § 168.544f, there is no reason why this number of signatures will not adequately protect the State's interests here. This is further supported when considering the historical data compiled by Mr. Winger, *see supra*.
>
> On the other hand, this temporary measure is constitutional. As opposed to the scheme declared unconstitutional – under which no candidate for statewide office had qualified for the ballot, excluding Ralph Nadar and Ross Perot for President – Graveline satisfied these interim requirements.

*Id.* at PageID.911.

## ARGUMENT

**I.   The Court should supplement its findings to clarify the meaning of its order and to make additional findings so that Defendants may effectively apply the Court's order.**

Fed. R. Civ. P. 52(b) provides, in pertinent part, that a district court may amend its findings:

> On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend its judgment accordingly.

The underlying purpose of Rule 52(b) "is to permit the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court." *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990). It is "not intended

to allow parties to rehash old arguments already considered and rejected by the trial court." *Id.* (citing *American Train Dispatchers Asso. v. Norfolk & W. R. Co.*, 627 F. Supp. 941, 947 (N.D.Ind.1985)). The motion must clearly either establish a manifest error of law, present newly discovered evidence, indicate an intervening change in controlling law, or demonstrate a manifest injustice. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A Rule 52(b) motion may also be filed to supplement or amplify findings. *Kenney v. United States*, 2010 U.S. Dist. LEXIS 1941, *2 (E.D. Ken., January 8, 2010).

Defendants bring this motion to request that this Court supplement or clarify its findings.

### A. The Court should amend its findings to clarify whether the Legislature is barred from passing a statutory signature limit in excess of 12,000.

The Court's opinion and order provided that the 12,000-signature requirement it was imposing was an "interim" measure that would expire when the Michigan Legislature enacted a replacement, and that the Legislature was "free to do so at any juncture." (R. 42, PageID.909). Further, in explaining how it arrived at the 12,000 figure, the Court's

4

opinion and order expressly recognized that it was the same number required for districts with populations up to 4,999,999, which was the preceding population threshold for qualifying petitions under Mich. Comp. Laws § 168.544f. (R. 42, PageID.911). The Court also stated that the remedy was a "temporary measure." (R. 42, PageID.911). So, there is a legitimate basis to interpret the Court's opinion and order as not establishing a hard "ceiling" on the number of signatures that the Michigan Legislature—in crafting a replacement statute—could require.

On the other hand, the opinion and order also states that "there is no reason why this number of signatures will not adequately protect the State's interests here." (R. 42, PageID.911). This echoes the *Anderson-Burdick* rationale the Court employed in finding the prior statute unconstitutional and suggests that anything higher could not be "narrowly crafted" to achieve the State's interests. Also, simply by this Court having chosen a number, it is foreseeable that legislators may be confused as to whether they could exercise their full discretion in selecting a new statutory threshold. For example, if the Legislature were considering a new threshold of 15,000 signatures that would be

5

equal to the number of signatures required for statewide partisan petitions under § 544f, that would ostensibly be a reasonable adjustment based on the rationale provided in the opinion and order. But legislators may reasonably question whether such a figure was precluded by the Court's order. Conversely, if the Legislature enacted such a figure, it is possible that Plaintiffs might believe that the opinion and order precluded a signature requirement above 12,000 and seek relief or even sanctions if the Legislature made such an enactment.

The Court's opinion and order does not expressly state whether it intended to restrain or limit future legislative enactments (beyond, of course, the prior 30,000 signature requirement). A simple clarification of the Court's intent would obviate any confusion by the Michigan Legislature or the parties.

### B. The Court should supplement its findings to establish the maximum number of signatures that may submitted in contrast to the 12,000-signature minimum under the Court's order.

As noted above, the Court's opinion and order described the temporary 12,000-signature requirement as being derived at least in part from the number of signatures required for districts with populations up to 4,999,999—the preceding threshold for qualifying

6

petitions before the statewide requirement under Mich. Comp. Laws 168.544f. However, the Court's opinion and order did not identify what *maximum* number of signatures would now apply. Under the prior statutory structure, an independent candidate for statewide office would have submitted a minimum of 30,000 signatures up to a maximum of 60,000. Mich. Comp. Laws § 168.544f. But, for a district with a population up to 4,999,999, an independent candidate would submit a minimum of 12,000 up to a maximum of 24,000. Mich. Comp. Laws § 168.544f.

The Court's opinion and order is silent with respect to the maximum number of signatures. The 60,000 maximum was not referenced as being enjoined, but it also does not match the 12,000 figure for the smaller district. In fact, it is five times larger, whereas the rest of the maximums in the statute are twice the minimums.

This is not a difference without impact on the Defendants, as it directly affects how many signatures would be canvassed. Also, such a disparate maximum number may actually provide an unfair advantage to independent candidates, who—unlike partisan or non-partisan

candidates—could then submit signatures far in excess of the minimum and have less incentive to screen and verify their petitions before filing.

On the other hand, it seems reasonable that the 24,000 maximum comports with the Court's intent. However, it is not stated in the Court's order, and Defendants have no legal authority upon which to rely in using the 24,000 maximum number. Amendment of the Court's findings to address the maximum number of signatures is required to avoid needless confusion and potential litigation.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Jocelyn Benson and Director of Elections Jonathan Brater respectfully request that this Honorable Court amend its findings consistent with the arguments above, together with any other relief the Court determines to be appropriate under the circumstances.

Respectfully submitted,

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: grille@michigan.gov
P64713

Dated: January 21, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Erik A. Grill*
Erik A. Grill (P64713)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: grille@michigan.gov
P64713

9