## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DISTRICT

| | |
|---|---|
| **CHRISTOPHER GRAVELINE, WILLARD H. JOHNSON, MICHAEL LEIBSON, and KELLIE K. DEMING,** ) ) ) ) | |
| **Plaintiffs,** ) ) | **Case No. 2:18-cv-12354-VAR-DRG** |
| **v.** ) ) | **Judge Victoria A. Roberts** **Magistrate Judge David R. Grand** |
| **JOCELYN BENSON, Secretary of State of Michigan, and JONATHAN BRATER, Director of Michigan Bureau of Elections, in their official capacities,** ) ) ) ) ) | |
| **Defendants,** ) ) | |
| **DANA NESSEL, Attorney General of Michigan,** ) ) ) | |
| **Intervenor-Defendant.** ) | |

## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Plaintiffs Christopher Graveline, Willard Johnson, Michael Leibson and Kellie Deming (collectively, the "Plaintiffs") hereby move for an award of attorneys' fees and litigation expenses, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d). In support of their motion, Plaintiffs state as follows:

1.      Plaintiffs commenced this action on July 27, 2018, to challenge the constitutionality of M.C.L.A. §§ 168.590c(2) (the "Filing Deadline"), 168.544f (the "Signature Requirement") and 168.590b(4) (the "Distribution Requirement"), which establish the requirements for independent candidates for statewide office to appear on Michigan's general election ballot. Plaintiffs asserted

1

claims pursuant to 42 U.S.C. § 1983 for the violation of their First and Fourteenth Amendment rights.

2.      This Court entered an order granting Plaintiffs' motion for preliminary injunction on August 27, 2018 (ECF No. 12). Defendants appealed from that order and moved for a stay, but the Court of Appeals entered an order denying Defendants' motion on September 6, 2018, and entered an order dismissing their appeal on October 15, 2018. On December 22, 2019, this Court entered an order granting Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment (ECF No. 42).

3.      On January 21, 2020, Defendants filed a motion to alter or amend this Court's order granting Plaintiffs summary judgment (ECF No. 45). The Court denied that motion by its order entered on March 19, 2020 (ECF No. 52). On April 20, 2020, Defendants filed a notice of appeal (ECF No. 57).

4.      The parties submitted briefing on Defendants' appeal and the Court of Appeals held oral argument on December 16, 2020. On March 29, 2021, the Court of Appeals entered its opinion and judgment affirming in all respects this Court's order granting Plaintiffs summary judgment (ECF No. 63). Defendants did not file a petition for rehearing. Plaintiffs are therefore "prevailing parties" pursuant to 42 U.S.C. § 1988, and they are entitled to an award of attorneys' fees and litigation expenses.

5.      Plaintiffs request an award of $423,931.25 in attorneys' fees and $5,386.11 in litigation expenses. The basis for this request is explained fully in the accompanying Memorandum of Law and in the declarations filed in support of this motion.

6.      The lodestar request for attorneys' fees is broken down as follows:

| Attorneys | Hours | Rate | Total |
|---|---|---|---|
| Oliver Hall | 372.6 | $450 | $167,670.00 |
| William Tedards | 309.5 | $530 | $164,035.00 |
| Yvonne Watson (Paralegal) | 46.5 | $160 | $7,440.00 |
| Total Attorney Lodestar | 733.1 | | $339,145.00 |
| | | Multiplier: | x       1.25 |
| | | Total Fees: | $423,931.25 |

7.     Each attorney and paralegal listed above has filed a declaration providing a work log recording their hours for this case and explaining the basis for the hourly rates requested. In addition, Plaintiffs submit a declaration from Plaintiff Christopher Graveline, who is a licensed attorney with extensive experience practicing in this Court as a federal prosecutor (No. P69515). These declarations are attached as Exhibits A, B, C and D to this motion. They establish that the requested billing rates are well within the prevailing market rates for attorneys of similar background and experience and that the number of hours billed is reasonable and an enhancement above the lodestar figure is warranted. *See* Dec. of Oliver B. Hall, ¶¶ 6-8; Dec. of William P. Tedards, ¶¶ 9-11; Dec. of Yvonne Watson, ¶¶ 2-3; Dec. of Christopher Graveline, ¶¶ 3-8.

8.     Plaintiffs also seek reimbursement for $5,386.11 in litigation expenses incurred in the course of proceedings in this Court. The documentation for these expenses is set forth in the Declaration of Oliver B. Hall, ¶ 5, and the Declaration of Yvonne Watson, ¶¶ 4-7.

9.     The instant motion covers only the fees and expenses incurred in this case through April 23, 2021. Plaintiffs reserve the right to file a supplemental motion for additional fees and costs should there be additional proceedings in this action subsequent to April 23, 2021.

10.     Plaintiffs have requested Defendants' consent to this motion, but were unable to obtain a response before filing it.

Wherefore, Plaintiffs respectfully request that this Court enter an order awarding them $423,931.25 in attorneys' fees and $5,386.11 in litigation expenses incurred through April 23, 2021, and such other and further relief as the Court deems just and proper.

Dated: April 23, 2021                      Respectfully submitted,

/s/ Oliver B. Hall
Oliver B. Hall
(D.C. Bar No. 976463)
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294 (ph)
oliverhall@competitivedemocracy.org

/s/ William P. Tedards, Jr.
WILLIAM P. TEDARDS, JR.
(D.C. Bar No. 143636)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-797-9135
BT@tedards.net

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DISTRICT**

**CHRISTOPHER GRAVELINE, WILLARD**     )
**H. JOHNSON, MICHAEL LEIBSON, and**     )
**KELLIE K. DEMING,**                                       )
                                                                          )
           **Plaintiffs,**                                          )          **Case No. 2:18-cv-12354-VAR-DRG**
                                                                          )
                                **v.**                                     )          **Judge Victoria A. Roberts**
                                                                          )          **Magistrate Judge David R. Grand**
**JOCELYN BENSON, Secretary of State of**  )
**Michigan, and SALLY WILLIAMS,**            )
**Director of Michigan Bureau of Elections,** )
**in their official capacities,**                        )
                                                                          )
           **Defendants,**                                       )
                                                                          )
**DANA NESSEL, Attorney General of**        )
**Michigan,**                                                    )
                                                                          )
           **Intervenor-Defendant.**                     )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF**
**ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………….......................   ii

CONCISE STATEMENT OF THE ISSUES PRESENTED…………....................................   v

CONTROLLING OR APPROPRIATE AUTHORITY…………….....................................   vi

INTRODUCTION…………………………………………………….......................   1

ARGUMENT……………………………………………………….......................   3

CONCLUSION…………………………………………………….......................   15

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3rd Cir. 1995)......................................................................10

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983).......................................................................................6

*B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs*,
  522 F.3d 657 (6th Cir. 2008)........................................................................7

*BDT Products, Inc. v. Lexmark Intern., Inc.*,
  405 F.3d 415 (6th Cir. 2005)......................................................................14

*Berger v. City of Mayfield Heights*,
  265 F.3d 399 (6th Cir. 2001)........................................................................3

*Blum v. Stenson*,
  465 U.S. 886 (1984)................................................................................4,5,11

*Constitution Party of Pa. v. Cortes*,
  116 F. Supp. 3d 486 (E.D. Pa. 2015)...........................................................5

*Constitution Party of Pa. v. Cortes*,
  824 F.3d 386 (3rd Cir. 2016)........................................................................5

*Coulter v. State of Tenn.*,
  805 F.2d 146 (6th Cir. 1986).....................................................................5,7

*Geier v. Sundquist*,
  372 F.3d 784 (6th Cir. 2004)..................................................................12,13

*General Instrument Corporation of Delaware v. Nu-Tek Electronics & Manufacturing*,
  197 F.3d 83 (3rd Cir. 1999)........................................................................10

*Gill v. Scholz*,
  962 F.3d 360 (7th Cir. 2020)........................................................................6

*Gonter v. Hunt Valve Co., Inc.*,
  510 F. 3d 610 (6th Cir. 2007).....................................................................4,7

*Green Party of Md. v. Hogan*,

No. 1:20-cv-1253 (D. Md. June 19, 2020)……………………………………………6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................................*passim*

*Libertarian Party v. Danzansky*,
    No 1:12-cv-01248 (D.D.C. 2012)...................................................................5

*Libertarian Party of Il. v. Pritzker*,
    455 F.Supp.3d 738 (N.D. Ill. 2020)………………………………………………6

*Libertarian Party of Il. v. Cadigan*,
    2020 WL 5104251 (7th Cir. Aug. 20, 2020)………………………………………6

*Nader v. Federal Election Commission*,
    725 F.3d 226 (D.C. Cir. 2013)......................................................................5

*Nader v. Democratic National Committee*,
    567 F.3d 692 (D.C. Cir. 2009)......................................................................5

*Nader v. Maine Democratic Party*,
    41 A.3d 551 (Me. 2012)................................................................................5

*Nash v. Chandler*,
    848 F.2d 567 (5th Cir. 1988)......................................................................10

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)...........................................................................4,11,12

*Perotti v. Seiter*,
    935 F.2d 761 (6th Cir. 1991)......................................................................12

*Phelan v. Bell*,
    8 F.3d 369 (6th Cir. 1993).........................................................................10

*Perdue v. Kenny A.*,
    130 S. Ct. 1662, 1673 (2010).....................................................................11

*Perotti v. Seiter*,
    935 F.2d 761 (6th Cir. 1991)......................................................................12

*Pucci v. Somers*,
    834 F. Supp. 2d 690 (E.D. Mich. 2011)..............................................7,10,13

*Ruiz v. Estelle*,
    553 F. Supp. 567 (S.D. Tex. 1982)......................................................................10

*Thurman v. Yellow Freight Systems, Inc.*,
    90 F.3d 1160 (6th Cir. 1996)........................................................................10

## **STATUTES**

42 U.S.C. § 1988..........................................................................................1,3,4

M.C.L.A. § 168.590c(2)..........................................................................1,2,3,9

M.C.L.A. §168.544f..................................................................................1,2,3,9

M.C.L.A. § 168.590b(4)..........................................................................1,2,3,9

14 M.R.S. § 556 (2011)................................................................................5

## **RULES**

Federal Rule of Civil Procedure 54..........................................................14

## **OTHER AUTHORITIES**

S. Rep No. 94-1101, 1976 U.S. Code Cong. & Admin. News 5980..............................4

Oliver Hall, *Death By A Thousand Signatures: The Rise of Restrictive Ballot Access Laws and the Decline of Electoral Competition in the United States*,
    29 SEATTLE U. L. REV. 407 (2006)..........................................................6

Oliver Hall, *Some Political Parties Remain Outlaws in Pa.*,
    PHILADELPHIA          INQUIRER          (October         18,
2010)............................................................6

**STATEMENT OF ISSUES PRESENTED**

1.  Whether Plaintiffs are "prevailing parties" in this action who are therefore entitled to an award of attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)?

2.  Whether Plaintiffs' counsel are entitled to the requested rates and the hours billed are reasonable?

3.  Whether an enhancement of the lodestar figure is warranted because the exceptional results that Plaintiffs achieved substantially and materially benefit all Michigan voters and Plaintiffs' counsel litigated this case on a *pro bono* contingency basis?

## CONTROLLING OR APPROPRIATE AUTHORITY

1. *Hensley v. Eckerhart*, 461 U.S. 424 (1983)

2. *Blum v. Stenson*, 465 U.S. 886 (1984)

3. *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010)

4. *Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004)

5. *Perotti v. Seiter*, 935 F.2d 761 (6th Cir. 1991)

Plaintiffs Christopher Graveline, Willard Johnson, Michael Leibson and Kellie Deming (collectively, the "Plaintiffs") hereby submit this Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Litigation Expenses. As set forth below, Plaintiffs are prevailing parties pursuant to 42 U.S.C. § 1988, and they are therefore entitled to an award of attorneys' fees and litigation expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

This action commenced on July 27, 2018, when Plaintiff Graveline, an independent candidate for Attorney General of Michigan, and three voters who wish to support independent candidates such as Graveline, filed their Complaint against Defendants in their official capacities to challenge the constitutionality of three provisions of the Michigan Election Code, as applied in combination. (ECF No. 1.) Specifically, the Complaint challenges the requirement that independent candidates for statewide office submit nomination petitions 110 days before the general election, *see* M.C.L.A. § 168.590c(2) (the "Filing Deadline") (hereinafter all statutory citations are to the Michigan Election Code unless otherwise specified); the requirement that such nomination petitions contain the signatures of 30,000 qualifying voters, *see* §168.544f (the "Signature Requirement"); and the requirement that such nomination petitions be signed by at least 100 registered electors in each of at least half of the congressional districts in the state, *see* § 168.590b(4) (the "Distribution Requirement"). (ECF No. 1, PageID.2.) Plaintiffs requested that the Court enter a declaratory judgment holding §§ 168.544f, 168.590b(4) and 168.590c(2) unconstitutional as applied in combination with one another, as well as an order placing Plaintiff Graveline on Michigan's 2018 general election ballot. (ECF No. 1, PageID.17.)

On August 3, 2018, Plaintiffs filed a motion for preliminary injunction (ECF No. 4), which requested that the Court direct Defendants to place Plaintiff Graveline on Michigan's 2018 general

election ballot as an independent candidate for Attorney General. Defendants opposed the motion (ECF. No. 8). The Court held a hearing on August 22, 2018, and thereafter, on August 27, 2018, the Court entered an order granting Plaintiffs' motion and directing Defendants to place Plaintiff Graveline on Michigan's 2018 general election ballot provided that they found his nomination petitions contained at least 5,000 valid signatures, including at least 100 valid signatures from at least half of the state's congressional districts (ECF No. 12). On August 29, 2018, Defendants appealed from that order and filed an emergency motion for stay pending appeal (ECF No. 13). On August 30, 2018, Plaintiffs filed their opposition to the motion (ECF No. 16), and the Court entered an order denying the motion that same day (ECF No. 17). On September 4, 2018, Defendants filed an emergency motion for stay pending appeal with the Court of Appeals. The Plaintiffs filed their opposition to that motion on September 5, 2018, and the Court of Appeals entered its order denying the motion on September 6, 2018. On October 15, 2018, the Court of Appeals entered an order dismissing Defendants' appeal.

Plaintiff Graveline complied with the requirements set forth in this Court's August 27, 2018 order, and he appeared on Michigan's 2018 general election ballot. Meanwhile, this case proceeded, with the parties taking discovery and ultimately filing cross-motions for summary judgment (ECF Nos. 28, 30). On December 22, 2019, the Court entered an order granting Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment (ECF No. 42). The Court also declared §§ 168.544f, 168.590b(4) and 168.590c(2) unconstitutional as applied in combination with one another, and permanently enjoined Defendants from enforcing those provisions as applied in combination to independent candidates for statewide office. Further, the Court ordered:

> An independent candidate for statewide office may qualify for the ballot by submitting a qualifying petition pursuant to the same scheme challenged by Plaintiffs, except that the

petition must be signed by 12,000 qualified and registered electors instead of 30,000. The same filing deadline applies, as does the geographic distribution requirement.

The Court specified that the foregoing "interim requirement **EXPIRES** when the Michigan Legislature enacts a permanent measure replacing the invalidated scheme for independent candidates for statewide office."

On January 21, 2020, Defendants filed a motion to alter or amend this Court's order granting Plaintiffs summary judgment (ECF No. 45). The Court denied that motion by its order entered on March 19, 2020 (ECF No. 52). On April 20, 2020, Defendants filed a notice of appeal (ECF No. 57).

The parties submitted briefing on Defendants' appeal and the Court of Appeals held oral argument on December 16, 2020. On March 29, 2021, the Court of Appeals entered its opinion and judgment affirming in all respects this Court's order granting Plaintiffs summary judgment (ECF No. 63). Defendants did not file a petition for rehearing.

## ARGUMENT

### I. Plaintiffs Are Prevailing Parties in This Action.

Attorneys' fees are available under 42 U.S.C. § 1988 to "prevailing parties" in civil rights litigation. As noted above, this Court entered a preliminary injunction in Plaintiffs' favor, which placed Plaintiff Graveline on Michigan's 2018 general election ballot, and ultimately entered a final judgment in Plaintiffs' favor. The Court's final judgment holds that §§ 168.544f, 168.590b(4) and 168.590c(2) are unconstitutional as applied in combination, and permanently enjoins Defendants from enforcing them in combination against all independent candidates for statewide office. The Court of Appeals upheld that judgment in all respects, including this Court's entry of a permanent injunction. Accordingly, there is no question that Plaintiffs are prevailing parties in this litigation, entitling their counsel to an award of attorneys' fees and costs under 42 U.S.C. § 1988.

See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("prevailing party" is one who "succeed[s] on any significant issue in the litigation which achieves some of the benefits the parties sought in bringing the suit") (citation omitted); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001) (same).

## II. The Number of Hours Spent on the Case and the Hourly Rates Requested Are Reasonable.

The Supreme Court has held that "the starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *See Gonter v. Hunt Valve Co., Inc.*, 510 F. 3d 610, 616 (6th Cir. 2007) (citing *Hensley*, 461 U.S. 424, 434 (1983)); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley")*, 478 U.S. 546, 564 (1986), quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984). This calculation establishes the "lodestar" figure.

The lodestar amount requested by Plaintiffs' attorneys for litigation of this case, and for the preparation of the instant fee petition (through April 16, 2020) is as follows:

| Attorneys | Hours | Rate | Total |
|---|---|---|---|
| Oliver Hall | 372.6 | $450 | $167,670.00 |
| William Tedards | 309.5 | $530 | $164,035.00 |
| Yvonne Watson (Paralegal) | 46.5 | $160 | $7,440.00 |
| Total Attorney Lodestar | 733.1 | | $339,145.00 |
| | | Multiplier: | x        1.25 |
| | | Total Fees: | $423,931.25 |

## A.  Plaintiffs' Counsel Are Entitled to the Requested Rates.

Congress intended that in civil rights cases:

> the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature.

S. Rep No. 94-1101 at 6, 1976 U.S. Code Cong. & Admin. News 5980, 5913. The Supreme Court has therefore rejected the argument that lawyers employed by nonprofit organizations should be compensated at less than market rates. *See Blum*, 465 U.S. at 894-95. Instead, statutory attorneys' fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel," *id.* at 895 (footnote omitted), and the rates should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at n.11; *see also Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

The declarations of each attorney seeking an award of fees set forth their background, qualifications and experience. Mr. Hall, who acted as co-counsel in the case, is a 2005 graduate of Boston University School of Law. He is founder of the Center for Competitive Democracy, a 501(c)(3) non-profit that works to strengthen American democracy by challenging barriers to participation in the political process nationwide. Prior to litigating the instant case, for example, Mr. Hall was lead counsel in litigation that invalidated Pennsylvania's ballot access requirements for minor political parties, *see Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486 (E.D. Pa. 2015), *aff'd.*, 824 F.3d 386 (3rd Cir. 2016), as well as litigation that prompted the District of Columbia to rescind its unconstitutional residency and registration requirements for petition circulators. *See Libertarian Party v. Danzansky*, No 1:12-cv-01248 (D.D.C. 2012) (case dismissed as moot December 30, 2014, following enactment of remedial legislation). Mr. Hall also maintains a private practice specializing in civil rights and election law, through which he served as lead counsel in a precedent-setting case decided by the Supreme Court of Maine, which established a

new evidentiary standard that applies in motions filed under Maine's anti-SLAPP statute.[1] *See Nader v. Maine Democratic Party*, 41 A.3d 551 (Me. 2012). Mr. Hall has served as lead counsel in several other election law and civil rights cases throughout the country. *See*, *e.g.*, *Nader v. Federal Election Commission*, 725 F.3d 226 (D.C. Cir. 2013); *Nader v. Democratic National Committee*, 567 F.3d 692 (D.C. Cir. 2009). He has also published articles and commentary on election law issues. *See*, *e.g.*, Oliver Hall, *Death By A Thousand Signatures: The Rise of Restrictive Ballot Access Laws and the Decline of Electoral Competition in the United States*, 29 SEATTLE U. L. REV. 407 (2006); Oliver Hall, *Some Political Parties Remain Outlaws in Pa.*, PHILADELPHIA INQUIRER (October 18, 2010).

In addition, Mr. Hall served as lead counsel in three successful ballot access cases that were litigated during the pendency of this proceeding. *See Libertarian Party of Il. v. Pritzker*, 455 F.Supp.3d 738 (N.D. Ill. 2020), *aff'd*, *Libertarian Party of Il. v. Cadigan*, 2020 WL 5104251 (7th Cir. Aug. 20, 2020); *Gill v. Scholz*, 962 F.3d 360 (7th Cir. 2020); *Green Party of Md. v. Hogan*, No. 1:20-cv-1253 (D. Md. June 19, 2020). In *Libertarian Party of Il.* And *Green Party of Md.*, the courts awarded the plaintiffs emergency relief from the enforcement of state ballot access requirements in the context of the Covid-19 pandemic. And in *Gill*, the 7th Circuit reversed the district court's entry of summary judgment for the defendants and remanded for further proceedings, holding that the district court failed to conduct the analysis required under the *Anderson-Burdick* framework. *See Gill*, 962 F.3d at 364-66. In so holding, the 7th Circuit also accepted the plaintiffs' argument that its own prior decision, on which the district court primarily relied, contained a critical error of fact that undermined its entire rationale. *See id.*, at 366.

William Tedards, who served as co-counsel to Mr. Hall in this case, is an accomplished

---

[1] *See* 14 M.R.S. § 556 (2011). The acronym stands for Strategic Litigation Against Public Participation.

federal antitrust litigator with more than 50 years of experience litigating complex actions to final judgment on behalf of plaintiffs, primarily in the insurance industry. Mr. Tedards began his career in the Antitrust Litigation department of the Federal Trade Commission, then worked at several law firms before launching his own independent national practice. *See* Dec. of William Tedards, ¶¶ 2-8. Mr. Tedards' interest in improving competition in the political process arose in 1980, when he served as a surrogate speaker for independent presidential candidate John Anderson. *See id.*, ¶ 7. The efforts of the Anderson campaign to challenge unconstitutional ballot access requirements for independent candidates nationwide gave rise to the seminal Supreme Court decision in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), which struck down Ohio's early filing deadline for such candidates and established the analytic framework for constitutional review of state election laws.

To support the requested hourly rates, Plaintiffs have submitted declarations establishing that these rates are consistent with the prevailing hourly rates for attorneys of comparable skill, experience and reputation in the Eastern District of Michigan. *See* Dec. of Oliver Hall, ¶¶ 6-8; Dec. of William Tedards, ¶ 9; Dec. of Yvonne Watson, ¶ 2. Plaintiffs also have submitted the fee schedule published by the State Bar of Michigan ("State Bar Report") (attached as Exhibit 3 to Declaration of Oliver B. Hall), which this Court has relied upon as an "appropriate guide" to establish the prevailing market rate in this venue. *See Pucci v. Somers*, 834 F. Supp. 2d 690, 701-02 (E.D. Mich. 2011) (quoting *B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008) (citing *Gonter*, 510 F.3d at 618 & n. 6).

The requested rates are consistent with the State Bar Report fee schedule.

**B.  The Number of Hours Billed Is Reasonable.**

Under *Hensley*, the lodestar calculation requires determination of the time reasonably

expended in conducting the litigation. *See Hensley*, 461 U.S. at 433; *see also B & G Min., Inc.*, 522 F.3d at 661. Attorneys submitting fee petitions should exercise "billing judgment" and exclude from their request hours that would not be charged to a private, fee-paying client. *Hensley*, 461 U.S. at 434; *see also Coulter*, 805 F.2d at 151 (analyzing whether fee petition reflected "the reasonable billing practices of the profession").

Plaintiffs have supported the hours requested by their attorneys by declarations from each attorney and paralegal attaching detailed work logs showing the time expended on the case (and on the fee petition). The total hours claimed are extremely reasonable in light of the tasks involved and the results achieved. Acting as co-counsel, Mr. Hall and Mr. Tedards took measures to divide their tasks and ensure that they litigated this case as efficiently as possible, without any duplication of efforts. *See* Dec. of Oliver Hall, ¶ 12; Dec. of William Tedards, ¶ 10; Dec. of Yvonne Watson, ¶ 3. Further, except for the initial hearing on Plaintiffs' motion for preliminary injunction, all court appearances and arguments were attended by only one of Plaintiffs' attorneys. In addition, only Mr. Hall has billed any time for the preparation of the attorneys' fee motion, and the time billed is reasonable given a constitutional case of this complexity. *See Coulter*, 805 F.2d at 151 ("In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial…").

This case required a substantial expenditure of time at the outset of the litigation because of the timing of the scheduled 2018 election. Plaintiffs filed their Complaint in July 2018, following Defendants' determination that his nomination petition contained an insufficient number of valid signatures, with the intention of requesting preliminary relief as soon as possible thereafter. Consequently, in addition to drafting the Complaint, counsel prepared the seven sworn declarations

incorporated therein, which contained extensive factual detail and evidence supporting Plaintiffs' allegations of injury. Counsel also prepared a motion for preliminary injunction, which Plaintiffs filed one week after filing their Complaint.

The hours that counsel expended in this phase of the litigation were justified by the success they obtained when the Court granted their motion for preliminary injunction, which enabled Plaintiff Graveline to appear on Michigan's 2018 general election ballot and enabled the Voter-Plaintiffs (and others) to cast their votes for him. The strong evidentiary record that Plaintiffs developed at the outset of this case was not only critical to their success in obtaining a preliminary injunction and defending it upon Defendants' appeal therefrom, but also to their ultimate success in obtaining a final judgment declaring the challenged provisions unconstitutional and a permanent injunction against their enforcement. Together with the evidence that Plaintiffs submitted in support of their motion for summary judgment, this evidence established the harm that the challenged provisions have caused Plaintiffs and Michigan voters generally for the 30 years since they were enacted. As this Court observed, Plaintiffs' "historical evidence paints a clear picture of the real impact the restrictions have on Plaintiffs and demonstrates the severe burden Michigan's scheme has on independent candidates for statewide office." (ECF No. 42 at 28 (citation, quotation marks and brackets omitted).)

The relief that the Court entered in this case – a judgment declaring §§ 168.544f, 168.590b(4) and 168.590c(2) unconstitutional as applied in combination with one another, a permanent injunction against the enforcement of those provisions as applied to independent candidates for statewide office, and an order lowering the Signature Requirement from 30,000 to 12,000 – will have a tremendously positive impact not only for Plaintiffs, but also for voters throughout Michigan. As the Court observed, the challenged provisions "operate to freeze the

political status quo, and effectively bar independent candidates from accessing the ballot." (ECF No. 42 at 29 (citation and quotation marks omitted).) This "severe burden" falls not only upon independent candidates, but also – and perhaps more important – upon "those who wish to vote for them." *Id.*

This case ultimately established that Michigan's ballot access scheme for independent candidates is unconstitutional not only as applied to Plaintiffs, but also to all independent candidates for statewide office. Plaintiffs thus obtained excellent results, and they are entitled to fees for all hours expended. As the Supreme Court has explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonable expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley*, 461 U.S. at 435; *see also id*. (when claims involve "common core of facts" or are "based on related legal theories," time spent on unsuccessful claims is compensable). Here, Plaintiffs obtained precisely the relief they requested – a judgment declaring the challenged provisions unconstitutional as applied in combination, as well as preliminary and permanent injunctive relief. The Court's decision to leave the Filing Deadline and Distribution Requirement undisturbed does not detract from their victory, because those provisions imposed a severe burden only as applied in combination with the Signature Requirement that the Court substantially lowered by permanent injunction. Plaintiffs therefore should be compensated for all time expended by counsel. *See Pucci*, 834 F. Supp. 2d at 701 ("the Sixth Circuit has held that 'a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised'") (quoting *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (citing *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993)); *see also General Instrument Corporation of Delaware v. Nu-Tek Electronics &*

*Manufacturing*, 197 F.3d 83, 91-92 (3rd Cir. 1999) (no reduction in lodestar warranted even though plaintiff originally claimed over $9 billion in damages and was awarded only $60,000, where plaintiff also obtained injunctive relief); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1222 (3rd Cir. 1995) (no reduction warranted for time spent on unsuccessful federal law claim when plaintiff obtained significant relief based on related state law claim); *Nash v. Chandler*, 848 F.2d 567, 572-73 (5th Cir. 1988) (although plaintiffs obtained only a declaratory judgment and lost on all claims for monetary relief and permanent injunction, no reduction for time spent on unsuccessful claims was warranted); *Ruiz v. Estelle*, 553 F. Supp. 567, 576-582 (S.D. Tex. 1982) (although at least five provisions of court's decree were vacated on appeal, no reduction of hours warranted because plaintiffs succeeded in main purpose of litigation).

Although a fully compensatory fee is appropriate, plaintiffs' counsel nevertheless have complied with their obligation to exercise "billing judgment" and have excluded from their lodestar request a substantial number of hours, including but not limited to the following: 1) travel time for four overnight trips to hearings in Detroit, Michigan; 2) travel and other time spent on clerical tasks such as printing briefs and preparing materials for mailing; 3) numerous client and co-counsel communications that were less than six minutes; 4) communications with opposing counsel that were less than six minutes; 5) several consultations with co-counsel and other colleagues regarding litigation strategy that were more than six minutes; and 6) costs of meals and other incidental costs incurred during travel. *See* Dec. of Oliver Hall, ¶ 4; Dec. of William Tedards, ¶ 11.

### III. An Enhanced Fee Is Justified Because the Lodestar Figure Does Not Take Account of Significant Factors Contributing to Counsel's True Market Value.

The Supreme Court has repeatedly recognized that an enhanced attorneys' fee may be proper in "rare" and "exceptional" circumstances. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673

(2010) (citing *Delaware Valley*, 478 U.S. at 565; *Blum*, 465 U.S. at 897; *Hensley*, 461 U.S. at 435).

As the Court explained:

> an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation. This may occur if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors. In such a case, an enhancement may be appropriate so that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes. But in order to provide a calculation that is objective and reviewable, the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate.

*Perdue*, 130 S. Ct. at 1674. This case presents just the sort of rare and exceptional circumstances the Court envisioned in *Perdue*.

As an initial matter, the State Bar Report fee rates are in fact based primarily on a "a single factor … or a few similar factors" – here, not years since admission to the bar, but "years in practice," with some variation based on factors such as "office location" and "field of practice". *See* Dec. of Oliver Hall, Ex. 3. Thus, while the State Bar Report may be adequate to measure an attorney's true market value in typical cases, it fails to account for the exceptional circumstances here. Specifically, an attorney with relatively few years of experience partnered with a more experienced attorney to prosecute on a *pro bono* basis a complex lawsuit on behalf of multiple parties who sought both preliminary and permanent injunctive, as well as a declaratory judgment vindicating their constitutional rights. These attorneys achieved total victory for their clients, obtaining preliminary injunctive relief, permanent injunctive relief and declaratory relief in a case that will substantially benefit the rights of voters throughout the state of Michigan. Further, the Court of Appeals upheld the relief awarded in all respects. Compensating these attorneys based on nothing more than their years since graduating from law school would disregard the unusual value their collaboration produced.

In addition, the Court of Appeals has reaffirmed that in "rare" and "exceptional" cases (such as this one), "upward adjustments [to the lodestar figure] are permissible." *Geier v. Sundquist*, 372 F.3d 784, 793 (6th Cir. 2004). The Court of Appeals has also concluded that "the risk presented by the contingent nature of the representation" is a proper factor upon which a Court may award a "multiplier" of the lodestar figure. *See Perotti v. Seiter*, 935 F.2d 761, 765 (6th Cir. 1991) ("This court has upheld multipliers for the risk of non-compensation in contingent-fee cases subsequent to *Delaware Valley*") (citation omitted). In *Perotti*, the Court remanded the case for determination as to whether "the district court would have awarded a multiplier of 2.0 for that risk alone." *Id.* Notably, the Court did *not* hold that a multiplier of 2.0 would be excessive. Here, Plaintiffs only request a multiplier of 1.25, which is a reasonable enhancement given that counsel litigated this case for 34 months on an entirely *pro bono* basis. *See Geier*, 372 F.3d at 794 ("[A]s a general rule, the upward adjustment for risk may be no more than one third of the lodestar, and any additional adjustment for risk would require the most exacting justification") (citation, quotation marks and brackets omitted).

Here, Plaintiffs have submitted evidence demonstrating that they tried but were unable to find counsel willing to litigate this case on a *pro bono* basis until they approached the Center for Competitive Democracy ("CCD"). *See* Dec. of Christopher Graveline, ¶¶ 4-5. Based on that experience, Plaintiffs aver that "we could not have filed this case" but for the willingness of Mr. Hall and Mr. Tedards to litigate it *pro bono*. *See id.*, ¶ 5. Given the exceptional results achieved, which substantially and materially benefit voters throughout the state of Michigan, that factor warrants the reasonable enhancement requested herein.

Additional factors that justify the requested enhancement include the fact that Plaintiffs' counsel was "forced to turn away other cases because this case placed extraordinary demands on

counsel's time," the 21-month duration of the proceedings thus far, and "the undesirability of this case." *Pucci*, 834 F. Supp. 2d at 703-04. Here, as in *Pucci*, Plaintiffs' counsel are "small-firm practitioner[s] called upon to litigate a complex constitutional case," making it "quite plausible" that the instant matter precluded their ability to undertake other worthy and potentially meritorious cases, as well as CCD's normal advocacy and educational initiatives. *Id.*; *see* Dec. of Oliver Hall, ¶ 11. The evidence also supports the conclusion that this case was undesirable, because Plaintiffs' attempts to find counsel from Detroit-area firms were unavailing. *See* Dec. of Christopher Graveline, ¶ 4. Accordingly, the foregoing factors, which are not subsumed in the lodestar figure, weigh in favor of the requested enhancement.

## IV. Plaintiffs Are Entitled to Reimbursement of Out-of-Pocket Litigation Expenses.

Under Rule 54(d), "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." *BDT Products, Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 417 (6th Cir. 2005) (quoting Fed. R. Civ. P. 54(d)(1)). The Court "must first determine that the expenses are allowable cost items and that the amounts are reasonable and necessary." *Id.* (citation and quotation marks omitted). The expenses incurred by Plaintiffs' attorneys, totaling $5,386.11, are itemized in the Declaration of Oliver B. Hall, Ex. 2, and the Declaration of Yvonne Watson, ¶¶ 4-7. All of these expenses – for travel, filing fees, postage and the like – are ordinarily billed separately to paying clients. The award should therefore include these expenses.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for an award of $423,931.25 in attorneys' fees and $5,386.11 in litigation expenses should be granted.

Dated: April 23, 2021                    Respectfully submitted,

                                         /s/ Oliver B. Hall
                                         Oliver B. Hall
                                         (D.C. Bar No. 976463)
                                         CENTER FOR COMPETITIVE DEMOCRACY
                                         P.O. Box 21090
                                         Washington, D.C. 20009
                                         (202) 248-9294 (ph)
                                         oliverhall@competitivedemocracy.org

                                         /s/ William P. Tedards, Jr.
                                         WILLIAM P. TEDARDS, JR.
                                         (D.C. Bar No. 143636)
                                         1101 30th Street, NW, Suite 500
                                         Washington, DC 20007
                                         202-797-9135
                                         BT@tedards.net

                                         *Counsel for Plaintiffs*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of April, 2021, I caused the foregoing Plaintiffs'

Motion for Attorneys' Fees and Litigation Expenses to be served electronically, via the Court's

CM/ECF system, which will effect service on all counsel of record.

/s/ Oliver B. Hall
Oliver B. Hall

*Counsel for Plaintiffs*